FILED
SCRANTON
OCT 08 2026
PER ______
DEPUTY CLERK

No. 3:26-cv-02620-KM

(Mehalchick, J.)

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ERIC DAVID BARTELS, Appellant
v.
JILL E. DURKIN, Appellee

# APPELLANT OPENING BRIEF

Appeal from the United States Bankruptcy Court
for the Middle District of Pennsylvania
In re Luxury Time Global, LLC
No. 5:25-bk-00912-MJC, Doc. 181
Hon. Mark J. Conway

Eric David Bartels, pro se
6 Dickinson Close, Moosic, PA 18507
570-479-7141 | edb5020@gmail.com

TABLE OF CONTENTS


| | |
|---|---|
| JURISDICTIONAL STATEMENT | 1 |
| ISSUES PRESENTED AND STANDARDS OF REVIEW | 2 |
| STATEMENT OF THE CASE | 4 |
| SUMMARY OF ARGUMENT | 9 |
| I The Court should review the retention challenge and the denial of limited participation under their distinct standards | 13 |
| A The retention-specific appellate-standing decisions require consideration of Bartels's own connection to this engagement | 13 |
| B Rule 2018 cause concerns the applicant's interest and the practical value of limited participation | 21 |
| C The hearing exchange supports review of whether the court framed cause too narrowly | 23 |
| II The ORAFI relationship and proposed Malak litigation role require an assessment of independent estate evaluation | 26 |
| III The scope, effective date, and compensation provisions warrant focused review | 42 |
| IV The court should supply a reviewable explanation of the material retention issues | 48 |
| A The question is the adequacy of the reasons given for approval | 48 |
| B The remaining procedural objections depend on their effect on the retention determination | 51 |
| V Any remedy should address the specific deficiency established | 54 |
| CONCLUSION | 56 |
| ADDENDUM OF RELEVANT PROVISIONS | 57 |
| CERTIFICATE OF COMPLIANCE | 59 |
| CERTIFICATE OF USE OF GENERATIVE AI | 59 |
| CERTIFICATE OF SERVICE | 60 |

# TABLE OF AUTHORITIES

## Cases


| | |
|---|---|
| *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985) | 18 |
| *In re American International Refinery, Inc.*, 676 F.3d 455 (5th Cir. 2012) | 41 |
| *In re Arkansas Co.*, 798 F.2d 645 (3d Cir. 1986) | 43 |
| *In re AroChem Corp.*, 176 F.3d 610 (2d Cir. 1999) | 37 |
| *In re Barnes*, No. 12-65084-tmr7 (Bankr. D. Or. July 16, 2013) | 36 |
| *In re BH & P Inc.*, 949 F.2d 1300 (3d Cir. 1991) | 27, 48, 51 |
| *In re Big Rivers Electric Corp.*, 355 F.3d 415 (6th Cir. 2004) | 34–35 |
| *In re Boy Scouts of America*, 35 F.4th 149 (3d Cir. 2022) | 1–3, 9–10, 13, 15, 17, 19–21, 25–26, 28, 34–35, 39, 56 |
| *In re Chicken Soup for the Soul Entertainment Inc.*, No. 25-52-GBW, Doc. 14 (D. Del. July 22, 2025) | 21 |
| *In re Colony Hill Associates*, 111 F.3d 269 (2d Cir. 1997) | 19 |
| *In re Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005) | 1–2, 9–10, 13, 15, 19–21, 38–39, 56 |
| *In re Decade, S.A.C., LLC*, No. 18-1880-MN, Doc. 14 (D. Del. Feb. 5, 2020) | 38 |
| *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99 (3d Cir. 1988) | 43 |
| *In re First Interregional Equity Corp.*, 218 B.R. 731 (Bankr. D.N.J. 1997) | 22 |
| *In re Imerys Talc America, Inc.*, 38 F.4th 361 (3d Cir. 2022) | 19 |
| *In re Interwest Business Equipment, Inc.*, 23 F.3d 311 (10th Cir. 1994) | 25, 27 |

| | |
|---|---|
| *In re M&M Marketing, L.L.C.*, 426 B.R. 796 (B.A.P. 8th Cir. 2010), aff'd, 397 F. App'x 258 (8th Cir. 2010) | 35 |
| *In re Malin*, No. 11-62288-WLH, Doc. 48 (Bankr. N.D. Ga. June 29, 2023) | 22 |
| *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d Cir. 1998) | 26 |
| *In re Morrissey*, 717 F.2d 100 (3d Cir. 1983) | 48 |
| *In re Narcisse*, 2013 WL 1316706 (Bankr. E.D.N.Y. Mar. 29, 2013) | 22 |
| *In re Pillowtex, Inc.*, 304 F.3d 246 (3d Cir. 2002) | 34–35, 48, 51 |
| *In re Project Orange Associates, LLC*, 431 B.R. 363 (Bankr. S.D.N.Y. 2010) | 36 |
| *In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015) | 20 |
| *In re Team Systems International, LLC*, No. 22-10066 (CTG), D.I. 420 (Bankr. D. Del. Feb. 1, 2024) | 24 |
| *In re Team Systems International, LLC*, No. 24-3365 (3d Cir. Mar. 26, 2026) (not precedential) | 17 |
| *In re Technicool Systems, Inc.*, 896 F.3d 382 (5th Cir. 2018) | 20 |
| *In re The Homesteads Community at Newtown, LLC*, 390 B.R. 32 (Bankr. D. Conn. 2008) | 36 |
| *In re Wilson*, 94 B.R. 886 (Bankr. E.D. Va. 1989) | 22 |
| *Schubert v. Lucent Technologies Inc.* (*In re Winstar Communications, Inc.*), 554 F.3d 382 (3d Cir. 2009) | 29 |
| *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253 (3d Cir. 1995) | 45 |

TABLE OF AUTHORITIES continued

Statutes


| | |
|---|---|
| 11 U.S.C. § 101(14)(C) | 57 |
| 11 U.S.C. § 327 | 1–3, 8, 21, 25, 28, 39, 42–43, 54, 57 |
| 11 U.S.C. § 328 | 1, 3, 6, 8, 12, 44–45, 51, 57 |
| 11 U.S.C. § 330 | 45 |
| 11 U.S.C. § 547(b)(4)(B) | 29, 57–58 |
| 11 U.S.C. § 726(a)(6), (b) | 16, 28, 46, 58 |
| 28 U.S.C. §§ 157, 158, 1334 | 1–2 |


Rules


| | |
|---|---|
| Fed. R. Bankr. P. 2014 | 27, 39, 41, 43, 50, 58 |
| Fed. R. Bankr. P. 2016 | 47 |
| Fed. R. Bankr. P. 2018 | 2, 7, 10, 17–18, 20–25, 56, 58 |
| Fed. R. Bankr. P. 7052 | 48 |
| Fed. R. Bankr. P. 8002 | 1 |
| Fed. R. Bankr. P. 8004 | 2 |
| Fed. R. Bankr. P. 8007 | 9, 20, 54 |
| Fed. R. Bankr. P. 8009 | 16 |
| Fed. R. Bankr. P. 8013 | 16 |
| Fed. R. Bankr. P. 8015 | 59 |
| Fed. R. Bankr. P. 9005 | 25 |
| Fed. R. Bankr. P. 9014, 9017 | 48, 53 |
| Fed. R. Civ. P. 52 | 48 |
| Fed. R. Civ. P. 61 | 25 |

JURISDICTIONAL STATEMENT

Eric David Bartels appeals solely in his individual capacity from the September 11, 2026 order authorizing the Chapter 7 Trustee to employ Tucker Arensberg, P.C. and Gendler & Gendler, PLLC. The order overruled his objections and approved employment and contingent compensation under 11 U.S.C. §§ 327(a) and 328(a). Bankruptcy Doc. 181, App. 221–223. He does not appear for Luxury Time Global, LLC.

The Bankruptcy Court exercised jurisdiction under 28 U.S.C. §§ 157 and 1334 over a core matter concerning administration of the estate. See 28 U.S.C. § 157(b)(2)(A); Doc. 181, App. 221. This Court has jurisdiction over a final retention order under 28 U.S.C. § 158(a)(1). *In re Boy Scouts of America*, 35 F.4th 149, 156 (3d Cir. 2022); *In re Congoleum Corp.*, 426 F.3d 675, 684–85 (3d Cir. 2005).

The order was entered September 11, 2026. Bartels filed his notice of appeal that day; the notice was docketed as District Court Doc. 1. App. 224–229; docket report, App. 008. The notice identifies the September 10 ruling and the separate implementing order. It is timely under Rule 8002(a); Rule 8002(a)(2) also addresses a notice filed after announcement but before entry. This appeal concerns Doc. 181. The earlier order at Doc. 158 was vacated because it had been entered in error, and the court directed that a hearing be set. Doc. 159, App. 098.

Standing is contested and is addressed in Argument I. Bartels invokes the retention-specific analysis in *Boy Scouts* and *Congoleum*, together with review of the disposition of his own limited-participation request. He does not assert that potential-defendant status alone establishes appellate standing. If the Court treats the challenged order as interlocutory, he alternatively requests consideration under 28 U.S.C. § 158(a)(3) and Rule 8004(d), which permits the Court to treat a timely notice as a motion for leave or direct that a motion be filed. That alternative does not eliminate the standing requirement.

ISSUES PRESENTED AND STANDARDS OF REVIEW

1. Whether Bartels may seek review of this retention order and the denial of his request for limited participation, applying Article III, bankruptcy appellate standing, and Rule 2018(a), and considering his direct connection to the approved assignment and the possible effect on the value of his sole membership interest, rather than treating § 327(c) as disposing of every issue. Legal questions receive plenary review; the exercise of discretion under Rule 2018(a) is reviewed for abuse of discretion.

2. Whether approval under § 327(a) adequately addressed the firms' current ORAFI representation, the asserted use of knowledge obtained through that representation, and the operation of the ORAFI exclusion during initial evaluation.

Retention is reviewed for abuse of discretion, underlying law de novo, and factual findings for clear error. *Boy Scouts*, 35 F.4th at 156.

3. Whether the court adequately defined the scope, July 15 effective date, and compensation approved under §§ 327 and 328, including the higher contingency tier and the review reserved for later fee applications. The governing legal standard is reviewed de novo and the resulting discretionary decision for abuse of discretion; factual findings receive clear-error review.

4. Whether the court supplied a sufficient factual and legal basis for meaningful review of the material retention issues, and whether disposition of the proposed additional response and continuance request prejudiced Bartels's ability to address those issues. Case-management decisions are reviewed for abuse of discretion; legal error receives plenary review. Procedural error warrants relief only when material.

5. Whether any demonstrated error warrants reversal, limited modification, or remand for disclosures, findings, and a renewed retention determination. The requested remedy follows the particular legal, factual, or discretionary error established, rather than presuming that every asserted defect requires disqualification.

STATEMENT OF THE CASE

The debtor filed its petition on April 2, 2025, and the case was converted to Chapter 7 on August 22, 2025. The Trustee states those dates in the amended application. Doc. 151 ¶¶ 5–6, App. 023. The present appeal concerns her proposed employment of two firms to investigate and pursue estate recoveries.

The original application was filed July 15, 2026. Its engagement letter defines an assignment involving potentially avoidable prepetition payments and requires written agreement for additional matters. Doc. 147-2 §§ 1–3, App. 012–014. The amended application was filed July 24. It corrected the earlier percentage, effective-date, and omitted-word errors; those corrected defects are not independent grounds of this appeal. Doc. 151, App. 022; Doc. 153 ¶ 1, App. 047.

The amended application relies on the firms' representation of ORAFI, described as the largest unsecured creditor with a claim exceeding $1 million, and their resulting familiarity with the debtor and possible claims. It proposes investigation, litigation, discovery, settlements, analysis of relationships with creditors and insiders, and related services. Doc. 151 ¶¶ 9–12, App. 024–026. The verified statement identifies Beverly Weiss Manne, Justin Gendler, and Kasey Bolton as the lawyers coordinating and leading the trustee representation. Doc. 151-1 ¶ 8, App. 033.

The papers disclose the current ORAFI relationship. They also contain an express exclusion: the firms will not represent ORAFI in trustee litigation, will not represent the Trustee in a matter adverse to ORAFI without further disclosure and appropriate relief, and contemplate conflicts counsel if an estate claim against ORAFI is identified. Doc. 151 ¶ 15, App. 027; Doc. 147-2 § 7, App. 016. The verified statement reports ORAFI's waiver, says no potential claim against it is known, and provides for the Trustee or conflicts counsel to bring any such action. Doc. 151-1 ¶¶ 14–17, App. 035. A signed, notarized verified statement is present. App. 038.

Bartels's renewed objection requested limited participation, nonprivileged disclosure, and clarification of the initial evaluation of ORAFI-related matters. It attached the Trustee's July 24 filings seeking substitution or intervention in the existing Malak civil action and referral to the Bankruptcy Court. It did not represent that filing those requests itself obtained that relief. Doc. 153 ¶¶ 3–4, 22–30, 45–46 and exhibits, App. 047–085.

The Trustee responded that she could perform the threshold assessment herself and that both ORAFI and the Trustee would retain other counsel if the identified situation arose. Doc. 156 ¶ 40, App. 094–095. By an order dated August 4 and entered August 5, the court granted Bartels leave to file his limited sur-reply by August 11, allowed responses by August 25, and set a September 10 hearing.

Doc. 160, App. 099–100. Bartels's authorized sur-reply acknowledged the Trustee's position and requested definition of the exclusion and handoff to the Trustee or properly retained conflicts counsel. It permitted appropriately defined prospective work. Doc. 163 ¶¶ 19–21, App. 105.

After the sur-reply, the Trustee filed Doc. 171 and a revised proposed order at Doc. 171-1. Those papers expressly sought § 328 approval and addressed the 35% and 40% tiers. App. 126–137. Bartels filed leave motions with proposed responses at Docs. 173 and 174. App. 160–183. Doc. 174 identified the new allegations and revised operative terms as the reasons for a confined response. Doc. 174 ¶¶ 4–6, App. 172–173. The Trustee opposed further briefing in Doc. 175. App. 184–191. The court's August 31 notice expressly set both leave motions for the September 10 hearing. Doc. 176, App. 192. Bartels also sought a short continuance to permit prospective counsel to conclude a representation review; the court denied that request. Docs. 178–179, App. 193–196.

At the resumed August 25 hearing, counsel reported an arrangement under which Malak would join as a co-plaintiff in bankruptcy litigation and participate in discovery, while his district-court action would be stayed and any individual claims addressed separately. Aug. 25, 2026 Tr. 18:18–21, 19:12–24 (Bankr. Doc. 201), App. 155–156. LTG had previously alleged insider preferences against Malak in Adv. No. 5:25-ap-00047-MJC, a proceeding dismissed without prejudice.

By a separate Motion for Limited Judicial Notice and Limited Consideration of Specified Bankruptcy Filings (Limited-Notice Motion), Bartels requests consideration of those filed allegations and that disposition solely as procedural context. See Ex. C at C-6–C-7, C-11–C-12. The requested uses and preservation limits are addressed in Argument II. The proposal is not treated as an entered joinder order.

At the September 10 hearing, the court considered the declaration and oral proffers, heard Bartels, and obtained the United States Trustee's position. Sept. 10, 2026 Tr. 11:7–13, 12:14–15:25 (Bankr. Doc. 202), App. 207–211. It credited the Chapter 7 Trustee's experience, limited resources, and continuing oversight. Id. 16:4–18:15, App. 212–214. It rejected Bartels's request under Rule 2018(a), overruled the objections, and approved employment. Id. 21:10–22:1, App. 217–218. It treated the leave motions at Docs. 173 and 174 as moot. Id. 23:1–19, App. 219; docket report, App. 007.

The Trustee's August 24 response asserted that Bartels, although LTG's sole member, lacked any economic interest because the schedules reported $2,501 in assets and $2,280,519.61 in liabilities. Doc. 171 ¶ 14, App. 129. The hearing record later added a qualified and materially different proffer. Manne stated that creditors were owed several million dollars and that there "appear to have been voidable transactions well exceeding that," adding: "Maybe as much as seven to

ten million dollars of these debtor's funds." Sept. 10 Tr. 10:20–23 (Bankr. Doc. 202), App. 206. The court shortly thereafter confirmed that Bartels was LTG's 100% member and then focused on whether he was a creditor. Id. 12:2–13, App. 208. The proffer did not establish that the stated transaction range was net of duplication or defenses, collectible, or sufficient to produce a residual after allowed claims, expenses, taxes, and compensation.

The context identifies the announced avenues but not a calculation. Immediately before giving that range, Manne referred to the United States Trustee's report and transactions involving casinos, payments between Bartels and casinos, and alleged commingling. She then identified possible recoveries from casinos, Bartels, or other parties. Sept. 10 Tr. 10:9–11:5 (Bankr. Doc. 202), App. 206–207. The passage does not supply a transfer schedule, allocate the estimate among defendants, identify an applicable avoidance period for each transfer, or establish a collectible estate recovery. Bartels relies on the qualified proffer as part of the retention and appellate-standing record, without conceding its amount or the avoidability of any transaction.

Doc. 181 expressly authorizes employment under §§ 327(a) and 328(a), effective July 15, 2026. It fixes the contingency percentages, requires fee applications and expense itemization, subjects final approval to § 328(a), incorporates the application and engagement terms, and gives the order priority

over inconsistent application or declaration language. App. 221–223. Its footnote states that employment approval does not guarantee compensation. App. 223.

After entry of the retention order, the Trustee filed her September 17 objection to Bartels's separate Rule 8007 motion. That filing expressly refers to "the Trustee's forthcoming Rule 2004 examination of Bartels," while acknowledging that no examination motion had been filed. Doc. 199, p. 2; Limited-Notice Motion, Ex. A at A-2. Paragraph 16 likewise anticipates examinations without reporting a filed request. Ex. A at A-5. Bartels requests consideration of that announced position for the limited standing and continuing-controversy purposes explained in Argument I.A, not as evidence of error based on information unavailable before retention.

## SUMMARY OF ARGUMENT

The Court should apply the retention-specific appellate-standing analysis of *Boy Scouts* and *Congoleum* to Bartels's documented connection to this engagement. Before approval, the firms had already sought relief for the Trustee in civil litigation against him, and the retention hearing identified him as a target. Sept. 10 Tr. 7:9–13, App. 203. The Trustee subsequently called his Rule 2004 examination "forthcoming." Doc. 199, p. 2 & ¶ 16, p. 5; Limited-Notice Motion, Ex. A at A-2, A-5. Subject to the Court granting the requested limited consideration, this is an announced investigative intention corroborating an

existing connection, not an inference based solely on former management status. *Boy Scouts* recognizes that delayed review of professional qualification may leave serious ethical issues without meaningful review. 35 F.4th at 157; *Congoleum*, 426 F.3d at 685–87. The Court should evaluate the identified connection and asserted impairment under those decisions rather than categorically exclude Bartels because he is not a creditor or no examination motion has yet been filed.

The record also supplies a possible ownership-based effect. The Trustee relied on petition-date scheduled assets and liabilities to deny that Bartels had any economic interest as LTG's sole member. Proposed counsel later proffered that apparent voidable transactions might total $7 million to $10 million, and Doc. 181 preapproved compensation of 35% or 40% of gross recoveries. That combination does not prove a collectible recovery, a surplus, or standing by itself. It does provide an additional record-specific financial connection for this Court to consider under the retention authorities.

The denial of that participation presents a distinct question. Rule 2018(a) permits intervention for cause in a specified matter. Decisions granting intervention consider the applicant's own interest, its representation by others, and the practical effects of participation. After Bartels identified the existing civil filings and the unresolved initial ORAFI review, the court repeatedly asked about prejudice to the debtor or creditors and ultimately reduced his cause to defendant

status. The Court should review whether that framing displaced the individualized inquiry his request required.

On the merits, the asserted deficiency concerns the estate's independent choice of claims and its evaluation of a current creditor client. The firms rely on knowledge gained representing ORAFI to justify an assignment that includes investigating transactions, evaluating creditor relationships, and negotiating settlements. ORAFI's interest in increasing common recoveries can align with the estate's, while an interest in protecting its own claim or transactions can diverge. The written ORAFI exclusion and the Trustee's proposed personal review must therefore operate before the firms advise that an ORAFI-related avenue needs no further examination. Bartels seeks a determination of whether those arrangements adequately separate the work at that stage, not disqualification merely because ORAFI is a creditor.

The proposed litigation role for Peter Malak supplies a separate illustration of the independence concern. At the resumed August 25 hearing, counsel proposed allowing him to join as a co-plaintiff and participate in discovery, although LTG had previously filed insider-preference allegations against him in a proceeding dismissed without prejudice. Subject to proper inclusion of that procedural history, the question is who independently evaluated any legally available estate claims involving Malak before offering that role, and how discovery participation and

competing recovery objectives would be separated from that evaluation. The proposal does not establish joinder or a client relationship with the firms. See Argument II.

The compensation issues likewise concern the terms actually approved. A contingent engagement may be entirely appropriate for an estate lacking funds for hourly counsel. But the prospective effect of § 328 makes clarity about the covered recovery, the higher tier, and any ancillary charges significant at retention. The effective-date issue must distinguish services during a pending application from services performed without an application.

The procedural challenge concerns the adequacy of the decision actually made. Bartels was heard, but permission to speak does not by itself establish that the court resolved the initial-review problem he described. The requested remand would require a reviewable explanation of who independently evaluates ORAFI-related matters before adversity is recognized and any legally available claims involving Malak in light of his proposed litigation role, how the firms' current-client obligations affect that work, and how any material compensation connections are treated. A separate written opinion or a universal safeguards checklist is not the requested end; a supported qualification determination is.

ARGUMENT

**I The Court should review the retention challenge and the denial of limited participation under their distinct standards**

A The retention-specific appellate-standing decisions require consideration of Bartels's own connection to this engagement

*Boy Scouts* and *Congoleum* provide the governing starting point. *Congoleum* allowed noncreditor insurers to appeal counsel's retention because their rights and the fairness of the bankruptcy process were implicated, and delayed review might never provide a meaningful remedy. 426 F.3d at 685–87. *Boy Scouts* reaffirmed that retention appeals warrant less detailed scrutiny of the appellant's injury because serious professional-qualification issues affect the integrity of the proceeding. 35 F.4th at 157. Creditor status is therefore not a categorical prerequisite to appellate review of retention.

Bartels's ownership and former management role connect him to the approved assignment. He is LTG's sole member and former managing member and officer. Doc. 153 ¶ 6, App. 048; Doc. 171 ¶ 14, App. 129. The assignment includes avoidance, preference, fraudulent-transfer, and director/officer actions, supported by subpoenas, written discovery, document review, depositions, witness preparation, and fact development. Doc. 151 ¶ 12(b)–(d), App. 025. The conflicts-search schedule identifies him as the only individual, alongside eleven gaming entities. Doc. 151-1, Schedule 1, App. 039.

Before approval, these firms had filed substantive requests for the Trustee in the Malak civil action against him, seeking substitution or intervention and referral. Doc. 153 ¶¶ 3–4, 8–12 and exhibits, App. 047–049, 061–085. The application proposed a broader investigation of the debtor's transactions and relationships, relying expressly on knowledge acquired through current ORAFI representation. Doc. 151 ¶¶ 9(e), 11–12, App. 025–026. Bartels timely challenged how that concurrent relationship would affect initial evaluation and requested a confined opportunity to address qualification, information use, and the authority covering the existing work. Doc. 153 ¶¶ 22–30, 45–46; Doc. 163 ¶¶ 6–8, 19–21, App. 050–054, 103, 105. At the retention hearing, Bolton expressly described Bartels as "a target of these investigations." Sept. 10 Tr. 7:9–13 (Bankr. Doc. 202), App. 203. Manne identified recovery from Bartels among the contemplated avenues. Id. 10:24–11:5, App. 206–207. These statements document the announced investigative focus; they are not findings of liability, an issued examination order, or proof that Doc. 181 itself compelled testimony or production.

The Trustee had already identified that connection before retention. Her July 30 response described Bartels as the subject of potential claims she had a duty to investigate and identified him among the potential defendants in fraudulent-transfer actions. Doc. 156 ¶¶ 28, 33, App. 092–093. Her September 17 filing then expressly referred to "the Trustee's forthcoming Rule 2004 examination of

Bartels." Doc. 199, p. 2; Limited-Notice Motion, Ex. A at A-2. Paragraph 16 confirms that examinations were anticipated while acknowledging that no examination motion had yet been filed. Ex. A at A-5. The distinction is between an announced intention and a requested or scheduled examination; absence of the latter does not erase the former. The later statement corroborates the investigative connection already identified before approval, subject to the record limits below.

The significance is the connection between Bartels and the particular investigative engagement he challenged. His asserted impairment concerns the firms' current ORAFI duties, their proposed use of knowledge obtained through that representation, and their estate-side work in proceedings against him. An anticipated examination gives additional practical context to that preserved concern. The Trustee could investigate through other qualified counsel, so the prospect of examination alone does not establish an injury caused by retaining these firms or prove a disqualifying conflict. The requested remedy remains review of the particular retention arrangement, with any warranted remand addressing the asserted impairment while preserving lawful investigation. *Boy Scouts*, 35 F.4th at 157; *Congoleum*, 426 F.3d at 685–87.

Doc. 199 postdates the September 11 order. The Limited-Notice Motion requests consideration of its stated position only as corroboration, for appellate standing and any continuing-controversy inquiry, of an investigative connection

already identified in the retention record. It is not evidence presented before the ruling, does not create standing retroactively, and does not independently establish error in the retention decision. Bankruptcy filing alone does not authorize use as new merits evidence; Rule 8009(e) does not supply that authorization. Consideration remains subject to this Court's ruling on the separate motion. If the Court declines that request, the pre-order materials cited above remain the basis for this argument. See Fed. R. Bankr. P. 8009(a)(4), (e); 8013(a).

The record supplies an additional, though not dispositive, ownership-based financial connection. Manne proffered apparent voidable transactions possibly totaling $7 million to $10 million, while the Trustee cited scheduled liabilities of $2,280,519.61. Doc. 171 ¶ 14, App. 129; Sept. 10 Tr. 10:20–23 (Bankr. Doc. 202), App. 206. If estate property ultimately exceeded all allowed claims and expenses, § 726(a)(6) would return any residue to LTG. Bartels asserts a possible effect on his sole membership interest, not creditor status or a direct personal entitlement to estate funds. The comparison does not prove a collectible recovery or surplus: the range may include overlapping or defensible transactions, scheduled liabilities are not necessarily allowed claims, and expenses, compensation, priority claims, interest, taxes, and collection costs remain uncertain. It does show why the $2,501 scheduled-asset snapshot alone cannot conclusively establish that the membership interest could have no value.

The Third Circuit's recent nonprecedential decision in *In re Team Systems International, LLC,* No. 24-3365, slip op. at 5–8 (3d Cir. Mar. 26, 2026) (not precedential), cuts both ways. In a separate appeal concerning approval of a settlement, the court held that the LLC members' asserted reduction in equity value satisfied Article III, but affirmed the absence of bankruptcy appellate standing because they could not show that the challenged settlement would leave them with less money; the possible recovery was too contingent. Id. at 6–8. That appeal did not concern counsel retention, Rule 2018, or the retention-specific analysis in *Boy Scouts*.

Here, the possible-recovery premise came from proposed counsel's own qualified proffer in support of the retention application, and Doc. 181 preapproved compensation of 35% or 40% of gross recoveries, subject to a later fee application. Doc. 181 ¶¶ 4–5, App. 222. Those facts do not automatically establish standing: contingent counsel may create recoveries otherwise unavailable, the transaction range may not translate into collectible claims, and no residue is assured. They do supply a record-specific possible pecuniary effect to consider together with the firms' existing litigation activity against Bartels and *Boy Scouts*'s direction that injury is scrutinized less minutely in retention appeals because professional-qualification issues implicate the proceeding's integrity. 35 F.4th at 157. Bartels relies on that combination, not the possible residual alone.

Bartels's sur-reply stated that he was not then asserting a right to an equity distribution. Doc. 163 ¶ 2, App. 102. He does not retroactively recast residual value as Rule 2018 cause argued below or claim that the Bankruptcy Court failed to decide a preserved surplus theory. He invokes Manne's later hearing proffer only as an additional consideration in this Court's appellate-standing inquiry.

The asserted injury is the combined effect of that allegedly inadequately examined arrangement on the fairness of the estate's participation in litigation against Bartels, rejection of his specific request to address its terms, and the possible effect of the approved gross-recovery compensation on residual estate value. It is tied to the particular professionals and assignment, rather than a claim to supervise every estate decision. A renewed, adequately supported retention determination could address the asserted impairment while leaving the Trustee free to investigate and pursue proper claims. Bartels does not rest on any one of those considerations alone.

Two additional appellate decisions support the manner of analysis. *In re Amatex Corp.*, 755 F.2d 1034, 1039–42 (3d Cir. 1985), treated exclusion from meaningful participation functionally and permitted immediate review; it also required a voice for affected future claimants without first resolving whether they held technical bankruptcy claims. Its participation holding arose under Chapter 11's § 1109(b). Here it supports reviewing the distinct denial of Bartels's own

participation request, not importing an automatic Chapter 11 participation right into Chapter 7.

In *In re Colony Hill Associates*, 111 F.3d 269, 273–74 (2d Cir. 1997), an unsuccessful bidder had appellate standing to challenge the intrinsic fairness of a sale, despite the ordinary restriction on bidder appeals. The court examined the particular challenge and the appellant's actual involvement. That sale-specific holding supplies a persuasive analogy for evaluating a participant's concrete connection to a challenged process; *Boy Scouts* and *Congoleum* supply the direct retention authorities here. Bartels does not ask this Court to assume collusion from that analogy.

The governing limits can be addressed together. *In re Imerys Talc America, Inc.*, 38 F.4th 361, 371–73 (3d Cir. 2022), recognized appellate standing for two insurers with a direct connection to the asserted conflict but rejected other insurers' attempt to rely solely on the interests of future claimants. It confirms that *Congoleum* did not eliminate the person-aggrieved requirement. Bartels accordingly relies on the identified effect on his own litigation and participation, not a general entitlement to assert creditors' interests. Article III still requires a concrete injury, causation, and redressability; procedural dissatisfaction alone does not suffice.

The Trustee's later objection invokes the general person-aggrieved standard and argues that the possibility of investigating Bartels does not make him aggrieved by retention. Doc. 199 ¶ 12, p. 4; Limited-Notice Motion, Ex. A at A-4. Bartels answers that legal contention through the retention-specific analysis: *Congoleum* expressly distinguished an appeal concerning reinstated claims from one concerning counsel's retention, and *Boy Scouts* reaffirmed the importance of meaningful review of professional qualification. 426 F.3d at 685–87; 35 F.4th at 157. The Court should therefore assess the identified personal connection and qualification-related impairment under those authorities. Neither the Trustee's examination statement nor a general interest in ethical administration substitutes for the required showing of injury.

Appellate standing is distinct from interim stay relief. *In re Revel AC, Inc.*, 802 F.3d 558, 568–71 (3d Cir. 2015), requires a sufficient merits showing and likely irreparable harm before balancing harm to others and the public interest; threatened harm need not already have occurred. Id. at 569. That preventive principle neither establishes appellate standing nor grants a stay here. This appeal seeks review of retention under *Boy Scouts* and *Congoleum*; any separate request for interim relief must satisfy Rule 8007 on its own record.

The closest adverse retention decisions also require an answer. *In re Technicool Systems, Inc.*, 896 F.3d 382, 384–87 (5th Cir. 2018), rejected an

owner's appeal involving concurrent creditor representation and a speculative surplus. *In re Chicken Soup for the Soul Entertainment Inc.*, No. 25-52-GBW, Doc. 14, at 6–9 (D. Del. July 22, 2025), dismissed a noncreditor defendant's retention appeal because continued prosecution by the selected firm did not establish the required direct injury. Neither opinion analyzes the retention-specific approach stated in *Boy Scouts* and *Congoleum*. This appeal expressly presents that approach and challenges a preserved Rule 2018 ruling as well as retention. Nevertheless, the existing civil filings alone do not establish standing: Doc. 181 does not itself impose liability, decide a defense, transfer ownership of claims, or compel disclosure. The Court must determine whether the identified qualification-related impairment is sufficiently direct under the controlling Third Circuit decisions.

B Rule 2018 cause concerns the applicant's interest and the practical value of limited participation

Rule 2018(a) permits an interested entity to intervene for cause in a specified matter. Its Advisory Committee Note explains that subsection (a) reaches entities not otherwise entitled to participate. Section 327(c)'s creditor-or-United-States-Trustee objection mechanism therefore does not exhaust the separate question whether the court should permit limited participation under Rule 2018. Bartels expressly requested that exercise of discretion; he did not claim a creditor's statutory veto. Doc. 163 ¶¶ 2, 6–8, App. 102–103.

*In re First Interregional Equity Corp.*, 218 B.R. 731, 735–40 (Bankr. D.N.J. 1997), provides a useful regional application. In a SIPA liquidation conducted under Chapter 7, the court rejected reliance on § 1109(b) and granted participation under Rule 2018. Its analysis considered the applicant's economic or similar interest, adequacy of existing representation, delay or prejudice, and the consequences of exclusion. The relevant interest belonged to the applicant seeking participation; it was not confined to proving injury to creditors of the estate in which intervention was requested.

Other courts have specifically granted Rule 2018 participation to litigation defendants. In *In re Malin*, No. 11-62288-WLH, Doc. 48, at 2–3 (Bankr. N.D. Ga. June 29, 2023), the court allowed a noncreditor defendant to oppose reopening a Chapter 7 case because the ruling could affect pending state litigation and no estate participant protected his interest. *In re Wilson*, 94 B.R. 886, 887–88 (Bankr. E.D. Va. 1989), granted a proposed defendant intervention concerning abandonment where his distinct position was not adequately represented. *In re Narcisse*, 2013 WL 1316706, at *3 (Bankr. E.D.N.Y. Mar. 29, 2013), likewise permitted a state-court defendant to be heard on reopening under Rule 2018. These are participation decisions, not holdings that every defendant may appeal counsel's retention. Their relevance is that defendant status does not categorically foreclose a discretionary, matter-specific cause determination.

Applied here, the record supported consideration of four concrete points. First, the proposed employment already intersected with identified litigation against Bartels. Second, the Trustee, ORAFI's counsel, and the United States Trustee were supporting the engagement; none represented Bartels's individual position on the disputed initial-review arrangement. Third, he raised that arrangement before the hearing through an objection and an expressly authorized sur-reply. Fourth, he requested bounded participation concerning disclosures and terms, not control of the estate's investigation or adjudication of his liability. Docs. 153, 160, 163, App. 047–054, 099–105. The Trustee's and United States Trustee's support deserved consideration, but it did not itself answer whether this particular interest had been adequately presented and resolved.

C The hearing exchange supports review of whether the court framed cause too narrowly

Bartels expressly invoked Rule 2018, identified the firms' existing civil filings, and limited his request to the conflict record, safeguards, preapproval activity, and preservation of defenses. Sept. 10 Tr. 12:14–25 (Bankr. Doc. 202), App. 208. The court acknowledged possible prejudice to Bartels but asked how collection efforts against him prejudiced the debtor and creditors. Id. 13:1–7, App. 209. After acknowledging its discretion under Rule 2018, it again asked him to identify prejudice to the debtor or creditors. Id. 13:17–25, App. 209. Bartels then

described the combination of current ORAFI representation, derived knowledge, and the absence of a defined independent process before formal adversity was recognized. Id. 14:13–24, 15:13–25, App. 210–211.

After Bartels renewed his initial-review concern, the court ultimately stated that he had supplied no cause "really, other than he's a defendant" and again overruled the objection for lack of cause. Sept. 10 Tr. 19:1–13, 21:13–22:1 (Bankr. Doc. 202), App. 215, 217–218. Bartels contends that this description did not account for the particular initial-evaluation issue presented in the filed papers and repeated orally. The argument is not that the court failed to recognize its discretion. It is that the court applied that discretion to an unduly reduced account of the request and treated prejudice to the estate or its creditors as the operative route to participation, without adequately evaluating Bartels's own interest and the limited participation sought.

The 2024 bankruptcy decision in *In re Team Systems International, LLC*, No. 22-10066 (CTG), D.I. 420, at 3–7 (Bankr. D. Del. Feb. 1, 2024), rejected similar objections by noncreditor equity holders and independently approved retention. App. 112–116. It did not decide a Rule 2018 request. The present Rule 2018 argument therefore requires its own analysis, while its ultimate success remains dependent on the record and the discretionary standard. Participation below would not, by itself, establish standing to appeal every merits issue. The

March 2026 Third Circuit decision discussed above reviewed a separate settlement order, not this retention determination.

Estate interests properly govern the § 327 merits inquiry. *Boy Scouts*, 35 F.4th at 158–59. Bartels challenges using that inquiry as the exclusive measure of his separate Rule 2018 request. Cause required consideration of his asserted interest and the practical value of the limited participation sought; the absence of a creditor claim did not itself answer that request.

The court did allow argument and stated that it considered the papers. Under Rule 9005 and Civil Rule 61, procedural error warrants relief only if it affects substantial rights. Bartels therefore seeks no reversal for the absence of a formal intervenor label after an otherwise adequate opportunity to present his position. The procedural question is whether the reduced account of his cause materially restricted consideration of his confined request. The separate merits question is whether the court adequately resolved the specific qualification issue in Argument II, even if it heard everything he wished to present. The court's independent responsibility to examine professional qualification remains relevant to that inquiry. *In re Interwest Business Equipment, Inc.*, 23 F.3d 311, 315–18 (10th Cir. 1994).

**II The ORAFI relationship and proposed Malak litigation role require an assessment of independent estate evaluation**

The central qualification issue is the firms' current ORAFI representation within the investigative work approved for the estate. The application treats creditor-derived familiarity as a reason to retain the firms and authorizes them to investigate transactions and analyze creditor relationships. Doc. 151 ¶¶ 9(e), 11–12, App. 025–026. The court had to evaluate how those functions operate alongside the ORAFI exclusion and the Trustee's proposed initial assessment. Doc. 151 ¶ 15; Doc. 156 ¶ 40, App. 027, 094–095. The proposed Malak litigation role supplies a separate illustration, subject to the record limitations below; the ORAFI argument rests independently on the application, operative objections, and retention hearing.

Under *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 475–78 (3d Cir. 1998), actual conflicts require disqualification, potential conflicts permit a discretionary determination, and appearance alone does not justify disqualification. The relevant concern is impairment of representation of the estate. A creditor's hostility to Bartels, counsel's size, or the possibility of future litigation cannot replace that analysis.

The qualification inquiry does not require a completed act of favoritism. *Boy Scouts* explains that the specific facts may establish an actual conflict when they make it likely counsel will be positioned to favor an impermissibly competing

interest. 35 F.4th at 158. The adverse interest must nevertheless exist at retention. Id. at 158 n.5. Bartels's asserted predicate is the disclosed current ORAFI engagement and its overlap with the proposed estate assignment, not an assumption that an undisclosed instruction or payment exists.

*In re BH & P Inc.*, 949 F.2d 1300, 1316–18 (3d Cir. 1991), requires a case-specific exercise of discretion supported by the evidentiary record and places disclosure of identified potential conflicts on the applicant. Rule 2014(a)(2)(D)–(F), (3) requires disclosure of the services, compensation arrangements, and connections bearing on the engagement. The applicant bears the qualification burden. *Interwest*, 23 F.3d at 317–18. These duties require consideration of the particular overlap identified; common recovery objectives alone do not establish how competing duties would be handled during initial evaluation.

The concrete intersection arises during investigation and claim selection. The firms propose to investigate transactions, develop facts, negotiate settlements, and assist the Trustee in analyzing the debtor's pre- and postpetition relationships with creditors. Doc. 151 ¶ 12(b), (d), (f), (i), App. 025–026. Those functions may require testing ORAFI-supplied accounts, identifying credits, or deciding whether ORAFI-related transactions warrant scrutiny. Bartels identified that overlap in Doc. 153 ¶¶ 22–30, App. 050–051, and repeated it at Sept. 10 Tr. 14:18–15:25, App. 210–211. No completed act of favoritism is required to examine present

qualification, but a specific basis for competing duties remains necessary. *Boy Scouts,* 35 F.4th at 158. Bartels relies on the disclosed assignment and current-client relationship, not an established avoidance claim against ORAFI.

The estate's interests encompass both obtaining recoveries and evaluating which creditor claims properly share in them. A larger allowed unsecured claim may receive a larger share of a common recovery; that does not mean recovery benefits ORAFI alone. See 11 U.S.C. § 726(b). The concern is investigative selection: whether advice shaped by duties to ORAFI could direct attention toward other parties while leaving ORAFI-related transactions, credits, or potential estate claims insufficiently tested. That concern arises before a claim is identified and referred elsewhere. A requirement that all recoveries enter the estate account addresses disposition of proceeds, but does not by itself answer who independently decides what to investigate or decline. The disclosed overlap and preserved objections require a supported qualification determination under § 327(a), not an assumption of actual diversion. Doc. 151 ¶ 12(b), (d), (f), (i); Doc. 153 ¶¶ 22–30, App. 025–026, 050–051; *Boy Scouts,* 35 F.4th at 158.

Malak's documented role presents a narrower source-verification issue. The Trustee reported that he repeatedly urged her to pursue claims, while also arguing that his individual recovery efforts could disadvantage other creditors and asserting her own review of his claims. Doc. 170, pp. 1–2, 4–6, App. 117–118, 120–122.

That position recognizes that Malak's objectives were not necessarily coextensive with the estate's. It does not establish that he supplied false information, diverted the investigation, or that the Firms served as his proxy; Malak is not their disclosed client. Other investigative sources were identified: the Trustee attributes identified transfers to herself and the Auditor. Doc. 156 ¶ 43, App. 095.

The request for independent evaluation also has a concrete record illustration. Malak's complaint, attached to the Trustee's motion as Doc. 152-1, describes numerous meetings, messages, telephone conferences, and presentations of financial information, followed by lending totaling $1.1 million in four installments between April and September 2024. It also recites LTG's earlier allegation that it paid him $583,689 from April 26 through September 6, 2024, and asserts a remaining principal claim of $516,311. Doc. 152-1 ¶¶ 14–15, 26–27, App. 043, 046. These allegations and recitations are not findings. They identify a creditor who both urged investigation and had received payments that LTG had previously challenged.

Because LTG filed its petition on April 2, 2025, the cited payment dates fall outside the ordinary ninety-day preference period but within one year. The extended period applies only if the creditor was an insider at the time of the challenged transfer. 11 U.S.C. § 547(b)(4)(B). Under *Schubert v. Lucent Technologies Inc.* (*In re Winstar Communications, Inc.*), 554 F.3d 382, 396–97 (3d

Cir. 2009), nonstatutory insider status does not require actual control, but closeness alone is insufficient; the inquiry also concerns whether the dealings were conducted at arm's length. The cited record does not establish insider status, the other avoidance elements, insolvency outside the ninety-day presumption, or the absence of statutory defenses.

Bartels does not ask this Court to adjudicate a preference claim. The narrower relevance is to independent evaluation of creditor-derived leads and the proposed participation of a creditor whose transactions LTG had challenged. Exhibit C to the Limited-Notice Motion supplies selected separate-adversary filings for the requested procedural-context use, not as proof of the underlying allegations. Their consideration remains subject to the Court's ruling.

LTG filed an amended preference complaint against Malak on August 21, 2025. It alleged insider status, financing-related control of substantial business activities, and transfers between ninety days and one year before the petition. Adv. No. 5:25-ap-00047-MJC, Doc. 15 ¶¶ 12, 15, 17, pp. 4–5; Limited-Notice Motion, Ex. C at C-6–C-7. Those are filed allegations, not adjudicated facts. Their limited relevance is that the estate had asserted an adverse position concerning transactions of the creditor later proposed for a litigation role.

Malak's counsel consented to the amendment and an extension to respond, conditioned on dismissal without prejudice upon conversion to Chapter 7. Adv. 47,

Doc. 16; Ex. C at C-11. Consent to amendment was not an admission of insider status or liability. The docket entries for the September 9, 2025 proceedings list Durkin as appearing, direct dismissal without prejudice, and treat the amendment stipulation as moot. Ex. C at C-1–C-2. The September 15, 2025 order dismisses the proceeding without prejudice after the hearing and states that there was no objection to the dismissal motion. Adv. 47, Doc. 22; Ex. C at C-12. Neither the order nor the stipulation recites a release or adjudicates insider status or liability. Whether any claim remains legally available requires separate analysis of limitations, defenses, and the complete procedural history.

At the resumed August 25, 2026 hearing, counsel described a proposed arrangement to stay Malak's district-court action, permit him to join as a co-plaintiff in bankruptcy and conduct discovery, and facilitate later stay relief for any claim determined to belong to him individually. Aug. 25 Tr. 19:12–24 (Bankr. Doc. 201), App. 156. The court directed submission of a proposed order or stipulation within fourteen days and a report if problems prevented filing. Id. 21:9–14, 21:22–24, App. 158; Doc. 172, docket report, App. 006. These terms identify a role beyond a creditor interview, but do not establish joinder or representation of Malak by the firms. On October 1, the court denied Doc. 152 without prejudice because neither a stipulation nor a request to relist had been filed. Doc. 206; Limited-Notice Motion, Ex. B at B-1. Bartels requests notice of that order only to

state the subsequent procedural posture accurately. It neither approved joinder nor decided the merits of the proposal, and does not establish that the proposal remains pending.

Taken together, this history supports a focused request for examination of the proposed assignment: who independently evaluated any legally available estate claim involving Malak before proposing his participation; what role would Malak and his counsel have in selecting discovery and evaluating claims; and how would decisions concerning his transactions and any settlement allocation remain independent? A proposed co-plaintiff with discovery participation occupies a different role from a source supplying an investigative lead. The prior allegations make the independence question concrete enough to address; they do not establish insider status, a viable claim, or that counsel failed to read the file. The concern is whether cooperation could materially impair estate-side evaluation before any conflict is recognized. The requested inquiry does not assume the Firms represented Malak or that cooperation itself is disqualifying. Nor does the Trustee's recorded appearance in 2025 alone establish what she evaluated before retention in 2026.

The retention record references LTG's prior action through Doc. 152-1 ¶ 26. The filed supplemental designation also expressly identifies the relationship between the prior adversary proceeding and proposed Malak cooperation. Doc.

197, p. 2, App. 238. Designation does not establish that the retention court considered every separate-adversary filing or that every resulting argument was preserved. The proposed Exhibit C records identify the filed allegations and disposition; Bartels relies on the independently preserved requests in Docs. 153 and 163 concerning the assignment, creditor connections, and information use. If the additional materials are excluded, those requests and the designated August 25 proceeding remain the basis for review.

The written exchange isolated the issue before the hearing. Bartels requested independent initial review in Doc. 153 ¶¶ 29–30 and 45(b), App. 051, 053. The Trustee answered that she could make the threshold decision herself. Doc. 156 ¶ 40, App. 094–095. His authorized sur-reply acknowledged that answer and requested defined ORAFI-adverse exclusions, permitted information use, and a handoff to the Trustee or properly retained conflicts counsel. Doc. 163 ¶¶ 19–21, App. 105. The application's written exclusion remains operative through the order's incorporation of its terms. Doc. 151 ¶ 15; Doc. 181 ¶ 3, App. 027, 222. The request therefore does not depend on requiring an outside lawyer for every inquiry: it asks what evaluative or advisory role the firms may perform before the exclusion and handoff apply.

The qualification decision must address the work before the exclusion is triggered. Application paragraph 15 calls for conflicts counsel if an estate claim

against ORAFI is identified; the reply says the Trustee herself can decide whether ORAFI should be investigated or treated as adverse. Doc. 151 ¶ 15; Doc. 156 ¶ 40, App. 027, 094–095. The unresolved question is what information and advice the firms may supply to that threshold decision while remaining ORAFI's lawyers. If those duties materially constrain which leads are tested or which transactions receive scrutiny, a referral only after identification of a claim does not resolve the earlier limitation. The asserted risk is that a claim may never reach the referral stage because the initial evaluation is constrained. The court's proceeds direction and reporting expectation do not expressly define that evaluative role. Sept. 10 Tr. 17:12–18:9, App. 213–214. Bartels requests a supported determination whether the exclusion reaches initial advice and claim selection, and when the firms must refrain or responsibility must pass to an independent reviewer. See *Boy Scouts*, 35 F.4th at 158; *Pillowtex*, 304 F.3d at 254–55.

*In re Big Rivers Electric Corp.*, 355 F.3d 415 (6th Cir. 2004), part IV, explains why creditor-specific compensation can discourage investigation of claims against favored creditors. Its examiner negotiated undisclosed compensation tied to selected creditors' recoveries, and disgorgement was affirmed. The pertinent inquiry here is whether any material financial connection affects investigative choices. An ordinary estate-wide contingency does not itself establish

that concern. *Big Rivers* distinguishes permissible creditor funding for discrete common-benefit work. Id., part V.B.

*In re Pillowtex, Inc.*, 304 F.3d 246, 251, 254–55 (3d Cir. 2002), required resolution of a substantial, facially plausible qualification issue involving an asserted preference to the professional before retention approval. Its timing principle applies to a concrete qualification problem: an assurance that the matter can be addressed later does not resolve whether the professional qualifies for the work now being approved. Bartels's asserted predicate is the disclosed overlap between current ORAFI duties and the initial estate investigation.

*Boy Scouts* affirmed retention. The assignment excluded insurance-coverage work, separate coverage counsel was in place, and findings supported separation of the two legal teams' information. 35 F.4th at 154–55, 159–61. Those safeguards are relevant comparators, not a compulsory checklist. Here, Bartels requested findings explaining how the combination of the Trustee's personal review, the written exclusion, and the firms' investigative role protects the estate during the initial assessment. The court's confidence in the Trustee is relevant, but the challenged point is whether it answered that particular question.

Other denial decisions illustrate why the extent of overlap matters. *In re M&M Marketing, L.L.C.*, 426 B.R. 796, 802–04 (B.A.P. 8th Cir. 2010), aff'd, 397 F. App'x 258 (8th Cir. 2010), involved counsel's representation of identified

transferees and a conflict affecting the proposed investigation. *In re Project Orange Associates, LLC,* 431 B.R. 363, 373–77 (Bankr. S.D.N.Y. 2010), rejected a waiver and conflicts-counsel arrangement where the current creditor's role was central to the engagement. They support examining whether a restriction actually separates the relevant work.

*In re The Homesteads Community at Newtown, LLC,* 390 B.R. 32, 51–52 (Bankr. D. Conn. 2008), denied retention without prejudice despite an experienced trustee and United States Trustee support. Counsel concurrently represented the debtor's owner, whose documented conduct had repeatedly conflicted with estate interests. A promise to end that representation only after a dispute was identified did not protect earlier litigation and settlement decisions. That factual history distinguishes *Homesteads* from a merely conjectural conflict. Its relevant reasoning is that later separation may not cure divided loyalties affecting the work before the trigger. LTG's court still had to assess whether its own record established such a material limitation and whether the existing exclusion prevented it.

*In re Barnes,* No. 12-65084-tmr7, slip op. at 7–10 & 9 n.5 (Bankr. D. Or. July 16, 2013), denied retention on conflict and disclosure grounds involving ongoing creditor representation, trust-held judgment proceeds, and fee interests. *Barnes* supports examining material financial connections before accepting alignment and trustee control as sufficient.

These decisions involved concrete factual predicates, including identified transfers, competing claims, or financial arrangements. Bartels does not assert that each predicate exists here. The common principle supports a focused inquiry into the overlap established by LTG's own application and declarations. It does not establish that ORAFI received an avoidable transfer, funded estate work, or directed the firms to protect it. The requested finding concerns whether the disclosed duties and restrictions permit independent initial evaluation.

The close contrary comparison is *In re AroChem Corp.*, 176 F.3d 610, 617–18, 624–28 (2d Cir. 1999). It upheld retention despite allegations that a creditor diverted the investigation. General counsel examined debtor and independent-auditor records, consulted a forensic accountant and counsel for competing parties, and independently evaluated estate claims before special counsel's retention. The investigation took 150–200 attorney hours; creditor representation had ended. Those facts supported the finding of independence. Here, the Trustee and Auditor are also identified investigative sources, but ORAFI representation remains current and Bartels challenges the demonstrated separation of its initial assessment. The comparison concerns the record supporting independence, not a mandatory protocol or minimum number of hours. Creditor influence alone does not establish disqualification.

*In re Decade, S.A.C., LLC*, No. 18-1880-MN, Doc. 14, at 6, 17–21 (D. Del. Feb. 5, 2020), likewise affirmed creditor-funded special counsel's retention after independent counsel's investigation and approval of a settlement resolving competing claims. Its arrangements provide a useful comparison for evaluating the support and operation of LTG's ORAFI exclusion. Creditor funding itself was not disqualifying.

*Congoleum* shows why a shared recovery objective does not end the inquiry. Counsel there participated in negotiating claims while representing both the debtor and some claimants. The Third Circuit identified duties to test and reject invalid claims that conflicted with the claimant-side interests, and rejected an overly narrow view of the parties' alignment. 426 F.3d at 690–93. LTG's record does not establish the same negotiations, invalid claims, or financial arrangements. The relevant comparison is functional: do current ORAFI duties materially limit the evaluation and advice the firms will provide to the estate? If the record establishes only a potential conflict, the court must reasonably exercise its discretion; if the exclusion and Trustee-led review adequately separate the work, *Congoleum* does not require disqualification.

The verified statement reports ORAFI's conflict waiver and informed consent to the firms' representation of the Trustee. Doc. 151-1 ¶ 16, App. 035. It does not describe an unlimited release of confidential information or attorney-

client privilege. Bartels requested clarification of the waiver and permitted information use. Doc. 153 ¶¶ 22–30, App. 050–051. Consent to concurrent representation and authority to use particular information address different questions. The court must determine whether the disclosed consent and exclusions permit independent performance of the approved work. See *Congoleum*, 426 F.3d at 690–93.

The general consent provisions also require a construction consistent with the specific ORAFI exclusion. Application paragraph 18 and verified-statement paragraphs 21 and 26 refer to client consent or conflicts counsel for adverse matters, while application paragraph 15 requires further disclosure and appropriate relief for ORAFI-adverse work. App. 027–028, 036–037. Client consent cannot dispense with § 327(a) if the representation remains subject to an actual disqualifying conflict. *Boy Scouts*, 35 F.4th at 158. Doc. 181's incorporation of the application and priority over inconsistent terms should therefore preserve that statutory limit and establish how the exclusion operates during initial evaluation. Doc. 181 ¶¶ 3, 6, 8, App. 222–223; Doc. 163 ¶¶ 3, 19–21, App. 102, 105.

Rule 2014(a)(2)–(3) makes the services, connections, and compensation arrangements part of the employment disclosure. Bartels sought nonprivileged clarification of the ORAFI representation, personnel, permitted information use, and review responsibilities. He did not demand every private conversation. Docs.

153, 163, App. 050–054, 105–106. Counsel's hearing statements about creditor interviews remain statements about investigative activity; they do not establish misconduct or make interviewing a creditor unlawful. Sept. 10 Tr. 6:6–13, 9:8–11, 10:2–11:5 (Bankr. Doc. 202), App. 202, 205–207; see also Bartels's stated concern, id. 15:13–25, App. 211.

An additional preserved disclosure issue concerns the review's coverage of the existing civil action. Schedule 1 identifies Bartels and eleven gaming entities as subjects of the conflicts search, but does not list Malak or the other civil-action parties or counsel. Doc. 151-1 ¶ 20 and Schedule 1, App. 036, 039. The declaration promises continuing inquiry and supplementation. Id. ¶¶ 20, 28, App. 036–037. Bartels specifically requested an updated statement addressing that action after the July 24 filings. Doc. 153 ¶ 24, App. 050. The reply treated supplementation as unnecessary because intervention was undertaken for the Trustee and asserted that other conflicts had been examined. Doc. 156 ¶¶ 34, 41, App. 093, 095. The requested update, however, concerned connections with the civil action's parties and counsel, not merely reporting that intervention papers had been filed. The issue is whether the verified disclosure and credited representations adequately covered the actual assignment. The listed omissions do not establish an undisclosed connection or prove that no further inquiry occurred.

The chronology gives that disclosure question additional specificity. The July 24 amended application preceded the August 25 co-plaintiff proposal; Bartels does not contend that it had to describe a future agreement before one existed. Rather, the announced arrangement should be assessed against the promised continuing inquiry and supplementation before September's retention approval. The on-record announcement disclosed the broad proposal, but it did not itself explain who evaluated the estate's previously asserted claims involving Malak or what limits would govern coordinated discovery. Rule 2014 does not require a transcript of every private negotiation. The requested clarification concerns nonprivileged connections, responsibilities, and any terms material to the Firms' independence, including whether the proposal remained contemplated at approval. The record does not establish that Malak was a client of these Firms or that the omission of his name from the search schedule proves an undisclosed attorney-client relationship.

*In re American International Refinery, Inc.*, 676 F.3d 455, 462–66 (5th Cir. 2012), separates disclosure from disqualification. It upheld $135,000 in disgorgement for inadequate disclosures, including the source of a creditor-funded retainer, while affirming the absence of a disqualifying conflict. Although it concerned debtor's counsel, its Rule 2014 analysis supports scrutiny of financial connections without a presumption of misconduct. The relevant inquiry here

concerns any payment, balance, commitment, or condition bearing on the estate assignment; it does not presume that ORAFI funded it.

The court's qualified comments about confidentiality should also be read in context, not treated as an unqualified authorization to share protected material. Sept. 10 Tr. 18:16–22 (Bankr. Doc. 202), App. 214. Bartels seeks a determination of the arrangements material to retention, preserving privileges and lawful investigative authority. Any remand should identify the unresolved connection or operational boundary, rather than order unrestricted production of attorney communications.

III The scope, effective date, and compensation provisions warrant focused review

Doc. 181 expressly invokes § 327(a). That provision, rather than a label of special counsel, governs the approved employment. Doc. 151's separate reference to § 327(e) does not remove § 327(a)'s requirements. Section 327(e) concerns a specified purpose and an attorney who previously represented the debtor; it supplies no automatic alternative here. The proposed services and existing exclusions must be evaluated as actually approved. App. 023–027, 222.

The final order also corrects several earlier drafting problems. It specifies July 15, states the percentages, and makes the order control inconsistent terms. Those changes are not themselves error. The remaining scope question is how the application's broad related-services language operates with the engagement letter's

specified assignment and written-expansion requirement. Doc. 151 ¶ 12(j), App. 026; Doc. 147-2 § 2, App. 013. Any remand should clarify that a material expansion requires the disclosure and approval otherwise applicable under § 327 and Rule 2014.

The effective-date question must distinguish two periods. The application says the firms began July 15, the date the original application was filed. This is not a request first made months after all work was complete. Doc. 151, App. 022, 026; docket report, App. 003. *In re Arkansas Co.*, 798 F.2d 645, 648–51 (3d Cir. 1986), and *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105–08 (3d Cir. 1988), require qualification and extraordinary circumstances for the retrospective relief considered there. Their late-application circumstances differ from services while a timely application is pending.

Bartels's narrower request is a determination of the applicable standard, qualification during the approved period, and the treatment of the identified preapproval services. The Trustee's response that there would be no bills for work before application did not itself address all work between application and approval, or how that work relates to a contingent recovery. Doc. 171 ¶¶ 23–24, App. 131–132. The July 24 filings and August 24 response establish actual services during the pending application. App. 061–085, 117–125. The August 25 proceeding memo also records the firms' appearances and a reported settlement of the stay

motion, with an agreed order, stipulation, or request to relist due afterward. Doc. 172, docket report, App. 006. It does not establish an entered settlement order or a merits finding against Bartels. Manne expressly acknowledged that the firms were still proposed counsel and had performed work while the application was pending. Aug. 25 Tr. 4:14–18, 5:7–13 (Bankr. Doc. 201), App. 141–142. The court's direction concerning the proposed stipulation appears at id. 21:9–14, 21:22–24, App. 158. Those filings and appearances do not establish that every such act was void or that July 15 can never be an appropriate effective date.

Undertaking work before approval at the firms' risk does not itself identify its funding source. The application disclaims undisclosed compensation commitments and sharing arrangements. Doc. 151 ¶ 27, App. 029–030. Bartels's authorized sur-reply requested payer, amount, date, ownership, and credit information for any relied-upon upfront arrangement. Doc. 163 ¶ 18, App. 105. Any remaining disclosure challenge must identify what material connection those representations leave unresolved. It cannot infer an ORAFI-funded estate investigation merely because services preceded approval. The distinction is between relevant client funds or conditional commitments and ordinary firm resources.

Section 328(a) permits reasonable contingent compensation. Its limited standard for revisiting preapproved terms makes identification of those terms

important. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261–62 (3d Cir. 1995), distinguishes express approval of specified terms from mere employment authorization. Unlike the order in that case, Doc. 181 expressly approves § 328 terms. Its references to § 330 and future applications must therefore be read together with paragraph 5's express § 328 standard. App. 222–223.

The Trustee expressly represented that application of the 40% trigger could be adjudicated at a later fee hearing under § 330. Doc. 175 ¶ 21, App. 190. That reservation should be reconciled with paragraph 5's § 328 standard, rather than assumed absent.

Bartels raised the covered-matter, recovery-base, and higher-tier questions in his operative objection and authorized sur-reply. Doc. 153 ¶¶ 37–39; Doc. 163 ¶¶ 15–17, App. 052, 104–105. The Trustee's reply said substitution or intervention in the Malak action would satisfy the formal-proceeding trigger. Doc. 156 ¶ 47, App. 096. His later proposed response acknowledged that the percentages and gross-recovery language were already disclosed, while challenging their express incorporation into a § 328 approval order. Doc. 174, Ex. A ¶¶ 21–24, App. 178. Thus, the earlier filings preserve the underlying interpretation question; the proposed response identifies what he sought to add about the revised order. The objection does not treat a 35% or 40% contingency as inherently unreasonable, and

the Trustee explained why limited funds made contingent employment useful. Doc. 151 ¶¶ 19–24, App. 028–029.

Manne's $7 million to $10 million proffer does not resolve either qualification or the meaning of the approved fee terms. The hearing identified possible recovery sources but supplied no calculation in that passage. Sept. 10 Tr. 10:9–11:5, App. 206–207. Scheduled liabilities are not a ceiling on recoverable estate property; § 726(a)(6) expressly contemplates a residue. Nor must every prospective action be proved at retention. The proper distinction is between possible transaction volume, viable estate claims, and collectible net recoveries. An unquantified projection cannot itself demonstrate independent claim selection or answer the preserved questions about the covered recovery and expense allocation. Doc. 153 ¶¶ 37–39; Doc. 163 ¶¶ 15–17, App. 052, 104–105. Bartels does not concede the proffer's accuracy, allege fabrication, or ask this Court to adjudicate any transfer claim.

The engagement also addresses noncash value, affiliates, costs, termination compensation, liens, collection expenses, and interest. Doc. 147-2 §§ 3–6, App. 013–015. Its initial retainer is expressly waived. Although Doc. 156 ¶ 49(1) described a general retainer as an upfront payment, the later response expressly explains that the phrase concerns the scope of tasks, not a paid retainer for fees or expenses. Doc. 171 ¶ 29, App. 132. The final order omits that phrase. Doc. 181 ¶ 3,

App. 222. Accordingly, Bartels does not claim that this language proves an undisclosed payment. The remaining questions concern the terms actually preapproved and any material financial connection with ORAFI, whose separate engagement is not resolved by that clarification.

Omitting the phrase does not itself prohibit every future deposit: the incorporated engagement reserves a possible later retainer. Doc. 147-2 § 6, App. 015. Any materially different compensation arrangement remains subject to the applicable disclosure and approval requirements. At the compensation stage, Rule 2016(a) separately calls for case-related payments, promises, sources, and sharing information. That obligation supplements the retention disclosures; it does not establish that ORAFI currently holds or supplies a balance for estate work.

The requested remedy is limited: clarify the covered matters, higher-tier trigger, estate recovery base, treatment of noncash or mixed recoveries, ancillary charges, and any reserved compensation review. If the Court concludes the order already resolves those matters, clarification of that construction may suffice. The appeal does not ask for a present award or denial of fees that have not been requested.

## IV The court should supply a reviewable explanation of the material retention issues

### A The question is the adequacy of the reasons given for approval

A separate written opinion is not indispensable. The written order, incorporated materials, and oral reasons must be considered together. Rule 9014(c)(1) ordinarily applies Rule 7052 in contested matters, and Civil Rule 52(a)(1) permits findings and conclusions to be stated orally. Rule 52(a)(3) also recognizes exceptions for motion rulings. Bartels therefore does not premise reversal on a missing opinion or a failure to answer every question separately.

The substantive requirement is an adequate basis for review of the decision actually made. In *In re Morrissey*, 717 F.2d 100, 103–04 (3d Cir. 1983), the Third Circuit, remanding after a jurisdictional defect, also directed that the Bankruptcy Court explain its findings with evidence and applicable law because its brief explanation did not permit meaningful review. In the retention context, *BH & P* requires the exercise of discretion to rest on substantiated factors, and *Pillowtex* requires timely resolution of a concrete qualification issue. 949 F.2d at 1316–18; 304 F.3d at 254–55.

The court referred to the declaration, counsel's proffers, aligned recovery interests, the Trustee's experience, estate resources, and United States Trustee review. Sept. 10 Tr. 9:4–7, 11:7–13, 13:10–16, 16:4–17:21 (Bankr. Doc. 202), App. 205, 207, 209, 212–213. It also directed proceeds into the estate account and

stated that it had read Bartels's papers and heard him. Id. 18:3–15, App. 214. Those are actual reasons and protections. After that discussion and the first approval announcement, Bartels repeated the initial-review question: who independently decides or advises before an ORAFI-related matter is recognized as adverse? Id. 19:1–13, App. 215. The court answered by referring to United States Trustee oversight. Joseph Schalk, appearing for that office, described both its completed application review and its response to conflict concerns arising during representation. Id. 19:16–21:9, App. 215–217.

The Trustee's experience supports confidence in her judgment, but it does not define the firms' permitted advisory role. The testimony included both her three-and-a-half years as trustee and her preceding twenty-three years working with a trustee. Sept. 10 Tr. 16:4–11, App. 212. Bartels does not challenge her competence based on tenure. His objection concerns the structure of the assignment: even an experienced decisionmaker needs an independent basis for deciding whether a current client of her proposed lawyers warrants scrutiny. The reply identifies her as the decisionmaker but does not explain the boundary of those lawyers' assistance before she makes that decision. Doc. 156 ¶ 40, App. 094–095.

The other stated protections address different parts of the problem. United States Trustee review of the application and continuing oversight can support

employment, but the cited hearing explanation does not describe a separate initial evaluation of ORAFI-related matters or delimit the firms' advice in that evaluation. Sept. 10 Tr. 19:16–21:9, App. 215–217. Directing recoveries into the estate account protects proceeds actually obtained; it does not identify who independently evaluates an avenue that counsel recommends not pursuing. Id. 18:3–9, App. 214. Later disclosure, termination, or conflicts counsel can address a recognized conflict, but their adequacy depends on whether the arrangement also protects the decision that recognizes it. These limits concern what the stated safeguards accomplish, not an assertion that no review occurred.

The creditor involvement and differing recovery objectives described in Doc. 170 provide context for this inquiry, subject to the Trustee's contrary position on Malak's individual pursuit and her asserted review. App. 117–118, 120–122. Neither that involvement nor a question about a possible ORAFI balance establishes secret steering or funding. Rule 2014 supports examination of material connections bearing on the assignment; it does not require disclosure of every client communication or proof of every lead before investigation.

The requested explanation concerns a material qualification issue, not a requirement to answer every item in a later statement of issues. The operative objections and authorized sur-reply asked who evaluates ORAFI-related matters before adversity is recognized, what role the firms may play, and when

independent responsibility begins. Doc. 153 ¶¶ 22–30, 45(b); Doc. 163 ¶¶ 19–21, App. 050–051, 053, 105. If the firms' advice is materially constrained, an estate opportunity may remain unexamined before any referral is triggered. Under *Pillowtex* and *BH & P*, the court must address a substantiated qualification concern through a supported determination, rather than leave it to future events. 304 F.3d at 254–55; 949 F.2d at 1316–18. Bartels seeks remand to determine whether the disclosed division of work adequately addresses that concern; the requested relief does not depend on a finding that ORAFI lied or that an avenue was actually suppressed.

B The remaining procedural objections depend on their effect on the retention determination

The court could control repetitive briefing and was not required to allow an unlimited sequence of responses. Its earlier order expressly allowed a sur-reply and subsequent responses. Doc. 160, App. 099–100. Doc. 175 argued that further submissions repeated matters already addressed. App. 184–191. The later Doc. 174 motion, however, identified new allegations in Doc. 171 and the revised § 328 order as the reasons for a confined response, attaching the exact proposed response. Doc. 174 ¶¶ 4–6 and Ex. A, App. 172–179.

The court set both leave motions for hearing in Doc. 176, App. 192. In Doc. 174 ¶ 17, Bartels expressly requested a confined oral response as an alternative if a

further written response was not accepted. App. 174. The official transcript records an initial opportunity to speak and a further opportunity after the first approval announcement. Sept. 10 Tr. 12:14–16:3, 18:23–19:13 (Bankr. Doc. 202), App. 208–212, 214–215. Any prejudice argument must account for both opportunities and identify which material point he could not present.

The sequence identifies the proposed response's potential significance. After the approval announcements, Manne specifically requested the revised Doc. 171-1 order, explaining that it stated the contingency terms and implementation authority. The court said it would review that order, then treated the pending leave motions as moot because it had ruled and considered the matter well briefed. Doc. 174's proposed response had addressed that revised compensation, effective-date, and controlling-order language. Doc. 174, Ex. A ¶¶ 12–24, App. 177–178; App. 134–137, 221–223; docket report, App. 007. Sept. 10 Tr. 22:8–23:19 (Bankr. Doc. 202), App. 218–219. The transcript confirms that sequence; it does not itself establish that Bartels was prevented from presenting a particular material point. The sequence supports that inquiry, but the label moot alone does not establish prejudice. Even if the oral opportunity was sufficient, the independent challenge to the legal adequacy of the approved terms remains distinct.

Nor does the existence of allegations in Doc. 171 prove that the court adjudicated them. Its assertions concerning insolvency, knowledge, and transfers

were the Trustee's positions. If the retention or participation ruling depended on a disputed material factual finding, Rules 9014(d) and 9017 govern the required evidentiary procedure. If the court used those allegations only to identify matters for investigation, the appeal cannot recast that as a fraud judgment. Bartels asks that any renewed order preserve the distinction.

The Trustee also expressly disclaimed an adjudication of liability or preclusive effect from retention approval. Doc. 175 ¶ 17, App. 189. Any procedural challenge must identify a material finding in the actual ruling that exceeded that stated limit; it cannot assume that retention approval did so.

The continuance request stated that prospective counsel was reviewing the matter and sought approximately 21 days or a shorter period. It also stated Bartels would be prepared to proceed if denied. App. 193. The denial at Doc. 179 is reviewable here only to the extent properly encompassed by this appeal and relevant to a prejudicial limitation of participation. App. 196. The present materials do not show that counsel had committed to appear. This ground requires a specific showing of lost opportunity and effect on the result; lack of counsel alone does not establish abuse of discretion.

The same discipline applies to requested discovery and no-merits reservations. Doc. 181 approves employment; it does not itself determine subpoena objections, compel production, decide claim ownership in the Malak action, or

adjudicate personal liability. The preserved request for advance notice was expressly limited to notice legally permitted. Doc. 153 ¶ 45(e)–(j), App. 053–054. This appeal does not seek review of the separately filed Rule 8007 stay motion or replace later objections to particular process. The discussion of Doc. 199 in Argument I.A is offered for the limited standing and continuing-controversy purposes requested in the Limited-Notice Motion; it requests neither an examination protocol nor appellate review of Doc. 185.

V Any remedy should address the specific deficiency established

The written order and oral ruling must be considered together. The question is the legal sufficiency and record support of the court's reasons. An actual conflict prohibited by § 327(a) warrants reversal; a material unresolved qualification or approval question may warrant a limited remand for disclosures, findings, and a renewed exercise of discretion.

The alternative relief was requested below. Doc. 153 ¶¶ 45–46; Doc. 163 ¶¶ 19–21 and requested relief, App. 053–054, 105–106. A limited remand should address the firms' permitted role in initial ORAFI evaluation, the nonprivileged information-use boundaries material to that work, and the event requiring the firms to refrain or the Trustee to obtain independent assistance. It should also resolve any material overlap in compensation for the excluded work and, to the extent properly presented, the proposed Malak discovery arrangement. The court may conclude

that the existing arrangement suffices, but should explain why it protects independent estate decisions at the initial stage. If additional counsel is necessary, the required scope and any fee allocation should be addressed through the applicable employment and compensation process; this appeal does not demand a fixed budget for every hypothetical future dispute. Lawful investigation and all claim merits remain reserved.

CONCLUSION

Bartels requests that the Court apply *Boy Scouts* and *Congoleum* to his retention appeal, review the denial of his Rule 2018 request, and vacate the affected portions of Doc. 181 for a limited remand addressing participation, the initial ORAFI review and the proposed Malak participation to the extent properly presented, material nonprivileged disclosures, and the challenged scope and compensation terms. If the record establishes an actual disqualifying conflict, he requests reversal of the employment approval. He seeks no ruling on personal liability or an unadjudicated avoidance claim.

Respectfully submitted,

Eric David Bartels, pro se, solely in his individual capacity

Signature: ______________________

Eric David Bartels, Appellant, pro se

Date: 10/8/2026

ADDENDUM OF RELEVANT PROVISIONS

11 U.S.C. § 101(14)(C)

The term "disinterested person" means a person that— … (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 327(a)

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(c)

In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 328(a)

The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

**11 U.S.C. § 547(b)(4)(B)**

The trustee's avoidance power includes transfers made "between ninety days and one year before the date of the filing of the petition, if such creditor at the time

of such transfer was an insider," subject to the other requirements and defenses of § 547.

**11 U.S.C. § 726(a)(6) and (b)**

Section 726(a)(6) provides that property of the estate is distributed sixth to the debtor. Section 726(b) provides for pro rata payment among claims within specified classes, subject to its priority rule for administrative claims after conversion.

Fed. R. Bankr. P. 2018(a)

After hearing on such notice as the court orders and for cause, the court may permit an interested entity to intervene generally or in any specified matter.

Fed. R. Bankr. P. 2014(a)(2)–(3)

(2) Application for Employment. The applicant must file the application and, except in a Chapter 9 case, must send a copy to the United States trustee. The application must state specific facts showing: (A) the need for the employment; (B) the name of the person to be employed; (C) the reasons for the selection; (D) the professional services to be rendered; (E) any proposed arrangement for compensation; and (F) to the best of the applicant's knowledge, all the person's connections with: the debtor; creditors; any other party in interest; their respective attorneys and accountants; the United States trustee; and any person employed in the United States trustee's office.

(3) Verified Statement of the Person to Be Employed. The application must be accompanied by a verified statement of the person to be employed, setting forth that person's connections with any entity listed in (2)(F).

CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B). Excluding material permitted by Rule 8015(g), this brief contains 11,754 words by computer-generated count. It uses 14-point Times New Roman type and double-spaced body text.

Date: 10/8/2026 Signature: ____________
Eric David Bartels

CERTIFICATE OF USE OF GENERATIVE AI

1. The generative AI tool used was OpenAI ChatGPT, including its Codex tools.
2. AI assisted with the organization, research, drafting, revision, and checking of this brief, its tables, addendum, and certificates. For the accompanying Appendix and Unpublished Opinions attachment, AI assisted with selection, indexing, covers, labels, and pagination; the underlying court records and opinions are source reproductions.
3. I certify that a person has checked the accuracy of all AI-assisted portions of these filings, including all citations and legal authority.

Person who performed the accuracy check: Eric Bartels
Date: 10/8/2026 Signature: ____________
Eric David Bartels

CERTIFICATE OF SERVICE

I certify that on ________________, I served true and correct copies of this Appellant Opening Brief, its Appendix, and the accompanying Unpublished Opinions attachment by depositing them in the United States mail, first-class postage prepaid, addressed as follows:

Jill E. Durkin, Appellee/Trustee
401 Marshbrook Road
Factoryville, PA 18419

Joseph P. Schalk, Esq.
Office of the United States Trustee
1501 North 6th Street, Box 302
Harrisburg, PA 17102

Beverly Weiss Manne, Esq.
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222

Justin Gendler, Esq.
Gendler & Gendler, PLLC
P.O. Box 450135
Sunrise, FL 33345

David J. Harris, Esq.
67–69 Public Square, Suite 700
Wilkes-Barre, PA 18701

C. Stephen Gurdin, Jr., Esq.
67–69 Public Square, Suite 501
Wilkes-Barre, PA 18701–2512

Lisa M. Doran, Esq.
Doran & Doran, P.C.
69 Public Square, Suite 700
Wilkes-Barre, PA 18701

Filed with the District Court Clerk on: ________________
Filing method: ________________

Signature: ________________
Eric David Bartels