TUCKER | ARENSBERG
Attorneys

July 14, 2026

Via Email

Jill E. Durkin, Esquire
Chapter 7 Trustee for the estate of Luxury Time Global LLC.
Durkin Law, LLC
401 Marshbrook Road
Factoryville, PA 18419

**Re:** **Engagement for Special Counsel Legal Services**
**Luxury Time Global, LLC ("Debtor")**
**Bankruptcy Case 5:25-bk-00912-MJC, PA Middle District Wilkes-Barre**

Dear Ms. Durkin:

Thank you for selecting Tucker Arensberg, P.C. and Gendler and Gendler, PLLC (collectively, the "**Firm**") as counsel with respect to the matters described herein. The purpose of this letter (this **"Engagement Letter"**) is to describe the scope of the Firm's legal representation and how the Firm will be compensated for such services.

To avoid any misunderstanding about the terms on which the Firm is agreeing to provide its services, we ask that you review this Engagement Letter carefully and seek the advice of independent counsel should anything herein give you concern. You should also not hesitate to contact me with any questions you may have. The Firm will require a signed copy of this Engagement Letter before providing any legal services.

## 1. The Client

The Firm is agreeing to perform the services described herein solely for the benefit of you as the Chapter 7 Trustee in the bankruptcy proceeding styled In re: Luxury Time Global, LLC (Case Number 5:25-bk-912-MJC), which is currently pending before the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Bankruptcy").

Please understand that the Firm is *only* agreeing to represent the Client under this Engagement Letter and not the Debtor or any related or affiliated person or businesses.

## 2. Scope of this Engagement

The Firm's engagement (this "**Engagement**") will be to represent the Client in the investigation and pursuit of claims against multiple entities that received payments prior to the Debtor's Bankruptcy filing which might constitute voidable transactions under Chapter V of Title 11 of the United States Bankruptcy Code (the "**Matter**"). The terms of this Engagement Letter will apply with respect to the Matter and other matters the Firm may agree in writing (including in an email acknowledged by the Firm) to undertake on behalf of the Client from time to time. Unless the Firm and the Client agree in writing, the services provided under this Engagement will not include any other professional services except as expressly provided herein.

It is Client's responsibility to cooperate with the Firm in this Engagement by, among other things, promptly providing the Firm with accurate information and documents and keeping the Firm apprised of all developments relating to this Engagement. We also expect the Client to work with the Firm to develop, implement and approve strategies for negotiation or litigation and to advise the Firm as to whether documents prepared and sent to the Client for review and approval are consistent with the Client's understandings and expectations. ***Because any representation is substantially dependent on factors beyond the Firm's control, the Firm does not and cannot guarantee the outcome of any matter or the amount of fees and costs needed to complete an Engagement.***

## 3. Legal Fees

The Firm has agreed to take this Matter on a contingent basis as set forth below. The contingency fee and costs set forth below are not set by law but are negotiable between Client and the Firm.

Accordingly, the Firm will not directly bill the Client on an hourly basis for its services performed under this Engagement in exchange for a fee equal to a percentage of any Recovery (defined below) obtained in connection with this Engagement, whether as a result of settlement, judgment, or otherwise (the "**Contingency Fee**"). The Contingency Fee shall be equal to (1) 35% of any Recovery obtained prior to the filing of a lawsuit, adversary proceeding, arbitration, or other formal proceeding, and (2) 40% of any Recovery obtained after the filing of a lawsuit, adversary proceeding, arbitration, or other formal proceeding.

As used herein, "**Recovery**" means both any monetary sums and any nonmonetary benefits, non-cash equivalent property, and other things of value received by the Client or its affiliates in connection with this Engagement. In calculating the Contingency Fee, the amount of the Recovery shall not be reduced by the amount of any related costs paid by the Client or advanced by the Firm as described below. In the event some or all of the Recovery includes property or other non-monetary benefits, the fee calculation shall be based on the

present cash value of the Recovery as determined by generally recognized accounting and appraisal standards. The Contingency Fee shall be payable in full at the time of Recovery even if the Recovery is in the form of payments to be received over a period of time. If the initial payments under such settlement are insufficient to pay the Contingency Fee in full, Client agrees that future payments shall be paid exclusively to the Firm until the balance of the Contingency Fee is fully paid. Client understands that this provision may result in a delay of any payments of Client's portion of the Recovery to Client.

The Contingency Fee arrangement applies only to the Firm's pursuit of the Matter as expressly described herein and does not apply to any other services performed by the Firm on behalf of the Client, including the defense of any claims asserted against the Client. The Client will be charged for those legal services at the Firm's standard hourly rates, which currently range from $415-$900. The Firm's rates are subject to periodic adjustments, usually around the start of the calendar year, which will be reflected on the invoices sent.

The Contingency Fee arrangement shall not limit either the Client's or the Firm's ability to terminate this Engagement as set forth herein, nor shall the Firm be required to pursue the Matter by filing a lawsuit, arbitration, or other formal proceeding absent its written agreement to do so (which may be by email), provided only that (1) if the Firm declines to pursue the Matter, it shall waive its right to any Contingency Fee and (2) if the Client terminates the Engagement without good cause prior to receiving a Recovery, the Firm shall be entitled to seek compensation for its services at no less than its standard hourly rates from any Recovery received by Client.

**4. <u>Costs</u>**

In addition to the foregoing fees for legal services, the Firm will charge for any additional costs and expenses it incurs in connection with this Engagement. The payment of Costs shall be initially through recoveries in the Matter and the costs shall also constitute an administrative claim in favor of the Firms. The Firms recognize that as administrative claims the costs will paid on a pro rata basis if there are insufficient funds in the Estate to pay the costs in full. The Trustee shall not be personally liable for any such costs. Costs will include, without limitation, any filing or similar fees charged by courts and government entities and charges that the Firm agrees to pay outside vendors or service providers, including for outside specialists, experts, investigators, computerized legal research or electronic discovery services, IT services, document storage, messenger services, Federal Express or other special delivery charges, copying costs, and charges for transcripts, depositions, word processing expenses, trademark and copyright fees, and similar fees and expenses. Costs may also include extraordinary charges incurred by the Firm for internal IT services, document storage and printing, all of which will be charged at prevailing market rates at the time the expense is incurred. Where costs are substantial, the Firm will consult with Trustee but may decline to incur such costs on behalf of the Client.

**5. Payment Terms**

Invoices are generally submitted on a monthly basis. Unless the Bankruptcy Court requires a fee application prior to payment, once recoveries from Matters have been received, payment of the Contingency Fee(s) can be made via the means and instructions set forth on Schedule 1 attached hereto. If fee applications are required by the Court the Firms may file such fee applications quarterly or following the payment of recoveries to the Trustee, whichever is earlier. Upon approval of the fee application, the Trustee shall pay the fees on the agreed upon percentage basis from recoveries on the Matters.

Unless a payment is directed to a particular invoice, payments are applied to invoices that have been outstanding the longest period of time. Full payment of costs is due regardless of whether the Client successfully consummates or completes any given transaction or matter and whether the Client anticipates recovering fees from insurance or any other source and shall be paid in accordance with section 4 above. The Client agrees to notify the Firm promptly in writing if the Client disputes any entry for legal services or charges on any invoice. In the absence of any written objection thereto within thirty (30) days of the Client's receipt of an invoice, the Client will be deemed to have accepted and acknowledged the invoice as correct through the period covered by the invoice.

Subject to the Rules of Professional Conduct and in addition to any other rights and remedies available under applicable law, the Firm reserves its right withdraw from its representation of the Client and to assert appropriate liens on any money, property or files in the Firm's possession if invoices are not paid per the terms of this Engagement Letter. The Client will be responsible for and indemnify the Firm against all costs and expenses (including reasonable attorneys' fees) incurred by the Firm in the collection of any amounts owed to the Firm. Further, interest is automatically charged at ten percent (10%) per annum from the date of invoice for amounts outstanding more than sixty (60) days, and the Firm has the right, in its sole discretion, to reverse any discounts previously offered in exchange for prompt payment.

**6. Fee Deposits**

When an engagement commences, it is our general policy to request a retainer to secure payment of our fees and associated costs. Notwithstanding this policy, we have agreed to waive a retainer for this Engagement. We reserve the right to revisit this decision if this Engagement involves substantially greater expenditures than anticipated and will require a retainer if our invoices go unpaid. In the event we do require a retainer in the future, the retainer will be held in a trust account and used to pay fees, other charges, and costs as they are incurred.

**7. Conflicts of Interest**

In connection with our creation of this Engagement Letter, we have searched our index for the names of persons likely to be involved in the matter(s) covered by this Engagement Letter that the Client has submitted to the Firm, and we have not discovered any conflict which requires further action before undertaking this Engagement at this time. The Client agrees to promptly advise the Firm of any other individuals or entities who may be involved in the matters in which the Firm is providing services under this Engagement Letter so that the Firm can make an appropriate search of such parties and identify any potential conflicts of interest that may exist or arise.

You have been advised and acknowledge that the Firms have represented and/or currently represent Orafi, Inc., the largest unsecured creditor in this case. The Firms will not represent Orafi in connection with any litigation brought by the Trustee, will not represent the Trustee in any matter adverse to Orafi absent further disclosure and appropriate relief, and the Trustee will retain conflicts counsel if any estate claim against that creditor is identified.

We also note that, given the size of our firm and scope of our practice, we may be approached in the future by individuals or entities who seek representation in matters where their interests may conflict with those of the Client (including in bankruptcy or other proceedings in which the client may have a financial interest or in real estate or other transactions in which we do not represent the Client). While we will bring any conflict to your attention when it arises, the Firm will expect the client to waive such conflict and give consent to the representation of the other party when (1) the work to be performed for the other client is not substantially related to the work the Firm performs or has performed for Client, (2) the Firm does not have confidential information that is material to the Firm's work for the other client, and (3) the other representation does not involve the assertion of a claim against the Client in a litigation, arbitration, or other judicial or quasi-judicial proceeding. In the event those conditions are met, and you decline to waive the identified conflict, the Firm may have to terminate its representation.

**8. In-Firm Privilege**

The Firm may have occasion to seek legal advice about its own rights and responsibilities regarding the Firm's engagement by the Client. The Firm may seek such advice from attorneys in the Firm who serve as general counsel to the Firm and who do not work for the Client in such capacity or from outside attorneys at the Firm's own expense. The Client agrees that such communication and advice are protected by the Firm's own attorney-client privilege and neither the fact of any communication, nor their substance is subject to disclosure to the Client.

## 9. Termination of Representation

Both the Client and the Firm have the right to terminate this Engagement upon written notice to the other, subject to the Firm's obligation to comply with applicable professional rules and obtain any necessary court approvals and the Client's obligation to pay the Firm all unpaid charges for services provided and expenses advanced or incurred (including any fees and expenses associated with obtaining any necessary approval of our withdrawal). In addition, the Firm's work for the Client and the attorney-client relationship on any Matter for which the Firm is engaged by the Client will end upon the earliest of: (A) the Firm's completion of work on the Matter; (B) the Firm sending the Client written notice that its representation has ended; (C) the passage of six (6) months with no work performed on the Matter; or (D) the Firm sending a final bill for legal services rendered. The relationship will be terminated irrespective of whether, as is not uncommon, the Firm is designated to receive copies or courtesy copies of notices under one or more transaction documents. If the Client requests the Firm to represent the Client on another matter, the Firm may accept or decline such representation in its sole and absolute discretion. Upon termination of this Engagement, the Firm will no longer undertake to inform or advise the Client as to changes in the law or interpretations of the law that might have impact on the Firm's prior advice (or the documents the Firm has delivered to the Client) or to remind the Client of upcoming filing or other deadlines.

## 10. Document Retention

The Firm's policy and practice is to destroy our files seven (7) years after a Matter is terminated unless the Client requests a shorter or longer retention period in writing. In addition, the Client agrees that the Firm's work product including internal emails, internal drafts, notes and mental impressions belong to us as lawyers and are not part of the Client's file. If the Client believes that this Engagement will involve an investigation or lawsuit -- the Client should immediately consult with the Firm regarding effective procedures for document preservation, since failure to do so can impair the Firm's ability to effectively protect the Client's interests.

## 11. Consent to Use of Technology, Including Artificial Intelligence

In order to maximize efficiency in its representations, the firm uses electronic communications devices to the fullest extent possible (including, email, electronic document transfer platforms, and cellular telephones). The use of such devices under current technology always creates some risk of interception, which would place confidences and privileges at risk. However, we believe the efficiencies involved in use of these devices outweighs the risk of accidental disclosure. The Client must advise the Firm in writing if there are other means of communications the Client wants the Firm to use for particularly sensitive information.

The Firm may also use legal databases and technology, including generative artificial intelligence platforms, to more efficiently render legal services. The use of such platforms will be consistent with its lawyers' obligations to maintain client confidences and its obligation to exercise independent legal judgment on behalf of its client, such that the Firm cannot agree to utilize any platform or program in lieu of its attorneys' informed legal judgments.

**12. Disclosures and Public Announcements**

The Client acknowledges and agrees that the Firm is permitted to disclose to third parties the fact that the Firm represents the Client generally and in transactions after such transactions are completed, and to describe in general terms the Firm's role, the services performed, and the nature of the transaction. These disclosures may be made to current or prospective clients or to others, and may consist of announcements and advertisements placed at the Firm's own expense in legal, business, financial and other periodicals and publications.

**13. Choice of Law and Forum**

The parties agree that this Engagement Letter will be governed by the laws of Pennsylvania without regard to its conflict rules. Exclusive jurisdiction and exclusive venue for any dispute between the parties hereto shall lie solely with the Bankruptcy Courf for the Middle District of Pennsylvania.

**14. Miscellaneous**

The law of many states requires us to inform the Client whether we maintain errors and omissions or malpractice insurance coverage applicable to the services to be rendered to the Client. We hereby confirm that the Firm does maintain such insurance coverage. This Engagement Letter may be signed in one or more counterparts and binds each party signing it, whether or not any other proposed signatory ever executes it. If any provision of this Engagement Letter or the application thereof is held in whole or in part unenforceable for any reason, the remainder of that provision and of the entire Engagement Letter will be severable and remain in full force and effect. The terms of this Engagement Letter may only be modified by a written agreement between the Client and the Firm's managing partner or general counsel.

If the terms of this Engagement Letter are acceptable, please sign below and initial all pages as indicated. Once we have received a signed Engagement Letter and any required retainer amount, we will begin our representation of the Client. If you have any questions

or concerns, please contact me directly or seek the advice of independent counsel of your choice.

We look forward to working with you and hope for a long and mutually satisfactory relationship.

Sincerely,

TUCKER ARENSBERG, P.C.

By: */s/ Beverly Weiss Manne*

GENDLER AND GENDLER, PLLC

By: *Justin J. Gendler*

*[Client signature(s) on following page]*

The undersigned has read and understands this Engagement Letter and agrees that it correctly sets forth the terms upon which TUCKER ARENSBERG P.C. AND GENDLER AND GENDLER, PLLC have been engaged by the undersigned in connection with the representation described herein and has waived any conflict of interest on the part of this Firm arising out of the representation described above.

ACCEPTED AND AGREED TO THIS 15th DAY OF **JULY 2026**

**TRUSTEE OF THE ESTATE OF LUXURY TIME GLOBAL**

By: /s/ Jill E. Durkin
Name: JILL DURKIN
Title: Trustee

**Client Billing Contact**

Address: 401 Marshbrook Road
Factoryville, PA 18419

Preferred Telephone: 570-881-4158

Email: jdurkin@jilldurkinlaw.com

☒ Please check if you would like to receive billing statements for legal services rendered **via email** to the email address provided above.

☐ Please check if you would like to receive billing statements for legal services rendered **via regular mail** to the physical address provided above.

## Omission from reproduced document

* * *

Source page 10, Schedule 1 payment instructions, is omitted as immaterial. Source pages 1-9 are reproduced in full. This page identifies the omission; it is not part of the filed document.

* * *