**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Luxury Time Global, LLC | : | Case No. **5:25-bk-00912-MJC** |
| | : | |
| Debtor | : | |

**TRUSTEE JILL E. DURKIN'S REPLY TO ERIC DAVID BARTELS' RENEWED AND SUPPLEMENTAL LIMITED OBJECTION TO TRUSTEE'S AMENDED APPLICATION TO EMPLOY SPECIAL COUNSEL, ALTERNATIVE MOTION FOR LEAVE TO BE HEARD UNDER FED. R. BANKR. P. 2018(a), REQUEST FOR HEARING, AND RESERVATION OF RIGHTS**

Jill E. Durkin, Chapter 7 Trustee (the "**Trustee**") for the estate of Luxury Time Global LLC (the "**Debtor**") files this reply to *Eric David Bartels' Renewed and Supplemental Limited Objection to Trustee's Amended Application to Employ Special Counsel, Alternative Motion for Leave to be Heard Under Fed. R. Bankr. P. 2018(a), Request for Hearing, and Reservation of Rights* [ECF No. 153] (the "**Renewed Objection**").

## BACKGROUND

1. On April 2, 2025 (the "**Petition Date**"), the Debtor filed the above-captioned case as a small business Chapter 11 case.

2. On May 27, 2025, Andrew R. Vara, United States Trustee for Regions 3 and 9 (the "**U.S. Trustee**") filed a motion to convert the above-captioned case from a proceeding under Chapter 11 to a proceeding under Chapter 7 [ECF No. 42] (the "**Motion to Convert**").

3. On July 8, 2025, Nicole Watson, a Bankruptcy Auditor employed by the Office of the United States Trustee for the Middle District of Pennsylvania and assigned to review the above-captioned case (the "**Auditor**") filed a Declaration in Support of the Motion to Convert [ECF No.

73] (the "**Declaration**") detailing improper transfers of estate funds by the principal of the Debtor, Eric David Bartels ("**Bartels**").

4. On August 22, 2025 upon consideration of the US Trustee's Motion to Convert, this Court converted the above-captioned case to a proceeding under Chapter 7, and the Trustee was appointed as the Chapter 7 Trustee.

5. On July 15, 2026, the Trustee filed an application seeking authority to retain Tucker Arensberg, P.C. and Gendler & Gendler, PLLC (collectively, the "**Firms**") as special counsel to the Trustee [ECF No. 147] (the "**First Application**") pursuant to 11 U.S.C. § 327 and Rule 2014 of the Federal Rules of Bankruptcy Procedure.

6. On July 17, 2026, Bartels filed a limited objection to the First Application and motion for leave to be heard under Fed. R. Bankr. P. 2018(a) [ECF No. 148] (the "**First Objection**"), requesting that the court grant him leave under Fed R. Bankr. P. 2018(a) to be heard on the First Application and to deny the Application to Employ.

7. On July 24, 2026, the Trustee filed an amended application to employ the Firms as special counsel [ECF No. 151] (the "**Amended Application**"), revising the First Application to correct certain typographical errors in the First Application, including (i) an incorrect percentage of the proposed contingency fee for the Firms in paragraph 22 of the First Application, (ii) an incorrect proposed effective date for Trustee's employment of the Firms in the "Wherefore" clause of the First Application, and (iii) the omission of the word "interests" in paragraph 15 of the First Application.

8. On July 24, 2026, the Trustee moved to substitute herself for Peter Malak ("**Malak**") as the real party in interest or, in the alternative, to intervene in *Malak v. Bartels et al.*, Case No. 3:26-cv-01222-JKM (the "**Malak Action**") in the United States District Court for the

Middle District of Pennsylvania, and for referral of the Malak Action to this Court [Malak Action, ECF Nos. 20 & 21].

9. On the same day, the Trustee filed a Motion to Enforce the Automatic Stay Pursuant to 11 U.S.C. § 362(a)(3) [ECF No. 152] (the "**Motion to Enforce**"), requesting this Court to enjoin and prohibit Malak from pursuing the Malak Action.

10. On July 27, 2026, Bartels filed the Renewed Objection in response to the Amended Application, again requesting that the Court grant him leave to be heard under Rule 2018(a) in connection with the Amended Application and to deny the Amended Application.

11. The Trustee has a duty to investigate the financial affairs of the debtor and to collect and reduce to money property of the estate, which includes bringing avoidance actions under Chapter 5 of the Bankruptcy Code. Retention of special counsel as soon as possible is critical to enable the Trustee to carry out those duties.

**APPLICABLE LAW**

12. "In a case under chapter 7, 12, or 11 of [title 11 of the United States Code], a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c).

13. 11 U.S.C. § 327(c) "expressly and unambiguously limits standing to object to a retention . . . to other creditors or the United States trustee." *In re Team Sys. Int'l, LLC*, 2024 Bankr. LEXIS 232, at *6 (Bankr. D. Del. 2024). Equity security holders and defendants to fraudulent conveyance actions lack standing to object to an application to retain professionals under 11 U.S.C. § 327. *Id.* at *6-10.

14. "After hearing on such notice as the court orders and for cause, the court may permit an interested entity to intervene generally or in any specified matter." Fed. R. Bankr. P. 2018(a).

15. "Rule 2018 provides that a court may permit intervention to an interested entity either generally or with respect to a specified matter for cause shown. Intervention pursuant to Rule 2018 is within the discretion of the court. . . . Although "cause" is undefined within the Rule, cause can be established by demonstrating an economic or similar interest related to the case. . . . 'Among the factors to be considered in determining whether to permit intervention is whether the proposed intervenor's interests are being adequately represented by a party already in the case and whether such intervention would result in undue delay or prejudice.'" *Beulah Road Land Co. v. Hudak*, 2013 Bankr. LEXIS 5142, at *3 (Bankr. W.D. Pa. 2013) (quoting *Elliott v. Kiesewetter (In re Kiesewetter)*, 2010 Bankr. LEXIS 6332, at *2 (Bankr. W.D. Pa. Nov. 29, 2010)).

16. "[An application for employment of a professional under 11 U.S.C. § 327] must state specific facts showing: (A) the need for the employment; (B) the name of the person to be employed; (C) the reasons for the selection; (D) the professional services to be rendered; (E) any proposed arrangement for compensation; and (F) to the best of the applicant's knowledge, all the person's connections with: the debtor; creditors; any other party in interest; their respective attorneys and accountants; the United States trustee; and any person employed in the United States trustee's office." Fed R. Bankr. P. 2014(b).

## ARGUMENT

### I. Bartels Lacks Standing to Object to the Amended Application.

17. Under 11 U.S.C. § 327(c), only a creditor of a debtor or the United States trustee may object to an application to retain a professional under 11 U.S.C. § 327.

18. Bartels is not, and does not claim to be, a creditor of the Debtor, *see* Renewed Objection, ¶ 9, and is not a United States trustee.

19. As such, Bartels lacks standing to object to the Amended Application.

20. Bartels avers that he "does not invoke the creditor-specific objection language of 11 U.S.C. § 327(c) but "instead requests limited participation under Rule 2018(a). *See* Renewed Objection, ¶ 9. However, in his request for relief, Bartels requests that the Court "deny the Amended Application . . . deny nunc pro tunc or other retroactive approval [of the Trustee's retention of the Firms] . . . [and] decline to enter the proposed order at Document 151-3 [granting the Application to Employ]." *See* Renewed Objection, ¶ 46.

21. 11 U.S.C. § 327 "expressly and unambiguously limits standing to object to a retention . . . to other creditors or the United States trustee." *In re Team Sys. Int'l, LLC*, 2024 Bankr. LEXIS 232, at *6 (Bankr. D. Del. 2024).

22. Bartels is not entitled to "limited leave to be heard under Rule 2018(a)" with respect to the Amended Application, and even if he were, such "limited" leave to be heard cannot possibly extend to requesting that the Court deny the amended application.

23. Fed. R. Bankr. P. 2018(a) provides that an interested entity may be permitted to intervene in a specified matter "after hearing on such notice as the court orders and for cause" but Bartels has not established cause for the Court to permit him to intervene.

24. Intervention pursuant to Rule 2018 is within the discretion of the court. . . . Although "cause" is undefined within the Rule, cause can be established by demonstrating an economic or similar interest related to the case. . . . 'Among the factors to be considered in determining whether to permit intervention is whether the proposed intervenor's interests are being adequately represented by a party already in the case and whether such intervention would result

in undue delay or prejudice.'" *Beulah Road Land Co. v. Hudak*, 2013 Bankr. LEXIS 5142, at *3 (Bankr. W.D. Pa. 2013) (quoting *Elliott v. Kiesewetter (In re Kiesewetter)*, 2010 Bankr. LEXIS 6332, at *2 (Bankr. W.D. 2010)).

25. While Bartels is the sole member of the Debtor, the Debtor's estate is insolvent. The total value of the Debtor's assets are $2,501.00 and the total value of the Debtor's liabilities are $2,280,519.61. *See* Official Form 205, Summary of Assets and Liabilities for Non-Individual [ECF No. 25]. As such, Bartels lacks an economic interest as an equity security holder of the Debtor in the Trustee's retention of the Firms.

26. Bartels has no economic or similar interest in the completeness of the Trustee's disclosures under Fed. R. Bankr. P. 2014(a)(2) (the "**Rule 2014 Disclosures**"), the adequacy of the proposed protocols set forth in the Amended Application and proposed order attached thereto [ECF No. 151-3] (the "**Proposed Order**") for identifying and managing potential conflicts of interest, retroactive approval of the Trustee's retention of the Firms, or any other issue raised in the Renewed Objection. These interests are adequately represented by the Trustee and the U.S. Trustee.

27. Bartels' intervention in the special counsel retention process has already caused, and was possibly intended to cause, undue delay to the Trustee's retention of the Firms and prosecution of the fraudulent transfer claims identified in the First Application and in the Amended Application. A trustee's action to avoid fraudulent transfers under 11 U.S.C. §§ 548 is subject to a statute of limitation of two years from the date of the later of 2 years after the entry of an order for relief or 1 year after the appointment or election of the first trustee under 11 U.S.C. § 546(a). Given the magnitude of transactions and transfers and transferees that need to be investigated, having special counsel on board as soon as possible is essential.

28. Bartels is the subject of potential claims that the Trustee has a fiduciary duty to investigate, making his effort to prevent or delay the Trustee from retaining counsel inherently self-serving.

29. Accordingly, the Court should deny Bartels' request for intervention under Fed. R. Bankr. P. 2018.

## II. The Rule 2014 Disclosures Contained in the Amended Application and Verified Statement are Sufficient.

30. Bartels argues the Rule 2014 disclosures are incomplete because the Amended Application does not (i) contain information supplied by Orafi, Inc. ("**Orafi**") or its counsel to support its averment that the Firms possess independent knowledge of this bankruptcy case, which will reduce administrative costs to the estate of retaining the Firms as compared to bringing in a new law firm, or (ii) include a conflicts waiver as an attachment or describe such waiver to support its averment that Orafi has waived any actual or potential conflict and provided informed consent to enable the Firms to represent the Trustee. *See* Renewed Objection, ¶¶ 22-24.

31. Fed. R. Bankr. P. 2014(b) requires the Trustee to "state specific facts showing: (A) the need for the employment; (B) the name of the person to be employed; (C) the reasons for the selection; (D) the professional services to be rendered; (E) any proposed arrangement for compensation; and (F) to the best of the applicant's knowledge, all the person's connections with: the debtor; creditors; any other party in interest; their respective attorneys and accountants; the United States Trustee; and any person employed in the United States Trustee's office."

32. The Amended Application provides specific facts demonstrating (A) the need for employment of the Firms, *see* Amended Application ¶ 7, (B) the name of the persons to be employed, *see* Amended Application, p. 1, (C) the reasons for the selection of the Firms, *see* Amended Application ¶¶ 9-11, (D), the professional services to be rendered by the Firms, *see*

Amended Application ¶¶ 12-13, (E) the Trustee's arrangement for compensation of the Firms, *see* Amended Application ¶¶ 19-31, and (F) the Firms' connections with the persons listed in Fed. R. Bankr. P. 2014(b)(2)(F), *see* Amended Application ¶¶ 14-18.

33. Bartels does not identify any authority to support his argument that these statements of specific facts are insufficient under Fed. R. Bankr. P. 2014. There is no merit to his allegation that the Amended Application must describe information the Firms will use in prosecuting fraudulent transfer actions, against, among other potential defendants, Bartels himself, or attach a conflicts waiver as an exhibit to the Amended Application. Nothing in the plain language of Fed. R. Bankr. P. 2014 requires these extraneous particulars.

34. Bartels also argues that the Trustee should have supplemented the Amended Application with a supplemental statement on the Trustee and the Firms' participation in the Malak Action, because the verified statement of the Firms attached to the Amended Application pursuant to Fed. R. Bankr. P. 2014(a)(3) [ECF No. 151-1] (the "**Verified Statement**") states at ¶¶ 20 & 28 that the Firms "will supplement as additional parties or information become known." *See* Renewed Objection, ¶ 24. That intervention has been done on behalf of the Trustee and supplementing the Verified Statement with information regarding the Trustee's intervention in the Malak Action and Motion to Enforce is unnecessary, as this information has nothing to do with any actual or potential conflicts of interest of the Firms.

35. Bartels also argues that because the Engagement Letter between the Trustee and the Firms (the "**Engagement Letter**") is not attached to the Amended Application and the Amended Application "changes the percentage and effective date and seeks approval under revised papers, the controlling engagement agreement should be refiled or expressly incorporated and conformed to the Amended Application." *See* Renewed Objection, ¶ 25. This contention lacks merit as the

Engagement Letter attached to the First Application as Exhibit A [Doc. 147-2] is the controlling engagement agreement under the Amended Application.

36. The Amended Application changes the percentage of the Firms contingent fee and effective date to *conform* to the Engagement Agreement filed at Doc. 147-2.

**III. o Actual Conflicts of Interest Exist Between the Trustee, Orafi, or Any Other Parties in Interest with Respect to the Firms, And No Further Review is Necessary to Examine Any Potential Conflicts at this Time.**

37. Section 327(c) provides that an attorney is not disqualified from simultaneously representing a creditor and a trustee as general counsel unless there is an *actual conflict.* See also *In re Renninger Mason Contractors, Inc.*, 58 B.R. 516 (Bankr. E.D. Pa. 1986)[discussing how the prohibition under former Section 327(c) does not apply where the attorney is representing the trustee as special counsel for a specific and limited purpose."

38. The Firms' proposed representation of the Trustee is for the specific and limited purpose, namely, the investigation, prosecution, and recovery of assets, including through litigation, concerning avoidable transfers and related claims. *See* Amended Application, ¶ 7.

39. There is **no actual conflict of interest here.** Orafi is a general unsecured creditor whose interests are aligned with the Trustee's interest. Orafi has waived any actual or potential conflict with the Trustee and provided informed consent to enable the Firms to represent the Trustee. *See* Amended Application, ¶ 16.

40. Bartels' remaining arguments and assertions are without merit and Bartels does not cite any authority in support of this proposition or explain why the Trustee is not capable of making the "threshold decision" of "whether ORAFI should be investigated, challenged, examined, or treated as adverse" herself. And in fact the Trustee is fully capable of making the "threshold decision" of "whether ORAFI should be investigated, challenged, examined, or treated as adverse"

herself and if such instance were ever to arise both ORAFI and the Trustee will retain other counsel at that time.

41. The Trustee and the Firms have already examined other potential conflicts of interest and none exist. *See* Verified Statement, ¶ 20.

**IV. Retroactive Approval of the Trustee's Retention of the Firms is Warranted.**

42. Significant and numerous potentially recoverable voidable transfers have been identified and it is critical for the Trustee to have representation to pursue those recoveries.

43. The engagement of the Firms and prompt commencement of the Firms' representation of the Trustee was and is necessary to begin work to enable the Trustee to recover significant voidable transfers identified by the Auditor and the Trustee. Accordingly *nunc pro tunc* approval is warranted. As stated by the Court in this District:

> "We adopted a two-part test to determine the propriety of . . . retroactive approval [of retention of professionals under 11 U.S.C. § 327]: first, the bankruptcy court must find, after a hearing, that the applicant satisfies the disinterestedness requirements of section 327(a) and would therefore have been appointed initially; and, second, the court must, in the exercise of its discretion, determine that the particular circumstances presented are so extraordinary as to warrant retroactive approval."

*In re Bird*, 396 B.R. 613, 616 (Bankr. M.D. Pa. 2008).

44. Here, the Firms satisfy the disinterestedness requirements of §327(a) and the circumstances warrant retroactive approval for the very limited amount of time between the filing of the application and an order approving retention.

45. As such, approval of the Trustee's retention of the Firms *nunc pro tunc* is warranted.

**V. The Trustee's Intervention in the Malak Action Constitutes a "Filing of a Lawsuit, Arbitration, or Other Formal Proceeding."**

46. Bartels complains that "[t]he application does not explain whether substitution or intervention into that existing case automatically triggers the 40% rate." Renewed Objection, ¶ 38.

47. The "trigger, allocation, valuation, expense treatment, and interaction with existing litigation and other counsel" are fully disclosed to the extent necessary and appropriate in the Amended Application and First Application. The terms of the Firms' agreement with Trustee are fully set forth in the Engagement Letter attached to the First Application. To be clear however, the Malak action is LITIGATION, and substitution or intervention in the Malak Action constitutes a filing of a lawsuit, arbitration, or other formal proceeding.

**VI. Bartels' Objections to the Proposed Order Lack Merit.**

48. Bartels makes numerous arguments that the application should not be entered. *See* Renewed Objection, ¶ 41.

49. While Bartels lacks standing to make such objections, the Firms would respond that (1)"General retainer" refers to a limited upfront payment by a client of an attorney's fee, as opposed to a "special retainer," whereby a client deposits money into a trust account to be applied to specific fees. The use of a general retainer is in no way incompatible with the Firms' limited scope of representation; (2) the date of the Application is July 15, 2026 and the meaning of the phrase "date of application" is supplied by the Amended Application as July 15, 2026, (3) there is no reason a conclusion of law contained in a court order may not be "conclusory," (4) Nothing in this Court's procedures require the Trustee's proposed order granting the Amended Application to set forth all of the terms of the Engagement Letter; (5) the relief requested in the Amended Application is approval of the employment of the Firms upon the terms set forth in the in the Amended Application and Engagement Letter; (6) as argued above, "information-use, screening, or independent-review safeguards" are unnecessary and inappropriate, (7) a reservation of "compensation review for preapproval work" is unnecessary; and (8) the proposed order

preserving "the District Court's authority over the announced Malak motion" is unnecessary and irrelevant.

## CONCLUSION

Bartels lacks standing to object to the Amended Application under 11 U.S.C. § 327(c) and is not entitled to leave to be heard under Rule 2018, but even if cause existed for his objections to the Amended Application be considered under Rule 2018, his objections have no merit. Bartels requests unnecessary detail in a further amended application to employ the firms, unnecessary detail in a further proposed order, and unnecessary, unusual, and burdensome protocols for conflicts identification. Without indulging in speculation as to Bartels' motives for filing his Objections, the Court should take notice imminent action is required by the deadlines imposed in 11 U.S.C. § 546 for the Trustee to initiate the avoidance actions against, among other potential parties including Bartels.

WHEREFORE, Jill E. Durkin, Chapter 7 Trustee, respectfully requests that this Honorable Court overrule the First Objection and Renewed Objection and grant the Amended Application.

Dated: July 30, 2026

Respectfully Submitted,

*/s/ Jill E. Durkin*
Jill E. Durkin, Esquire
Chapter 7 Trustee
Durkin Law, LLC
401 Marshbrook Road
Factoryville, PA 18419
(570) 881-4158