UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA
WILKES-BARRE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 5:25-bk-00912-MJC |
| | ) | Chapter 7 |
| LUXURY TIME GLOBAL, LLC, | ) | |
| | ) | 274 Max Rosenn U.S. Courthouse |
| Debtor. | ) | 197 South Main Street |
| | ) | Wilkes-Barre, Pennsylvania 18701 |
| | ) | |
| | ) | August 25, 2026 |
| | ) | 10:47 a.m. |

TRANSCRIPT OF MOTION TO ENFORCE THE AUTOMATIC STAY FILED BY JILL E. DURKIN, TRUSTEE (DOC 152); OBJECTION BY PETER MALAK (DOC 165); TRUSTEE'S RESPONSE TO OBJECTION (DOC 170)
BEFORE HONORABLE MARK J. CONWAY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| Trustee: | Durkin Law, LLC<br>By: JILL E. DURKIN, ESQ.<br>401 Marshbrook Road<br>Factoryville, PA 18419 |
| Proposed Special Counsel for the Trustee: | Tucker Arensberg, P.C.<br>By: KASEY D. BOLTON, ESQ.<br>300 Corporate Center Drive<br>Suite 200<br>Camp Hill, PA 17011 |
| For Peter Malak: | Law Office of David Harris<br>By: DAVID J. HARRIS, ESQ.<br>69 Public Square<br>Suite 700<br>Wilkes-Barre, PA 18701 |
| Audio Operator: | Michael McHugh |
| Transcription Service: | TRANSCRIPTS PLUS, INC.<br>435 Riverview Circle<br>New Hope, Pennsylvania 18938<br>Telephone: 215-862-1115<br>e-mail CourtTranscripts@aol.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES VIA ZOOM:

Proposed Special Counsel for the Trustee:

Tucker Arensberg, P.C.
By: BEVERLY WEISS MANNE, ESQ.
1 PPG Place
Suite 1500
Pittsburgh, PA 15222

\- - -

INDEX

| | PAGE |
|---|---|
| Argument by Mr. Bolton | 8 |
| Argument by Mr. Harris | 12 |
| Argument on the record by Mr. Bolton | 18 |

COURTROOM DEPUTY: We'll call the Luxury Time Global case, Number 38 on your list, Case 25-912. It's a motion to enforce the automatic stay filed by Jill Durkin, the Trustee; with an objection by Peter Malak; and a response to that objection by the Trustee.

We have several people in the courtroom. And today on Zoom, we have Attorney Beverly Manne representing the Trustee.

THE COURT: Okay. Ms. Manne, good morning.

MS. MANNE: Good morning, Judge. Nice to see you.

Judge, since my partner, Kasey Bolton, is actually physically present, he will present argument to the Court concerning the Trustee's motion.

As of this moment, I should note, we are proposed counsel to the Trustee, special counsel. We are waiting for the hearing on the 10th for approval of our retention. But so you should know that we are just proposed counsel at the moment, Your Honor.

THE COURT: Okay. When was your motion seeking approval, when was that filed?

MS. MANNE: It was filed a while ago, but the principal of the debtor who --

THE COURT: Oh.

COURTROOM DEPUTY: So that's --

MS. MANNE: He's filed a number of objections, which

has been delaying that retention. But hopefully with the latest spate and --

COURTROOM DEPUTY: So that's --

MS. MANNE: -- the like, we will have that retention order entered fairly promptly.

THE COURT: Okay.

MS. MANNE: We've been -- you know, as is the custom in the District, pending -- once the Trustee filed the application, we've been doing work, but trying not to do too much work.

But this -- this -- this particular matter needed attention because of the status of the pending action in the Federal District Court, Your Honor.

THE COURT: Okay; thank you. You're --

MS. DURKIN: It was filed --

THE COURT: You're Mr. Bolton?

MR. BOLTON: I am, Your Honor.

THE COURT: Okay. And are you with Tucker?

MR. BOLTON: I am, Your Honor.

THE COURT: Okay. What office?

MR. BOLTON: I'm in the Harrisburg office.

THE COURT: Okay. So I know you had -- what, you hit an accident coming up?

MR. BOLTON: Yeah, and there was fire trucks, they were diverting me. It was -- it --

THE COURT: 81 is always an adventure. I go from Scranton to Wilkes-Barre every morning, and have for 30-some years coming down to here, and back and forth. It's been under construction for 30 years, 40 -- it's quite a -- PENNDOT's got quite a budget for that little stretch. So --

COURTROOM DEPUTY: Do you know the fun back about Mr. Bolton?

THE COURT: I think I do know a fun fact. But do you want to give it to me?

COURTROOM DEPUTY: No. No, no, no, no.

THE COURT: Was he a clerk for --

COURTROOM DEPUTY: For Judge Van Eck, I believe.

THE COURT: Oh, I'm sorry about that.

(Laughter)

MR. BOLTON: I think he probably is, too.

THE COURT: Yeah. Well, now you'll see how a real judge operates a courtroom, okay?

(Laughter)

MR. BOLTON: I'll make sure I let him know.

THE COURT: Make sure you tell him I said that, all right?

MR. BOLTON: I will.

(Laughter)

THE COURT: No, he's -- he's Chief Judge. He's actually my boss. I have to be nice to him every once in a

while.

So -- well, welcome.

MR. BOLTON: Thank you, Your Honor.

THE COURT: I don't think you have been here yet.

MR. BOLTON: I have not.

THE COURT: Okay. And, Mr. Harris, you're here on behalf of Mr. Malak, right?

MR. HARRIS: That's correct, Your Honor.

THE COURT: And then, Ms. Durkin, you're the Chapter 7 Trustee.

MS. DURKIN: Yes, Your Honor. And for the record, the motion was filed July 15th --

THE COURT: Okay.

MS. DURKIN: -- to employ them.

THE COURT: Yeah; thank you.

So, Mr. Bolton, this is the Trustee's motion to enforce the automatic stay pursuant to 362(a)(3). Do we have an evidentiary hearing today. Are we arguing? What -- what do you -- what's going to transpire?

MR. BOLTON: I believe it's just arguments today, Your Honor.

THE COURT: Okay.

MR. HARRIS: That's correct, Your Honor.

THE COURT: Are we going to need an evidentiary hearing?

MR. BOLTON: I don't think there's any dispute of fact. I think it's more --

THE COURT: Okay.

MR. BOLTON: -- issues of law.

THE COURT: Tell me, where are we at?

MR. BOLTON: Your Honor, it's the Trustee's position that the parties today are actually in the wrong position for where this procedurally should be.

We believe that it should have been the creditor that filed a motion for relief from the stay, and we would be here on the Trustee's objection, rather than the Trustee having to enforce the automatic stay and being here on the creditor's objection.

The objection notes a similarity to another creditor in this case, Mr. Baker, who, as Your Honor knows, earlier sought relief from the stay, and was granted. However, it's the Trustee's position that those two matters are easily distinguishable.

In the Baker matter, as I mentioned, Mr. Baker actually sought relief from the stay. He gave the Trustee the opportunity to review the outstanding claims. He gave the Trustee the opportunity to use her authority to pursue and/or allow Mr. Baker to pursue them individually.

Based on the size of those claims and the fact that they were individual in particular to Mr. Baker himself, who

was a customer of the debtor, rather than Mr. Malak's complaint, where he is a supplier to the debtor, the Trustee determined that that matter was not in the estate's best interest to pursue, and allowed Mr. Baker to pursue those claims on his own, with the caveat that should it recover any assets that are property of the estate, those assets would be returned to this Court.

The issue before us is significantly different. There was no relief from stay sought. The Trustee had no opportunity to review and analyze those claims. No opportunity to exercise her discretion.

The Whittaker case that is cited in our papers mentions that fraudulent transfers and alter ego claims are inherently property of the estate. They are the underlying basis of the District Court claims. They are founded on fraudulent transfers and alter ego of the debtor to a number of non-debtor parties.

Malak, in advance of his District Court claim, implored the Trustee to pursue those matters, and the Trustee has now decided to do so. And in an interesting reversal, the -- Mr. Malak now wants to reject the Trustee's opportunity to pursue those matters.

Additionally, the objection states that there are a number of benefits that the estate would realize if the District Court action were able to proceed. The District Court

action and the objection state that they are seeking to recover bad acts on behalf of non-debtors. None of those bad acts have been defined, but it is assumed that they are the fraudulent transfers that the Trustee seeks to recover.

And the Trustee would agree, that this would benefit the estate, which is why the Trustee has chosen to pursue these claims.

The issue before the Court, as we see it, is that these -- the pursuit of these claims would benefit all creditors, not just individualized creditors. Because many of the supplier creditors are in the same shoes. They supplied products, money, whatever it may be, to this debtor, who then fraudulently transferred them to their principals and/or other entities controlled by their principals.

We think that it would be highly prejudicial to other creditors if Mr. Malak were able to proceed individually at their expense.

Additionally, we think that is the exact opposite of what the automatic stay is designed to prevent, is the race to get a District Court judgment against a debtor at the expense of other creditors.

Finally, the objection notes that because the debtor has incurred some fees in the pursuit of his District Court action, he'd be prejudiced by the automatic stay being applied. It's the Trustee's position --

THE COURT: Well, excuse me. The District Court action, that -- was that filed?

MR. BOLTON: Yes, Your Honor.

THE COURT: Because you have a -- you have the complaint attached, but there's no action number. When was that filed?

MR. BLAKE: May 6th.

MR. HARRIS: Yes, May 6th, Your Honor, of this year.

THE COURT: Who's talking from the peanut gallery? Is it Mr. Blake?

MR. BLAKE: Yes, Your Honor.

THE COURT: I just --

MR. Blake: I'm sorry.

THE COURT: I just thought you were muscle here for Mr. Harris. You're signatory on that complaint, right?

MR. BLAKE: Yes, sir.

THE COURT: Okay. Are you -- are you entering your appearance here, or are you just --

MR. BLAKE: I'm just observing, Your Honor.

THE COURT: Okay. So I note in that complaint that's attached as Exhibit A to your motion, it's Peter Malak v. Eric Bartels, EMB Trading, Claire Butler, and B&B Luxury. The debtor's no -- nowhere in the caption.

MR. BOLTON: Correct, Your Honor.

THE COURT: So where -- what exactly is the act that

you're looking at me to look at? Noticing that under 11 U.S.C. 362(a)(3), it's "any act to obtain possession of property of the estate or of property from the estate or to exercise under -- exercise control over property of the estate."

I will note you did not file your motion, I guess, under -- under (a)(1) for some reason. I didn't study this completely, but that's the commencement or continuation. I thought that might be a good claim, as well; but maybe not.

MR. BOLTON: Well, Your Honor, it's because the named non-debtors in the District Court action are not the debtor. The claim we have as the Trustee is that these same claims that are found in that District Court action come from fraudulent transfers of the debtor and/or are allegations that the debtor served as an alter ego of those individuals and/or the other entities.

So it's the Trustee's position that all of that property is fraudulently transferred from the debtor, and it remains property of the estate, regardless of the individual that may currently be in possession of it. And any claims against those individuals all stem from the original fraudulent transfers.

THE COURT: Okay.

Mr. Harris, response?

MR. HARRIS: Yes. Good morning, Your Honor.

Your Honor, our position is the complaint filed by

Mr. Malek in Federal District Court is solely to seek recourse against a non-debtor, Eric Bartels, and Claire Butler, who's a non-debtor, and companies owned by them. They all can have assets independent and not connected in any way to the debtor's assets or property of the estate.

THE COURT: What's the nature of your claims?

MR. HARRIS: The nature of the claims are fraud, misrepresentation, deceit, and Mr. --

THE COURT: Well, he's not -- he's not -- he's not entering his appearance.

MR. HARRIS: Right.

THE COURT: You're here today.

MR. HARRIS: Right. They're claims against the individuals for fraud against Mr. Malak.

THE COURT: Where'd -- what's the -- what's the genesis of the fraud? Isn't it through the debtor?

MR. HARRIS: For -- for misleading him, yes. But they still just -- this Court has held --

THE COURT: So you -- excuse me. Mr. Malak provided watches, I'm assuming.

MR. HARRIS: Yes.

THE COURT: Or money for inventory or whatever --

MR. HARRIS: Correct.

THE COURT: -- to the debtor.

MR. HARRIS: Correct.

THE COURT: And that's where the fraud happened.

MR. HARRIS: Right.

THE COURT: Okay. Is that -- is that fair?

MR. HARRIS: Yes. Right. But through Mr. Bartels --

THE COURT: Individually.

MR. HARRIS: -- through Ms. Butler --

THE COURT: But the assets that are at issue are your client's assets that were given to the debtor. And then the fraud occurred somehow with Mr. Bartels, Ms. Butler through the debtor, which is Ms. --

MR. HARRIS: Right.

THE COURT: -- Durkin's rights.

MR. HARRIS: But my client is not seeking to recoup or execute against property of the estate or against the debtor. Out there in the world, there are two types of property: property of the estate and property that --

THE COURT: Okay. But did Mr. Malak invest, or provide goods, or services, or money to Mr. Bartels outside of the debtor?

MR. HARRIS: I do not know that.

THE COURT: Okay. Let's assume not, okay? Is that -- is that fair to assume that? I'm -- I'm --

MR. HARRIS: Yeah, that's fair to assume.

THE COURT: I would assume that you'd be prepared to say --

MR. HARRIS: Yes.

THE COURT: -- no, we're looking for millions of dollars that were sent through another company or something. But it all went through the debtor, okay?

MR. HARRIS: Um-hum.

THE COURT: And typically, that would be — as you know, I was the Chapter 7 Trustee for a couple of years. That would be the rights and claims of the Chapter 7 debtor to pursue for the benefit of all the creditors.

However, you know, it's really just his debt that he's pursuing against -- so, you know, this is an interesting question, quite frankly. But I -- are there other claims that you're going to be pursuing, fraudulent transfers and things of that nature?

And have any claims been filed yet by the Trustee? This case has been pending for a little while.

MS. DURKIN: We're pursuing preferential transfer claims.

THE COURT: Have any been filed?

MS. DURKIN: No, because we're waiting for them to be employed.

THE COURT: They're -- what?

MS. DURKIN: Waiting for the firm to be employed.

THE COURT: Okay.

MS. DURKIN: I think the hearing is next week.

THE COURT: September 10th, I think they said, right?

MS. DURKIN: Yeah.

MR. HARRIS: Your Honor, there's an easy resolution without --

THE COURT: I'm all for an easy resolution.

MR. HARRIS: -- my even continuing with my argument, and that is accord us the relief that was accorded in the Omar Baker --

THE COURT: Yeah, let me ask you, that's a curious question, though, and I was going to ask you that. Why didn't you ask for that? Why -- before you shot the gun, why didn't you look into that?

MR. HARRIS: Well, one of the differences --

THE COURT: Ask questions first and then shoot.

MR. HARRIS: -- is Omar Baker sued the debtor. We did not sue the debtor.

THE COURT: Okay. Is there any opportunity for you folks to discuss this and resolve it before we all are doing briefs and things of that nature? It does seem as though, Ms. Durkin, you and Mr. Harris can probably find common ground. Maybe and maybe not.

But I have some other things I want to get to, and then we can -- I'll put you guys back on the record if you want to just take -- well, take as long as you want. I'm here all day, but I'd assume you --

MS. DURKIN: Your Honor, I have -- I have the next three hearings, but I -- I do think there is, it's just we need to find a way that we can pursue our claims in Bankruptcy Court, and he may need to pursue his claim outside of Bankruptcy Court if he's seeking things that aren't property of the estate. So maybe they can talk because I have the next three hearings.

THE COURT: Yeah. I --

MR. BOLTON: Sure.

THE COURT: I think -- I think Mr. Bolton --

MR. HARRIS: Absolutely.

THE COURT: -- is qualified. Even though he clerked for that other guy. But I -- I think he probably learned something down there.

MR. BOLTON: A few things.

(Laughter)

THE COURT: Why don't you guys take some time.

MR. HARRIS: Okay.

THE COURT: And you can --

MR. HARRIS: We'll go in the conference room.

THE COURT: -- go out in the hallway or conference room.

MS. DURKIN: I'll --

MR. HARRIS: Okay.

THE COURT: You know if I'm off the bench, come and

get us -- or get me through my esteemed courtroom director, and we'll go from there, okay?

MR. HARRIS: Okay.

THE COURT: I appreciate it.

MR. HARRIS: Thank you, Your Honor.

THE COURT: Thank you.

MR. BOLTON: Thanks, Your Honor.

(Recess 11:03 a.m./Reconvene 12:03 p.m.)

THE COURT: We're back on the record. It's 12:03, and we're back on for Luxury Time Global, LLC. More specifically, the motion to enforce the automatic stay, Docket Number 152, filed by the Trustee; and the objection by Peter Malak at 165; and the Trustee's response at 170.

So I understand we had a good session this morning. You folks went out into the hallway or a conference room and -- to discuss this matter, and we have resolved something. Who's speaking?

MR. BOLTON: I will, Your Honor.

The agreement we're going to come to -- and we'll propose an order to you in the next 10 days, if that's acceptable, because it's going to be a little unique. And, unfortunately, to say this, this is something I've -- I've drawn from Judge Van Eck.

THE COURT: You know, Mr. Bolton --

MS. DURKIN: You had to say that, didn't you?

(Laughter)

MR. HARRIS: One of the parts of the stipulation was that was not --

MR. BOLTON: Yeah.

MR. HARRIS: -- going to be mentioned.

MR. BOLTON: Yeah.

THE COURT: Mr. Bolton, you know, you started at a disadvantage.

MR. BOLTON: Yeah.

THE COURT: And you just -- the hole that you're digging is getting deep.

MR. BOLTON: We're -- we're going to seek that you grant the motion to enforce this stay. The goal is that we're going to stay the District Court action. We're going to allow Mr. Malak join as a co-plaintiff in the Bankruptcy Court action; conduct the discovery.

And the parties have come to an agreement that if it's determined that there is some sort of claim or asset that is outside of the bankruptcy estate that is specific to Mr. Malak, we would work to allow them to get relief from the stay to pursue that in the District Court action. But otherwise, everything else would stay in the bankruptcy.

THE COURT: Mr. Harris?

MR. HARRIS: I can't add a word to that, that's --

THE COURT: Okay. Okay, that's interesting. I'll be

interested to see the wording on that.

MR. BOLTON: Yeah, me, too.

THE COURT: I just can't think of anything that would be separate from Mr. Malak. Again, I'm not judging anything, but the little bit I know about the facts, it seems that everything --

MS. DURKIN: We don't really feel that we need to stay the case, but -- we'd rather transfer it, but they're asking that we stay it, so we'll just -- it was kind of a compromise.

THE COURT: Staying the litigation.

MS. DURKIN: In --

MR. HARRIS: In District Court.

THE COURT: Okay.

MS. DURKIN: District Court.

MR. HARRIS: Without --

THE COURT: And you -- you got Mr. Blake's approval? Because he could be pretty ornery when he --

MR. HARRIS: It was difficult, he was, but he's conceded.

(Laughter)

THE COURT: Mr. Blake and I go back to, I think, 1988, '87 when I was a summer associate, and he was a big-time litigator down in Philadelphia, first year. Neither one of us had a clue what we were doing, but -- is that fair to say, Mr.

Blake?

(Laughter)

MR. BLAKE: Fair to say.

THE COURT: Yeah. I don't know if we've learned anything since then, but somehow we got by. So -- well, I appreciate it. I always appreciate folks getting things resolved. It's usually in the best interest of everybody, including the Court.

So I'll give you 14 days to get that to me. If it's not filed within 14 days, please report that you're having problems, and I'll schedule a hearing very quickly. I won't -- you know, I'll schedule a hearing within days or, you know, 10 days, 14 days, or something. It won't be several months out; I do want to get this resolved. But I think you guys seem -- all seem reasonable, except when he throws in the Van Eck part of it, so --

(Laughter)

THE COURT: But if I need to talk to the Chief Judge, I will.

MR. BOLTON: Give him a call.

THE COURT: I may talk to him anyway and get the scoop on you, Mr. Bolton. So -- but, no, I appreciate it. So I'll mark this settled with a proposed order or stipulation within 14 days.

MR. BOLTON: Thank you, Your Honor.

MS. DURKIN: Thank you, Your Honor.

THE COURT: All right; thank you. We're adjourned.

(Whereupon, at 12:07 p.m., the hearing was adjourned.)

CERTIFICATE OF TRANSCRIBER

I, KAREN HARTMANN, a certified Electronic Court Transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Karen Hartmann*

Karen Hartmann, AAERT CET Date: September 17, 2026

TRANSCRIPTS PLUS, INC.