UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA
WILKES-BARRE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 5:25-bk-00912-MJC |
| | ) | Chapter 7 |
| LUXURY TIME GLOBAL, LLC, | ) | |
| | ) | 274 Max Rosenn U.S. Courthouse |
| Debtor. | ) | 197 South Main Street |
| | ) | Wilkes-Barre, Pennsylvania 18701 |
| | ) | |
| | ) | September 10, 2026 |
| | ) | 10:57 a.m. |

TRANSCRIPT OF AMENDED APPLICATION TO EMPLOY SPECIAL COUNSEL FILED BY TRUSTEE (DOC 151); LIMITED OBJECTION OF ERIC BARTELS (DOC 153); RESPONSE TO OBJECTION BY TRUSTEE (DOC 156); LIMITED SURREPLY OF ERIC BARTELS (DOC 163); TRUSTEE'S OBJECTION TO SURREPLY (DOC 171)
BEFORE HONORABLE MARK J. CONWAY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| Trustee: | Durkin Law, LLC<br>By: JILL E. DURKIN, ESQ.<br>401 Marshbrook Road<br>Factoryville, PA 18419 |
| Proposed Special Counsel for the Trustee: | Tucker Arensberg, P.C.<br>By: KASEY D. BOLTON, ESQ.<br>300 Corporate Center Drive, Suite 200<br>Camp Hill, PA 17011 |
| For U.S. Trustee: | U.S. Trustee's Office<br>Department of Justice<br>By: JOSEPH SCHALK, ESQ.<br>1501 North 6th Street, Box 302<br>Harrisburg, Pennsylvania 17102 |
| Audio Operator: | Ryan Eshelman |
| Transcription Service: | TRANSCRIPTS PLUS, INC.<br>435 Riverview Circle<br>New Hope, Pennsylvania 18938<br>Telephone: 215-862-1115<br>e-mail CourtTranscripts@aol.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES VIA ZOOM:

| | |
|---|---|
| Proposed Special Counsel for the Trustee: | Tucker Arensberg, P.C.<br>By: BEVERLY WEISS MANNE, ESQ.<br>1 PPG Place, Suite 1500<br>Pittsburgh, PA 15222 |
| For Eric D. Bartels: | ERIC D. BARTELS, *PRO SE* |
| For Peter Malak: | PETER MALAK, *PRO SE* |

\- - -

INDEX


| | PAGE |
|---|---|
| Argument by Mr. Bolton | 6 |
| Inquiry of Mr. Schalk by the Court | 11 |
| Inquiry of Mr. Malak by the Court | 11 |
| Argument by Mr. Bartels | 12 |
| Ruling by the Court | 18 |

COURTROOM DEPUTY: (Recording commences with the following) ... Global case, Case Number 25-912.

We have some individuals on your screen. Mr. Eric Bartels, who is a pro se participant in this case.

We also have Attorney Beverly Manne as -- representation of the Trustee, I believe, is still pending.

THE COURT: Okay. And we have Ms. Durkin in the courtroom.

Do we have Mr. Schalk, or did he sneak out?

(No audible response heard)

THE COURT: Oh, he's here.

COURTROOM DEPUTY: He's here.

THE COURT: Mr. Schalk, why don't you come forward? I'm going to ask you some question, or at least a question on this.

MR. SCHALK: I'll do my best.

THE COURT: Okay. Who else?

MR. BOLTON: Mr. Bolton, Your Honor, on behalf of the Trustee and/or Luxury -- or Orafi.

COURTROOM DEPUTY: I'm sorry; can you repeat your name?

MR. BOLTON: Kasey Bolton.

COURTROOM DEPUTY: I thought so; thank you.

THE COURT: You did mutter a little bit, okay? This is in Van Eck's courtroom. This is Conway's courtroom, okay?

MR. BOLTON: I know, I got to --

THE COURT: We don't fool around here.

MR. BOLTON: -- (indiscernible) up it up a little bit.

THE COURT: Tighten your tie.

(Laughter)

THE COURT: All right. And, Ms. Manne, how are you?

MS. MANNE: Good. Is it still morning, Your Honor? Good morning, Your Honor; I'm fine, thank you very much.

THE COURT: Okay; good morning.

And Mr. Bartels, how are you, sir?

MR. BARTELS: Good, Your Honor; thank you.

THE COURT: Okay.

So the first thing on our list is Number 23 -- numbered on the list, and that's an amended application to employ special counsel filed by the Trustee; and an objection by Mr. Bartels; a response to the objection; surreply; and sur-surreply, I guess.

So, Ms. Durkin, it's your amended application to employ special counsel. Do you want to speak in support this? Or do you want Mr. Bolton or Ms. Manne? Who's -- who's the mouthpiece today?

MS. DURKIN: I guess, Attorney Bolton for now.

THE COURT: Okay, Mr. Bolton.

MR. BOLTON: Yes, Your Honor, as you mentioned, I

apologize for the amount of paper that's come across everyone's desk on this. We do think this is a relatively straightforward matter, so I'm going to do my best to be brief in our presentation.

THE COURT: Okay.

MR. BOLTON: As you know, the Trustee's responsible for investigating, prosecuting, and recovering certain actions. And in this case, it involves a number of fraudulent transfers. The trustee has identified a number of transfers that she seeks to investigate and/or prosecute. The Trustee has conducted a number of 341 and other interviews, including with the top two largest creditors, and has identified a number of actions to pursue.

These investigations are going to require a significant more amount of man hours than the Trustee's office has to devote to them. And Section 327 allows the Court to authorize the application and retention of firms at the insistence of the Trustee. The Trustee has decided to exercise that authority and her discretion, and seeks to retain these firms to proceed with the investigation and/or prosecution of these actions.

The amended application and the verified statement of the firms support the Trustee's decision. It outlines the experience of the firms at issue. And --

THE COURT: I don't have a problem with your

experience, obviously.

Talk to me about the conflict issue. Let's get to the heart of the matter.

MR. BOLTON: Sure. 327(c) expressly and unanimously limits standing to object to a retention to other creditors and the Trustee. No creditors and the Trustee have not filed an objection. And Mr. Bartels, who has filed this objection, is neither.

Additionally, he's an insider and a target of these investigations. The Team System case that was cited in the papers states clearly that defendants to fraudulent transfer activities have no standing to object to the application of counsel.

We think that these are straightforward and that there really is no rebuttal to them. I expect that you're going to hear that other provisions of the Code may allow for intervention based on cause. But what you won't hear is any cause that is at issue here.

Mr. Bartels is unable to establish a good cause for an intervention because no such cause exists.

He will also object to a number of alleged shortfalls in the application. Again, there's no case law supporting these alleged shortfalls.

I would reserve time to rebut any of the, you know, arguments he may have towards that.

But I think the application does what it's required to do. It identifies the need for the employment. It identifies the firms to be employed. It identifies the reason the Trustee selected the firms. It outlines the services to be rendered under that appointment. It identifies the compensation arrangement. And it identifies that there -- there are no potential conflicts, and that any conflicts will be handled.

THE COURT: Well, let's talk about that. That's what I wanted to focus on. Who -- your firm represents one of the creditors.

MR. BOLTON: We do.

THE COURT: And that's where you came into this case. Obviously, you come into that -- this case because of that representation with a deep knowledge of the case; Mr. Bartels, Luxury Time Global. I'm assuming this has been going on for months, if not years, your representation.

MR. BOLTON: Our representation began earlier this year.

THE COURT: Okay. Okay. But you represented the creditor. And how much is owed -- how much is owed to that creditor?

MR. BOLTON: Over a million dollars.

THE COURT: Okay. And do you have a personal guarantee of Mr. Bartels in connection with that debt, if you

know? Or is it just monies or product exchanged with the debtor?

MR. BOLTON: With the debtor.

THE COURT: Okay. Okay. So your interests -- I think based upon your papers, and what you're telling me, and what I've seen in this case, your interests are aligned with the Trustee.

MR. BOLTON: And we spoke with Mr. Malak as well, who is the second largest creditor. He is in agreement with our -- and he has just joined. He is in agreement with our pursuit of these claims; I won't speak for him. But --

THE COURT: No, I know who Mr. Malak is, he -- he's represented by Attorney Harris, right?

MR. BOLTON: Indeed.

COURTROOM DEPUTY: Correct.

THE COURT: Okay. Okay.

MR. MALAK: Your Honor, if -- if you may allow me to give a statement whenever you deem is appropriate, I would appreciate that.

THE COURT: Sir, I'll -- I'll get to you.

MR. MALAK: Thank you.

MS. MANNE: Your Honor, Beverly Weiss Manne. I just wanted to let the Court know, I am here. I signed the affidavit in support of the imminent application, and I'm ready to answer any questions that the Court would have related to

that.

I will tell you, we were retained by Orafi only in the context of the bankruptcy case, and have not represented them previously. The other firm -- the Florida firm, who we believe is appropriate and necessary, given a number of transactions and issues that appear to be going on in Florida, and they're very sophisticated, they have been representing Orafi.

Our interests -- the interests of the Trustee, the interest of Orafi, the interest of Mr. Malak, we're all aligned in pursuing voidable transfers to recover for the benefit of the estate, wherever that may be. And whether it's the particular voidable transactions outlined in the report of the United States Trustee's Office when it went through, which was really the item which precipitated the conversion of this case, because there were so many questionable and voidable transactions that that office found relative to various casinos, payments to and from casinos, payments to and from Mr. Bartels and casinos, commingling of funds.

Creditors are owed several million dollars. There appear to have been voidable transactions well exceeding that. Maybe as much as seven to ten million dollars of these debtor's funds.

So we're looking to work with, you know, Orafi, Mr. Malak. All of these creditors who provided credit and

inventory to the debtor all have a -- the same interest. They have a common interest in the Trustee recovering funds wherever it may be, whether it be from casinos, whether it be from Mr. Bartels, or other parties who (indiscernible - multiple speakers) --

THE COURT: Okay; I understand.

Mr. Schalk, do you have any issue with this application? Does the U.S. Trustee have a position?

MR. SCHALK: Your Honor, we reviewed the application; we did not file an objection.

THE COURT: Okay; thank you. That's what I -- that's what I thought you were going to say, but I want to get that on the record.

MR. SCHALK: Um-hum.

THE COURT: Mr. Malak, where did he go?

MR. MALAK: Yes, I'm here, Your Honor.

THE COURT: Mr. Malak, obviously your attorney is not here, but I'm just going to ask you a simple question. I understand you're a creditor. I've had Mr. Harris in here on your behalf on a couple of issues; I don't remember exactly what they were at this point, but I know you're a creditor. You're owed a substantial amount of money, I believe. Do you have any objection to this application?

MR. MALAK: I'm in favor for it a hundred percent.

THE COURT: You're in favor of it one hundred

percent. Okay, I appreciate that. That's really all I need.

So, Mr. Bartels, as a threshold matter, I have to determine whether or not you have standing to -- to object, to make an argument in this case. I understand you're -- I'm assuming -- are you the 100 percent member of Luxury Time Global, LLC?

MR. BARTELS: Yes, Your Honor.

THE COURT: Okay. But you are not a creditor. I did not see your papers indicate you're a creditor. The petition and schedules that were filed by you do not indicate you're a creditor, so --

MR. BARTELS: No, Your Honor.

THE COURT: So how do you have standing?

MR. BARTELS: So I -- I'm -- I maintain the filed objections that I -- I put on the docket. I'm not claiming creditor status or a veto under 327(c). I request narrow participation under Rule 2018 (indiscernible - low audio) which was actually not discussed in Team Systems. As Attorney Bolton mentioned, in this employment matter, because the firms have already acted in civil litigation against me, their conflict schedule identifies me individually, and the Trustee says I will likely be sued.

I only ask to address the conflict record, safeguards, any pre-approval activity in preservation of my defenses. I could -- if you'd like, I could mention what --

THE COURT: Well, is there -- let me ask you, Mr. Bartels. I understand you may be prejudiced by their representation. I'm assuming -- I'm not finding anything, but I'm assuming that you, as the sole officer/sole member of the LLC, will be a target of the Trustee's efforts to collect money on behalf of the debtor. But how does that -- how do those efforts against you prejudice the debtor and its creditors?

MR. BARTELS: Well, I was more interested in the Court reviewing a conflict issue.

THE COURT: Oh, that's -- I -- I think I just did. Ms. Manne filed a fairly lengthy detailed declaration or affidavit in connection with this. Mr. Bolton made a proffer that was bolstered by Ms. Manne. The U.S. Trustee hasn't objected.

The other major creditor, Mr. Malak -- the U.S. Trustee and Mr. Malak have both consented to this.

So my question really is I have discretion, I suppose, under Rule 2018 to allow you to intervene, and I'm not hearing any reason why I should allow you to intervene. Just because you may be a defendant, I think there's case law -- I know there's case law saying that that does not give you the right to be involved in this case.

So if you can point out -- point out any type of prejudice to the debtor and/or its creditors, that may sway me in the other direction, but I'm not hearing --

MR. BARTELS: Well --

THE COURT: -- one -- anything.

MR. BARTELS: Well, Your Honor, again, Rule 2018 is up to the discretion of the Court. I -- the reason why I was seeking narrow participation under Rule 2018 was because litigation was already taken against me.

THE COURT: Okay. But let me -- Mr. Bartels, I don't mean to be a wise guy, but my response to that is so what? Were you not expecting to have litigation against you?

MR. BARTELS: No, this was in a different civil matter, Your Honor.

THE COURT: Okay.

MR. BARTELS: The firms have acted in a different civil matter. It was Tucker and Arsenberg [sic] -- or Arensberg, my apologies, in a different civil matter before the application was even approved, before any conflicts interest was ever actually established.

At face value on their own application, it says that they have a combination of Orafi relationship, express reliance on knowledge obtained through that representation as a reason for estate employment, propose broad investigative role, and an absence of a defined independent process, specifically for reviewing Orafi-related matters. And this is the point, before a formal adversity is actually recognized. I'm --

(Pause)

THE COURT: Are you still going, sir? Or you're done?

MR. BARTELS: If you'll allow me.

THE COURT: I didn't stop you. There was a --

MR. BARTELS: Okay.

THE COURT: A pause.

MR. BARTELS: No, I was -- I -- I just wanted to be heard. Again, I'm not an attorney, Your Honor. I'm appearing -- I'm pro se. I -- I submitted a continuance notice yesterday, and it was -- the Court declined it -- to -- to get counsel for this.

But I'm not asking the Court to authenticate any evidence or to close privileged communications. The papers that were submitted by the firms specifically say they use Orafi-derived knowledge as a qualification and cost saving reason for retention, but do not define the general source and categories, permitted use, independent corroboration, information boundaries, or a neutral threshold review, which I thought should have been undertaken by the Court.

My biggest concern is whether one of the creditor's information can shape the estate's investigation before an independent reviewer decides whether Orafi itself, or any other creditors, its claim accounts, credits, transfers, or conduct, require scrutiny themselves.

THE COURT: Are you -- are you done now?

MR. BARTELS: I'm done. That -- that -- that's it, Your Honor. I --

THE COURT: Ms. Durkin, how long have you been a Chapter 7 Trustee now?

MS. DURKIN: I've been a Chapter 7 Trustee for a little over three and a half years.

THE COURT: Okay. But you worked with -- very closely with a Chapter 7 Trustee for how many years?

MS. DURKIN: Twenty-four -- uh, no, I worked for him actually for 23 years before I went on my own.

THE COURT: That's amazing, and you're only 29 years old.

MS. DURKIN: Yeah.

(Laughter)

THE COURT: Good for you.

MS. DURKIN: I'm a child prodigy.

THE COURT: Yeah, very smart. But, no, I -- the point I'm getting at in all seriousness --

MS. DURKIN: Yes.

THE COURT: -- is you're experienced.

MS. DURKIN: And, Your Honor, we have -- in my experience over those years, we have hired other counsel who has come in through their relationship with some creditors of other estates.

THE COURT: Well, as you may know, I was a trustee for about 30 years, so I understand, and I understand the limited resources of the Chapter 7 trustee. And as a judge, I'm trying to push the Chapter 7 trustees that come in front of me on getting things done quickly; hiring counsel; getting assets into the estate.

And because you have limited resources, it's difficult to hire a firm. It's difficult, certainly, to pay anyone per hour, so you have to dangle a contingency in front of them, and hopefully make it worth their while. So I understand all of that.

And obviously, you are -- another point I wanted to get to is not only that you're experienced, but also that you're aware of conflicts of interest.

MS. DURKIN: Yes, Your Honor.

THE COURT: And I would expect you to contact the U.S. Trustee, Mr. Schalk, or file something with the Court if you ever determined that Mr. Bolton, and Ms. Manne, and the firm -- law firms that you're hiring are doing anything other than representing your best interest.

MS. DURKIN: Yes, Your Honor.

THE COURT: I'm assuming you've had those discussions. I'm assuming they can't really move forward effectively. Quite -- Orafi can't move forward effectively without you, and they probably need you in order to bring some

of those fraudulent conveyance cases, and things of that nature.

So I think that works in both -- both interests. But any recovery that they get, better make it into the estate --

MS. DURKIN: Yes.

THE COURT: -- account --

MS. DURKIN: Yes.

THE COURT: -- and not Orafi's account.

MS. DURKIN: That is the plan, yes, Your Honor.

THE COURT: Okay.

So, Mr. Bartels, unfortunately, I've reviewed your papers. I've heard your argument. I'm overruling your objections.

I'm approving the Trustee's amended application to employ special counsel.

To the extent you're referencing confidential documents, and things like that, I really don't understand your argument, at least for today's hearing.

Obviously, Mr. Bolton, and Ms. Manne, and counsel, I don't think they have any obligations as to confidentiality. They could share whatever documents they want. I'm not sure, I guess, but -- I'm not sure what your point was there.

MR. BARTELS: Oh --

THE COURT: Go ahead. I'll let you speak.

MR. BARTELS: Your Honor, if I may speak, just one --

one last thing, and then I'm finished.

So what you just discussed with Trustee Durkin is precisely my concern. The Trustee said she will determine whether an Orafi conflict exists or a conflict of interest exists whatsoever. Repeated the experience she has, which I trust.

But that's -- who actually determines whether a conflict exists? And in their own employment agreement, it says that that would be figured out later by another independent counsel which was never identified, okay? And who independently advises on making those types of decisions and thresholds when an Orafi-related matter excluded before a decision is actually made.

THE COURT: Okay.

MR. BARTELS: (Indiscernible - multiple speakers).

THE COURT: Mr. Bartels, I'll -- I will tell you, the U.S. Trustee oversees their trustees and all professionals operating or acting in and through this court.

Mr. Schalk, do you have anything to add?

MR. SCHALK: Your Honor, I'd simply say -- state for the record, as you kind of eloquently put it, the Office of the United States Trustee serves as the oversight for the panel Chapter 7 trustees. The application or employment of professionals is reviewed by the Office of the United States Trustee.

We did not lodge an objection in this case because the retention of counsel at the outset of the case is generally reviewed and approved by the Court. If the Trustee determines or if a party raises a concern with a potential conflict that evolves during the course of representation, that concern would be brought to our office, and we would investigate, and, if necessary, file the appropriate action with the Court for the Court to consider whether or not the employment needs to be terminated.

The Chapter 7 Trustee is also free to file such a motion, if she so chooses.

So it would be our position, Your Honor -- as I indicated earlier, we reviewed the application in this case, and we understand very acutely the limited resources the Chapter 7 Trustee has to retain counsel, and that often counsel comes in through creditors. She has reached an agreement to retain them. That agreement was provided to the Court; noticed to the creditors. Nobody objected other than Mr. Bartels.

THE COURT: And as you know, Mr. Schalk, under 327, only the -- a creditor --

MR. SCHALK: A creditor.

THE COURT: -- or the U.S.T. can object, correct?

MR. SCHALK: Correct.

THE COURT: Okay.

MR. SCHALK: And --

THE COURT: I just want to --

MR. SCHALK: -- we believe that at this point in time, the application is appropriate and ripe for the Court to consider. And based on our review, we do not find it objectionable.

If an issue arises during the course of that representation, we would expect the Trustee to notify us and/or the Court and take the appropriate action.

THE COURT: Okay. Well, listen, under Section 327, Mr. Bartels is not a creditor. He's not the U.S. Trustee. So I don't think he has standing to object.

Under 2018, I think I have quite a bit of discretion. And if -- if I found cause to allow him to have standing for this particular matter, I would go to the next step and hear about the actual objection and the need for that.

But he has not given the Court any cause, really, other than he's a defendant in -- in -- is it a State Court action that's already been filed or a Federal Court? I'm not sure.

MR. BOLTON: There's a (indiscernible - multiple speakers).

MR. BARTELS: Your Honor, it --

THE COURT: Okay. So given the fact that he has not shown cause, I'm -- well, for the second time, I will overrule

his objection and grant the Trustee's amended application.

Is there anything else on for today?

MS. MANNE: Your Honor, one final -- it's Beverly Weiss Manne for --

THE COURT: Yes.

MS. MANNE: -- hopefully now retained counsel for the Trustee.

Your Honor, we did file an amended order. You know, it's not like we didn't read Mr. Bartels' objections. And to the extent any of the points were well taken, Your Honor, we went ahead and filed an amended application. And then we looked at it again, and we filed another proposed amended order, which is attached to -- at Docket Number 171-1, the proposed order, just to make it clear in the order itself that it is a contingent fee; what the contingent fee is; and that we may take the actions necessary to effectuate the order and retention.

So I would ask that, if the Court's going to enter the order, that you please enter the order that we filed at 171-1.

THE COURT: Okay. I saw that. We'll take another look at that. And we'll enter an order -- an appropriate order.

MS. MANNE: Thank you, Your Honor.

THE COURT: So that's Number 23 on my list.

COURTROOM DEPUTY: And so 24 and 25 are related. They're motions to -- for leave to file a limited response that Mr. Bartels filed, with an objection by the Trustee.

One relates to --

THE COURT: Okay. That's mooted. Number 24 is moot based upon my finding. I'm not sure if Mr. Bartels was looking to file another response.

COURTROOM DEPUTY: Okay.

THE COURT: There's plenty of responses. I think this was --

COURTROOM DEPUTY: Yeah.

THE COURT: -- well brief. So that's -- 24 is mooted.

And number 25 is motion for leave to file a limited response. 25 and 24 are the same thing?

MS. DURKIN: I think they were.

COURTROOM DEPUTY: They were.

THE COURT: So, you know what? I'm going to be consistent and indicate that's mooted, as well.

COURTROOM DEPUTY: Okay.

THE COURT: Okay?

COURTROOM DEPUTY: Got -- yeah. Yes; thanks for clarifying that.

THE COURT: Thank you. Very good.

MS. DURKIN: Thank you, Your Honor.

THE COURT: Good luck.

MS. MANNE: Thank you, Your Honor.

UNIDENTIFIED SPEAKER: Thank you, Your Honor.

(Whereupon, at 11:22 a.m., the hearing was adjourned.)

CERTIFICATE OF TRANSCRIBER

I, KAREN HARTMANN, a certified Electronic Court Transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Karen Hartmann

Karen Hartmann, AAERT CET Date: September 18, 2026

TRANSCRIPTS PLUS, INC.