**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Luxury Time Global, LLC | : | Case No. **5:25-bk-00912-MJC** |
| | : | |
| Debtor | : | |

**TRUSTEE JILL E. DURKIN'S MOTION TO ENFORCE**
**THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(a)(3)**

Jill E. Durkin, the Chapter 7 Trustee (hereinafter the "**Movant**" or "Trustee") for the Estate of Luxury Time Global LLC, (the "Debtor"), pursuant to 11 U.S.C. §§ 362(a)(3) and 362(k), files this Motion to Enforce the Automatic Stay:

**PRELIMINARY STATEMENT**

Peter Malak ("MALAK") is a creditor in the bankruptcy case of Luxury Time Global, pending in this Court. Malak has filed a lawsuit against parties for alleged transfers to various parties including Bartels- Debtor's principal and other entities allegedly controlled by or working with Bartels (the "Causes of Action"). These Causes of Actions are property of the estate and can only be prosecuted by the Trustee. Malak's efforts to exercise control over and collect property of the estate violates the Automatic Stay imposed by 11 U.S.C. Section 362. The Court should grant tis Motion.

**JURISDICTION**

1. The United States Bankruptcy Court for the Middle District of Pennsylvania (the "**Court**") has jurisdiction over these matters pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(1).

2. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

3. The Debtor filed this case as a small business Chapter 11 on April 2, 2025 ("**Petition Date**").

4. On May 27, 2025, the Office of the United States Trustee, the United States Trustee filed a Motion to Convert the Chapter 11 to Chapter 7 (ECF 42) (the "**Motion to Convert**").

5. On July 8, 2025, the Auditor for the US Trustee's Office filed a Declaration in Support of the Motion to Convert detailing improper transfers of estate funds by the principal of the Debtor. See Doc. 73.

6. The Office of the US Trustee subsequently filed Motions to Dismiss the Case.

7. On August 21, 2025 the US Trustee, Debtor and Subchapter V Trustee entered into a Stipulation providing for, inter alia, conversion of the case to a chapter 7 proceeding. (ECF 91).

8. On August 22, 2025, the case was converted to a case under Chapter 7 and the Notice of Meeting of Creditors with the Appointment of Durkin as interim Trustee was sent out. (ECF 93).

9. In October 2025, the 341 Meeting was initially held but was adjourned and or continued several times until to January 6, 2026 at which time Debtor appeared (ECF 112). No trustee was elected and by operation of law, Trustee Durkin became the Trustee in the proceeding. 11 U.S.C. 702(d).

***THE MALAK DISTRICT COURT LITIGATION***

10. On May 6, 2026 Peter Malak ("MALAK") filed a complaint against, *inter alia*, the Debtor's principal Eric D. Bartels, (the **"MALAK Complaint"**) and various entities Bartels is alleged to direct or control, in the United States District Court for the Middle District of

Pennsylvania (Scranton) at Case No. 3:26cv1222. A true and correct copy of the Complaint is attached hereto as Exhibit "A".

11. The crux of MALAK's Complaint is that the DEBTOR was a mere alter ego of the named defendants. Comp. ¶¶ 40-48, 53-56, 59, 62-77.

12. MALAK has alleged that the defendants are recipients of fraudulent transfers of the DEBTOR's assets. Comp. ¶¶ 107-114.

13. The Defendants, all of whom are represented by the same attorney, have moved to dismiss MALAK's Complaint.

**ARGUMENT**

**1. MALAK'S CONTINUED PURSUIT OF FRAUDULENT CONVEYANCE AND DIVERSION CLAIMS VIOLATES THE AUTOMATIC STAY BY TAKING ACTION AGAINST PROPERTY OF THE ESTATE**

14. MALAK's pursuit of the District Court Action is a violation of the automatic stay imposed by 11 U.S.C. § 362(a)(3).

15. Section 362(a)(3) of the bankruptcy code provides that "a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of— (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" 11 U.S.C. § 362(a)(3).

16. Fraudulent conveyance claims, preferences, diversion, alter ego and successor liability claims are general claims and are property of the estate. *See e.g., In re Whittaker Clark & Daniels Inc.*, 176 F.4th 241, 267 (3d Cir. 2026); *In re PA Co-Man, Inc.,* 644 B.R. 553, 633 (Bankr. W.D. Pa. 2022).

17. Once a bankruptcy is filed, creditors cannot pursue general claims in a different court for their own benefit. *In re Emoral, Inc.,* 740 F.3d 875, 879 (3d Cir. 2014). Instead, these claims are property of the estate and must be pursued by the appropriate estate representative.

18. In *Emoral*, the Court of Appeals held that general causes of action (as opposed to personal claims held by a particular creditor) are property of the estate and cannot be pursued by the injured creditor in state court while the bankruptcy is pending. 283; see also Emoral, 740 F.3d at 879; *Accord In re Whittaker Clark & Daniels Inc.*, 176 F.4th 241, 267 (3d Cir. 2026)

19. MALAK's theory of liability in the District Court Action is essentially that the DEBTOR, while insolvent, dissipated millions of dollars that would otherwise be available for the repayment of his loans to instead support BARTELS's lifestyle, personal expenses, and gambling habits. Comp. ¶¶ 20-39.

20. MALAK further alleges that BARTELS controlled and operated other entities as alter egos through which he "improperly and fraudulently diverted" the DEBTOR's funds for his own use. *Id.* at ¶¶ 41, 56, 59-92. MALAK largely relies on the Bankruptcy proceedings to establish the facts in his Complaint – appending the U.S. Trustee's Motion for Conversion or Dismissal as Exhibit "A," the Bankruptcy Auditor's declaration as Exhibit "B," and setting forth dozens of factual allegations discussing the DEBTOR's Bankruptcy. Comp. ¶¶ 20 - 61.

21. The alleged misappropriation, fraudulent transfer and diversion of the DEBTOR'S funds affects all creditors: not just MALAK; and MALAK's claim is therefore one that belongs to the estate and within the TRUSTEE's exclusive purview. *See In re Whittaker Clark & Daniels Inc.,* 176 F.4th 241, 267 (3d Cir. 2026; *In re Wilton Armetale*, 968 F.3d 273 at 277–78 [Under the Bankruptcy Code, a trustee manages the company's estate, including those creditors' asset-plundering claims. The Code thus shifts the statutory authority to pursue those claims from the creditors to the trustee, unless the trustee relinquishes it."]'

22. MALAK' violation of the automatic stay is knowing and willful. MALAK is a creditor and has filed a proof of claim in this Bankruptcy. Malak did not ask the Trustee or the Court for permission to make claims of the Bankruptcy Estate. *See Boltz-Rubinstein v. Bank of*

*Am.,* 596 B.R. 494 (Bankr. E.D. Pa. 2019) (noting that a willful stay violation occurs when the party is aware of the bankruptcy filing).

23. Barring MALAK from pursuing the fraudulent transfer and alter ego claims for his own benefit is a proper application of the automatic stay. *See In re Stone Res., Inc.*, 458 B.R. 823 (E.D. Pa. 2011) (explaining that the automatic stay prevents enforcement of all claims against a debtor to ensure that assets are not dissipated before an orderly distribution to creditors can be affected); *In re Keene*, 164 B.R. 844 (Bankr. S.D.N.Y. 1994) (finding that the automatic stay prohibited creditor's continued prosecution of its claim, explaining that the stay functions to prevent a multijurisdictional rush to judgment by creditors and protects the interests of all creditors by treating like-situated claimants equally).

24. The Trustee has moved in the District Court action to be substituted as the Plaintiff, or in the alternative to be permitted to intervene, and for the District Court to refer the District Action to this Court.

25. This Court should thus order MALAK to discontinue his personal pursuit of the Estate's claims, and to take appropriate action to correct his stay violation including his consent to the substitution of the Trustee as Plaintiff in the District Court Action and Referral of the District Court Action to this Court.

## II. CONCLUSION

28. Through pursuit of the Estate's fraudulent transfer, diversion and alter ego claims for his own benefit in the District Court Action, MALAK has violated the automatic stay.

29. Accordingly, MALAK should be enjoined and prohibited by this Court from pursuing the District Court Action and directed to take appropriate action enabling the Trustee to be substituted as Plaintiff and to have the District Court Action referred to this Court.

WHEREFORE, for the above stated reasons, Jill E. Durkin, Chapter 7 Trustee, respectfully requests this Honorable Court to issue an order (a) finding Malak in violation of the Automatic Stay pursuant to 11 U.S.C. § 362 (b) enjoining further Automatic Stay violations by MALAK, including his continued prosecution of the competing District Court Action titled Peter Malak v. Eric D. Bartels, et al., filed at Case #3:26-cv-01222-JKM, United States District Court for the Middle District of Pennsylvania (the "District Court Action"), and (c ) ordering MALAK to take appropriate action to correct his stay violations and facilitate the substitution of the Trustee as Plaintiff in the District Court Action and the referral thereof to this Court; and (d) awarding any further relief this Court deems just and proper.

Dated: July 24, 2025

Respectfully Submitted,

*/s/ Beverly Weiss Manne*

Beverly Weiss Manne, Esq.
PA ID No. 34545
**TUCKER ARENSBERG, P.C.**
1500 One PPG Place
Pittsburgh, PA 15222
Phone: 412-594-5525
Email: bmanne@tuckerlaw.com

Kasey D. Bolton, Esq.
PA I.D. No. 321169
300 Corporate Center Drive, Suite 200
Camp Hill, PA 17011
Phone: 717- 234-4121
Email: kbolton@tuckerlaw.com

Justin G. Gendler, Esq.
Gendler & Gendler
PO Box 450135
Fort Lauderdale Florida 3345-0135
Phone: 954-728-4569
Email: jgendler@gendlerlawyers.com.

COUNSEL TO JILL E. DURKIN, CHAPTER 7 TRUSTEE

# EXHIBIT “A”

# TO TRUSTEE JILL E. DURKIN’S MOTION TO ENFORCE STAY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PETER MALAK**<br>**6 Bredder Court, Unit B**<br>**Elmwood Park, NJ 07407,**<br>**Plaintiff,**<br>**v.**<br><br>**ERIC D. BARTELS**<br>**6 Dickinson Close**<br>**Moosic, PA 18507,**<br><br>**EMB TRADING, LLC, individually and d/b/a SUPERLATIVE WATCH CO.**<br>**30 S. 15th Street, Suite 1550, PMB**<br>**Philadelphia, PA 19102,**<br><br>**CLAIRE BUTLER**<br>**1000 West Avenue, Apt. 406**<br>**Miami Beach, FL 33139, and**<br><br>**B&B LUXURY TRADING GROUP, LLC**<br>**1000 West Avenue, Apt. 406**<br>**Miami Beach, FL 33139,**<br>**Defendants.** | **3:26-CV-____________**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Peter Malak ("Plaintiff Malak"), by his undersigned counsel, hereby files his Complaint against Defendants Eric D. Bartels, EMB Trading, LLC, individually and d/b/a Superlative Watch Co., Claire Butler, and B&B Luxury Trading Group, LLC (collectively, "Defendants"), and in support thereof avers as follows:

## I. THE PARTIES

1. Plaintiff Peter Malak is an adult individual who resides in the State of New Jersey and is a citizen of the State of New Jersey.

2. Defendant Eric D. Bartels ("Defendant Bartels") is an adult individual who resides in Moosic, Lackawanna County, Pennsylvania and is a citizen of the Commonwealth of Pennsylvania.

3. Defendant Claire Butler ("Defendant Butler") is an adult individual who resides in Miami Beach, Florida and is a citizen of the State of Florida.

4. On October 23, 2021, Defendant Bartels formed a Pennsylvania limited liability company called "Luxury Time Global" by filing a Certificate of Organization with the Pennsylvania Department of State and its principal place of business and registered office is in Pennsylvania.

5. Luxury Time Global purports to be a high-end luxury watch wholesaler with retail sales to the general public.

6. Upon information and belief, Defendant Bartels is the sole managing member and owner of Luxury Time Global, however, Defendant Butler was employed by and worked closely with Defendant Bartels in operating and conducting the business of Luxury Time Global and the other Defendant entities.

7. On March 12, 2025, Defendant Bartels formed a Pennsylvania limited liability company called "EMB Trading" by filing a Certificate of Organization with

the Pennsylvania Department of State and its principal place of business and registered office is in Pennsylvania.

8. On August 21, 2025, Defendant Butler formed a Pennsylvania limited liability company called "B&B Luxury Trading Group" by filing a Certificate of Organization with the Pennsylvania Department of State, its registered office is in Dauphin County, Pennsylvania, and its principal place of business is in Pennsylvania or in Florida.

9. On January 22, 2026, Defendant Bartels registered "Superlative Watch Co." as a fictitious name of EMB Trading, LLC by filing a Registration Of Fictitious Name with the Pennsylvania Department of State. Upon information and belief, Defendants Bartels and EMB Trading failed to officially publish the registration.

10. B&B Luxury Trading Group, Superlative Watch Co., and EMB Trading all purport to participate in and serve the high-end luxury watch market and consumers.

## II. JURISDICTION AND VENUE

11. Jurisdiction of this Court is conferred by 28 U.S.C. § 1332(a) by virtue of the parties' complete diversity of citizenship and the amount in controversy which exceeds $75,000.00.

12. Alternatively, jurisdiction is proper pursuant to 28 U.S.C. § 1334(b) because it is a civil proceeding "arising in or related to cases under title 11" due to

the April 2, 2025 bankruptcy petition filed by Luxury Time Global, LLC at Docket No. 05:25-bk-00912-MJC in the United States Bankruptcy Court for the Middle District of Pennsylvania[1].

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## III. FACTUAL BACKGROUND

14. After numerous face-to-face meetings, exchanges of text and email communications, and telephone conferences that included the presentation, submission, and representation of financial information by Defendant Bartels, Plaintiff Malak lent the total sum of **$1,100,000.00** in a series of transfers to Luxury Time Global, with the promise that the principal sums would be repaid with interest.

15. The sums borrowed by Luxury Time Global were distributed by or through Plaintiff Malak to Defendant Bartels and Luxury Time Global in four installments from April, 2024 through September, 2024.

16. Defendant Bartels made material misrepresentations, both verbally and in writing, concerning Luxury Time Global's financial performance and its ability to repay the $1.1 Million and made the material misrepresentations with the intent to deceive Plaintiff Malak.

[1]Defendant Bartels had earlier filed a personal Chapter 13 bankruptcy petition on or about March 13, 2021 at Docket No. 5:21-bk-00490-MJC. He voluntarily dismissed and withdrew his petition on or about July 29, 2025 after the United States Trustee moved to dismiss the proceeding as a bad faith filing and for failure to make required payments.

17. At the time that Defendant Bartels made the material representations to Plaintiff Malak, Defendant Bartels and Luxury Time Global knew that the representations were false and that neither Defendant Bartels nor Luxury Time Global intended to repay the principal sums borrowed from Plaintiff Malak or the interest thereon.

18. Defendant Bartels intended to deceive Plaintiff Malak and fraudulently induced him to transfer $1.1 Million to Luxury Time Global.

19. Defendant Butler's involvement in Luxury Time Global's operations was so pervasive that in late November, 2024 she transferred $45,000 (an amount nearly equal to ½ her base salary) from her personal financial account to Luxury Time Global without any documentation of the transfer as a loan, gift, or some other purpose.

## LUXURY TIME GLOBAL AND ITS BANKRUPTCY

20. On April 2, 2025, Defendant Bartels caused Luxury Time Global, LLC to file a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code at No. 05:25-bk-00912-MJC in the United States Bankruptcy Court for the Middle District of Pennsylvania.

21. On or about May 27, 2025, the United States Trustee filed a Motion For Conversion Or Dismissal of Luxury Time Global's Chapter 11 bankruptcy petition. A true and correct copy of the United States Trustee's Motion For Conversion Or

Dismissal, filed May 27, 2025, is attached hereto and incorporated herein as Exhibit "A".

22. The United States Trustee specifically noted that "dozens of entries on [Luxury Time Global's] checking account statements reflect its payment of Mr. Bartels' personal expenses at gas stations, restaurants and food delivery, car washes, clothing purchases, Apple.com and a trip to a beauty salon" during an eight (8) month period in 2024-25. Id. at pp. 6-7, n. 6.

23. To support the United States Trustee's Motion for Conversion or Dismissal, Bankruptcy Auditor Nicole Watson reviewed and analyzed Luxury Time Global's bankruptcy schedules, bank statements, tax returns and schedules, and other financial records, as well as the personal bank account information and bank statements of Defendant Bartels, and filed her declaration and supporting exhibits on or about July 8, 2025. A true and correct copy of the Declaration of Bankruptcy Auditor Nicole Watson is attached hereto and incorporated herein as Exhibit "B".

24. On August 22, 2025, Luxury Time Global's Chapter 11 proceeding was converted to a Chapter 7 bankruptcy.

25. At the Section 341 meeting of creditors in the Luxury Time Global bankruptcy conducted on May 6 and 13, 2025, Defendant Bartels testified and acknowledged that between April-September 2024, he caused Luxury Time Global

to borrow $1.1 Million in installments from Plaintiff Malak after promises that the funds would be used to purchase watch inventory.

26. In an adversary action filed on June 20, 2025 by Luxury Time Global against Plaintiff Malak and docketed to Adversary No. 5:25-ap-00047-MJC, Luxury Time Global alleged that it paid back to Plaintiff Malak sums totaling **$583,689.00** from April 26, 2024 through September 6, 2024.

27. As a result of the foregoing payments, Plaintiff Malak retains a claim against Luxury Time Global and Defendant Bartels for a principal balance owed of **$516,311.00**.

28. Aside from the balance owed to Plaintiff Malak, Luxury Time Global's bankruptcy schedules indicated that it had assets of $2,501.00 and had non-priority unsecured obligations totaling $411,480.00 to eleven (11) separate "Merchant Cash Advance" ("MCA") lenders, which were incurred between September 2024 and March 2025.

29. In contrast, at relevant times, Defendant Bartels claimed gross income in excess of $18 Million when filing his personal tax returns.

30. On its Statement of Financial Affairs, Luxury Time Global admitted that from January 1, 2024 to December 31, 2024 it transferred out of its business checking and savings accounts and into Defendant Bartels' personal checking and savings accounts the sum of $3,348,865.05 and that, after reflecting transfers back

of $2,817,721.50 from Defendant Bartels' personal checking and savings accounts into Luxury Time Global's financial account, a net difference of $531,143.55 remained in Defendant Bartels' personal accounts at the close of calendar year 2024.

31. Defendant Bartels testified further at Luxury Time Global's 341 Meeting of creditors that he had, and continues to have, the sole and exclusive pre-petition and post-petition access to Luxury Time Global's bank accounts.

32. The United States Trustee noted in its Motion for Conversion or Dismissal from its detailed "Bank Analysis" that, "in each and every month from August 2024 to March 2025…[Defendant Bartels] engaged in numerous and repeated online gambling transactions, betting amounts varying from a thousand dollars to tens of thousands of dollars in wagers from …[Luxury Time's] business checking account at Windcreek-PA online casino, BetRivers, Sugar House online casino, Bet365, Caesars Sports, Fanduel, and Jackpot City online casino." See Exhibit "A" at ¶15, p. 5.

33. Upon information and belief, these funds used for gambling by Defendant Bartels were, at least in part, derived from the $1.1 Million loan from Plaintiff Malak.

34. The United States Trustee concluded that, during the aforesaid 8-month time period, Defendant Bartels' gambling activities funded by Luxury Time Global

resulted in a net loss for each of those eight (8) months, resulting in a combined net loss of $1,400,263.39. See Exhibit "A" at ¶16, p. 5.

35. The United States Trustee further found that, "during a period of declining gross revenue and an inability to deliver promised product to its customers in the 8 months immediately preceding the filing of this bankruptcy case, Defendant Bartels nevertheless caused Luxury Time Global to pay him "compensation"' of at least $1,931,406.94 ($531,143.55 + $1,400,263.39), largely by funding Defendant Bartels' personal gambling activities. See Exhibit "A" at ¶17, pp. 6-7.

36. The United States Trustee observed that, during the same eight (8) month period, Defendant Bartels repeatedly transferred substantial amounts between Luxury Time Global's bank accounts, his personal bank accounts, and a company account at Bank of America. See Exhibit "A" at ¶¶18-22, pp. 7-9.

37. The United States Trustee concluded that: (a) by using Luxury Time Global to fund his prolific pre-petition gambling actions, Defendant Bartels, Luxury Time Global's sole and managing member, wrought significant damage upon Luxury Time Global's cashflow and necessitated that it have heavily leveraged, high interest borrowing from the MCA lenders; and (b) Defendant Bartels caused the net sum of hundreds of thousands of dollars to be transferred from Luxury Time Global's business accounts to his personal checking and savings accounts for the entire calendar year 2024, which Defendant Bartels admitted as part of his Section 341(a)

meeting testimony was at least in part done to divert funds from Luxury Time Global's MCA lenders-creditors. See Exhibit "A" at ¶40, p. 17.

38. As the Bankruptcy Auditor concluded following her review and analysis of the available financial records of Luxury Time Global and Defendant Bartels, Defendant Bartels had engaged in extensive personal gambling funded directly from Luxury Time Global's financial accounts and had orchestrated pervasive intermingling of the business accounts with his personal accounts. The wrongful practices materially contributed to or directly caused the insolvency of Luxury Time Global. See Exhibit "B" at ¶10, p. 4.

39. The Bankruptcy Auditor's review and analysis demonstrated that there was a chronic commingling of assets between Luxury Time Global and Defendant Bartels, no meaningful separation existed between the business's assets and Defendant Bartels' personal assets, and the financial transfers were unsupported by any documentation establishing loan or repayment terms, or any formal accounting methodologies. See Exhibit "B" at ¶¶10-14, pp. 5-6.

40. As the sole owner and sole member of Luxury Time Global, Defendant Bartels effectively bled funds of Luxury Time Global into his personal account for his personal use and for his gambling activities. Id.

41. Defendant Bartels improperly and fraudulently diverted and misappropriated the funds borrowed from Plaintiff Malak for his own use and

consumption, rather than for any legitimate business purposes of Luxury Time Global, including paying back the obligations owed to its creditors, such as Plaintiff Malak.

42. Through Defendant Bartels' intentional actions, Defendant Bartels engaged in fraud and defalcation and, in turn, caused Luxury Time Global to engage in intentional deceit.

43. At all relevant times, Defendant Bartels exercised complete domination and control over the finances, policies, and business practices of Luxury Time Global such that Luxury Time Global had no separate mind, will, or existence of its own.

44. Luxury Time Global was, at all relevant times, the *alter ego* of Defendant Bartels and was used by him as a mere instrumentality to conduct personal business and shield personal assets from liability.

45. Defendant Bartels failed to maintain Luxury Time Global as a separate and distinct legal entity.

46. By way of example, and without limitation, through Defendant Bartels' machinations:

a. Luxury Time Global failed to maintain adequate company records, including records of major financial decisions, owner/member actions, or distributions to owners/members;

b. Luxury Time Global failed to observe even minimal organizational formalities, including maintaining separate books and records;

c. Luxury Time Global and Defendant Bartels shared the same business address, contact information, and operational identity;

d. Defendant Bartels routinely conducted Luxury Time Global business in his personal capacity and vice versa, without distinction;

e. Communications with Plaintiff Malak and third parties failed to distinguish between Luxury Time Global and Defendant Bartels.

47. Defendant Bartels commingled and combined his personal assets and Luxury Time Global's funds, including but not limited to, paying personal obligations and gambling expenditures of Defendant Bartels and transferring funds between Defendant Bartels and Luxury Time Global without documentation, with no legitimate business purpose, and/or without adherence to any loan or distribution formalities. See e.g. Exhibit "A" and Exhibit "B".

48. Luxury Time Global lacked a consistent or independent financial identity separate from Defendant Bartels.

49. Luxury Time Global was inadequately capitalized for the nature and risks of its business at the time of formation and during its operations.

50. Upon information and belief, during all pertinent times, Luxury Time Global lacked sufficient capital to meet its reasonably foreseeable liabilities, including its obligations to Plaintiff Malak.

51. Upon information and belief, during all pertinent times, Defendant Bartels caused Luxury Time Global to incur obligations to Plaintiff Malak despite knowing that Luxury Time Global lacked the financial ability to perform.

52. Upon information and belief, during all pertinent times, Defendant Bartels diverted or depleted Luxury Time Global's assets at times when Luxury Time Global was obligated to Plaintiff Malak.

53. Defendant Bartels siphoned funds from Luxury Time Global for personal benefit, including, but not limited to, distributions or transfers to Defendant Bartels while Luxury Time Global was insolvent or was rendered insolvent thereby, preferential payments to insiders or affiliated entities controlled by Defendant Bartels, and removal or diversion of assets to hinder, delay, or prevent payment to Plaintiff Malak.

54. Luxury Time Global functioned as a façade for the operations of Defendant Bartels.

55. Luxury Time Global had no meaningful independent existence and was used by Defendant Bartels primarily to attempt to shield Defendant Bartels from personal liability, to conduct personal business under the guise of a separate entity, and to avoid contractual and financial obligations owed to creditors, including Plaintiff Malak.

56. Adherence to Luxury Time Global's form under these circumstances would sanction fraud and promote injustice.

57. Defendant Bartels used Luxury Time Global's form to incur obligations to Plaintiff Malak without the intent or ability to satisfy them, to divert assets away from Luxury Time Global in an effort to avoid payment, and to leave Luxury Time Global judgment-proof while retaining the economic benefits of Plaintiff Malak's substantial financing.

58. As a direct and proximate result of the foregoing, Plaintiff Malak has been harmed and left without an adequate remedy against Luxury Time Global alone.

59. The totality of the circumstances demonstrates that Luxury Time Global is the *alter ego* of Defendant Bartels.

60. Defendant Bartels's misuse of Luxury Time Global's form directly caused Luxury Time Global's inability to satisfy its obligations to Plaintiff Malak.

61. But for Defendant Bartels's conduct, including the diversion of assets and failure to maintain Luxury Time Global as a separate entity, funds would have been available to satisfy Plaintiff Malak's claims.

**EMB TRADING, LLC and B&B LUXURY TRADING GROUP, LLC**

62. Recognizing that Luxury Time Global was spiraling into bankruptcy, Defendant Bartels formed a new limited liability company that he called "EMB

Trading" approximately three (3) weeks before the filing of Luxury Time Global's bankruptcy petition and later registered the fictitious name of "Superlative Watch Co." for EMB Trading in January 2026.

63. Upon information and belief, Defendant Bartels is the sole member, manager, and controlling person of EMB Trading, however, Defendant Butler worked closely with Defendant Bartels in operating and conducting the business of EMB Trading.

64. Thereafter, on or about the date that Luxury Time Global's bankruptcy reorganization was converted to Chapter 7 liquidation, Defendant Butler, acting in concert with Defendant Bartels, formed a limited liability company that they called "B&B Luxury Trading Group".

65. Curiously, Defendants Bartels and Butler demonstrated how intermingled their business and personal affairs were by expressly stating on the website that they created for "Superlative Watch Co.":

> © 2026 Superlative Watch Co. Operated by B&B Luxury Trading Group LLC. All rights reserved.

66. At all relevant times, Defendants Bartels and Butler exercised complete domination and control over the finances, policies, and business practices of EMB Trading and B&B Luxury Trading Group such that neither purported entity has any separate mind, will, or existence of its own.

67. At all relevant times, EMB Trading and B&B Luxury Trading Group has served as the alter ego of Defendants Bartels and Butler and were used by each of them as a mere instrumentality to conduct personal business and shield personal assets from liability.

68. Defendants Bartels and Butler failed to maintain either EMB Trading and/or B&B Luxury Trading Group as a separate and distinct legal entity.

69. Defendants Bartels and Butler commingled their personal funds and the funds of their purported entities.

70. Both EMB Trading and B&B Luxury Trading Group were inadequately capitalized for the nature and risks of their business at the time of formation and during their operations.

71. Defendants Bartels and Butler siphoned funds from EMB Trading and B&B Luxury Trading Group for their own personal benefits.

72. EMB Trading and B&B Luxury Trading Group both function as a façade for the operations of Defendants Bartels and Butler.

73. Neither EMB Trading nor B&B Luxury Trading Group has any meaningful independent existence and the purported entities were used primarily in an attempt to shield Defendants Bartels and Butler from personal liability, to conduct personal business under the guise of the separate entities, and to avoid contractual and financial obligations owed to creditors, including Plaintiff Malak.

74. Adherence to the form of EMB Trading or B&B Luxury Trading Group under these circumstances would sanction fraud and promote injustice.

75. Defendant Bartels exercised complete domination and control over EMB Trading, including control over its finances, operations, and decision-making.

76. Defendants Bartels and Butler exercised complete domination and control over EMB Trading, Superlative Watch Co., and B&B Luxury Trading Group.

77. The Defendant entities had no separate mind, will, or existence apart from their owners.

78. The Defendant entities were inadequately capitalized for the nature and risks of their business at formation and during operations.

79. At the time obligations to Plaintiff Malak were incurred, the Defendant entities lacked sufficient capital to meet reasonably foreseeable liabilities.

80. All Defendants failed to maintain company records, separate books, or documentation of major financial transactions.

81. The Defendant entities failed to observe even minimal organizational formalities required under Pennsylvania law

82. Defendants Bartels and Butler extensively commingled their personal funds and the business funds of the Defendant entities.

83. Substantial sums were transferred between Defendant entity accounts and Defendants Bartels' and Butler's personal accounts without documentation, legitimate business purpose, or accounting controls.

84. The Defendant entities' funds were used for personal expenses, including gambling activity and other non-business expenditures.

85. Defendants Bartels and Butler siphoned funds from the Defendant entities for personal use, including transfers exceeding hundreds of thousands of dollars.

86. The individual Defendants diverted funds away from creditors, including Plaintiff Malak, while the Defendant entities were insolvent or were rendered insolvent thereby.

87. The individual Defendants have used and continue to use the Defendant entities to generate funds without intent or ability to repay any sums to Plaintiff Malak.

88. Defendants formed EMB Trading shortly before bankruptcy and B&B Luxury Trading Group during liquidation in an effort to continue operations and avoid liabilities.

89. These entities constitute a mere continuation of the prior business and were used to shield assets from creditors.

90. Adherence to the company form under these circumstances would sanction fraud and promote injustice.

91. Plaintiff Malak would be left without an adequate remedy if the Defendant entities' form is respected.

92. The totality of the circumstances demonstrates that the Defendant entities are alter egos of Defendants Bartels and Butler.

**COUNT I**
**Breach of Contract Against Defendants Bartels, EMB Trading, LLC, and B&B Luxury Trading Group, LLC**

93. Plaintiff Malak incorporates each of the preceding paragraphs as if fully set forth herein.

94. Plaintiff Malak and Defendant Bartels, individually and acting through Luxury Time Global, entered into an enforceable agreement pursuant to which Plaintiff Malak loaned $1.1 Million in multiple tranches between April 2024 and September 2024.

95. The agreement required repayment of principal together with interest.

96. Plaintiff Malak performed all material obligations by funding the loan.

97. Defendants breached the agreement by failing to repay the outstanding balance, including at least $516,311.00 in principal.

98. Defendants Bartels, EMB Trading, LLC and B&B Luxury Trading Group, LLC are liable as successors, mere continuations, and/or alter egos formed to continue the same business while avoiding liabilities.

99. As a direct and proximate result of Defendants' acts and omissions, Plaintiff Malak has suffered damages in excess of $75,000.

**COUNT II**
**Fraudulent Misrepresentation and Fraudulent Inducement Against Defendants Bartels, EMB Trading, LLC, and B&B Luxury Trading Group, LLC**

100. Plaintiff Malak incorporates each of the preceding paragraphs as if fully set forth herein.

101. Defendant Bartels made material misrepresentations, including but not limited to statements regarding:

(a) the financial condition of Luxury Time Global;

(b) Luxury Time Global's ability and intent to repay Plaintiff Malak; and

(c) the intended use of funds for legitimate inventory purchases.

102. These misrepresentations were false when made by Defendant Bartels and were known to be false, or made with reckless disregard for their truth.

103. Defendant Bartels made the statements with the intent to induce Plaintiff Malak to transfer funds totaling $1.1 Million.

104. Plaintiff Malak justifiably relied on those statements by Defendant Bartels.

105. In truth, Defendants Bartels and his entities diverted substantial portions of the funds for personal use, including gambling losses and transfers to personal accounts.

106. Plaintiff Malak suffered substantial damages as a direct result.

## COUNT III
## Fraudulent Transfers (PUFTA) Against Defendants Bartels, Butler, EMB Trading, LLC, and B&B Luxury Trading Group, LLC

107. Plaintiff Malak incorporates each of the preceding paragraphs as if fully set forth herein.

108. Plaintiff Malak is a "creditor" and Defendants are "debtors" within the meaning of 12 Pa. C.S. § 5101 et seq.

109. Defendants made transfers of assets, including funds traceable to Plaintiff Malak's loan.

110. Pursuant to 12 Pa. C.S. § 5104(a)(1), the transfers were made with actual intent to hinder, delay, or defraud creditors, including Plaintiff Malak.

111. In the alternative, pursuant to 12 Pa. C.S. § 5104(a)(2) and § 5105, Defendants made transfers without receiving reasonably equivalent value while (a) engaged in or about to engage in transactions for which remaining assets were unreasonably small; or (b) intending or reasonably believing they would incur debts beyond their ability to pay.

112. Badges of fraud supporting their actual intent include, *inter alia*:

(a) transfers to insiders;

(b) retention of control over transferred assets;

(c) concealment and commingling of funds;

(d) pending or threatened litigation/insolvency; and

(e) transfer of substantially all assets.

113. Defendants' conduct, including diversion of funds and gambling activities and substantial losses, establishes their fraudulent intent.

114. Plaintiff Malak is entitled to relief under 12 Pa. C.S. § 5107, including avoidance of transfers, attachment, and other equitable remedies.

**COUNT IV**
**Conversion Against Defendants Bartels, Butler, EMB Trading, LLC, and B&B Luxury Trading Group, LLC**

115. Plaintiff Malak incorporates each of the preceding paragraphs as if fully set forth herein.

116. Plaintiff Malak had a property interest in the loan proceeds, including the right to their use for agreed purposes and repayment.

117. Defendants wrongfully exercised dominion and control over those funds by diverting them to unauthorized uses, including personal expenditures and gambling.

118. Such conduct was intentional, unauthorized, and inconsistent with Plaintiff Malak's rights.

119. The factual allegations plausibly establish conversion under Pennsylvania law.

120. Plaintiff Malak has suffered damages as a direct and proximate result.

**COUNT V**
**Unjust Enrichment Against All Defendants**

121. Plaintiff Malak incorporates each of the preceding paragraphs as if fully set for the herein.

122. Plaintiff Malak conferred a benefit upon Defendants in the form of payments totaling $1.1 million.

123. Defendants knowingly accepted and retained that benefit.

124. The circumstances make it inequitable for Defendants to retain the benefit without payment.

125. The pleaded facts plausibly establish unjust enrichment as an alternative claim.

**COUNT VI**
**Civil Conspiracy Against All Defendants**

126. Plaintiff Malak incorporates each of the preceding paragraphs as if fully set forth herein.

127. All Defendants agreed and combined to commit unlawful acts, including fraud and fraudulent transfers.

128. In furtherance of the conspiracy, the individual Defendants:

(a) formed successor entities;

(b) transferred and concealed assets; and

(c) continued operations to avoid liabilities.

129. All Defendants committed overt acts in furtherance of the conspiracy.

130. Plaintiff Malak suffered damages as a result.

131. The factual allegations plausibly establish a common purpose and concerted action.

**WHEREFORE**, Plaintiff Peter Malak respectfully requests that this Court enter judgment in his favor and against each of the Defendants, jointly and severally, for compensatory damages in an amount in excess of $75,000.00 to be determined at trial; avoidance of fraudulent transfers pursuant to 12 Pa. C.S. § 5107; imposition of a constructive trust over transferred assets; pre- judgment and post-judgment interest; punitive damages where permitted; costs, attorneys' fees as allowed by law; and such other and further relief as the Court deems just and proper.

s/ Geff Blake

Geff Blake, Esq.
PA Atty. ID No. 53246
**BLAKE & WALSH, LLC**
436 Jefferson Avenue
Scranton, PA 18510
(570) 342-0505
GBlake@BlakeWalshLaw.com
Counsel for Plaintiff

DATE: May 6, 2026

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| LUXURY TIME GLOBAL, LLC | : | CASE NO. 5:25-bk-00912-MJC |
| | : | |
| DEBTOR | : | |

**UNITED STATES TRUSTEE'S MOTION**
**FOR CONVERSION OR DISMISSAL**

Andrew R. Vara, United States Trustee for Regions 3 and 9 ("U.S. Trustee"), moves this Court pursuant to 11 U.S.C. § 1112(b)(1) to either convert the Debtor Luxury Time Global, LLC's ("Debtor") case to a liquidation case under chapter 7 or, in the alternative, to dismiss the chapter 11 reorganization proceedings.

In support of his motion, the U.S. Trustee states as follows:

**Background**

1. The U.S. Trustee has supervisory jurisdiction over this case pursuant to 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3).

2. On April 2, 2025, Luxury Time Global, LLC ("Debtor") filed a voluntary petition as a Subchapter V debtor-in-possession under Chapter 11 of the Bankruptcy Code [Document Number[1] 1]. According to the Debtor's petition, the Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). The Debtor elected to proceed under subchapter V of chapter 11.

3. In response to the Court's Notice of Incomplete and/or Deficient Filing dated April 3, 2025 [Doc No. 4], on April 14, 2025, Debtor filed an Application for Extension of Time for Filing of Schedules and Statements [Doc. No. 13], which the Court granted on April 22, 2025

[1] Hereinafter "Doc. No."

[Doc. No. 21], extending the filing deadline to May 6, 2025. On May 2, 2025, Debtor timely filed its Schedules and Statements [Doc. No. 25].

4. The U.S. Trustee appointed Jill E. Durkin as subchapter V chapter 11 trustee ("Trustee") on April 3, 2025 [Doc. No. 5].

5. On April 14, 2024, the U.S. Trustee reviewed and explained the obligations and reporting requirements of all debtors under 11 U.S.C. § 1106(a)(1), which incorporates 11 U.S.C. § 704(a)(8), with the Debtor and its proposed general bankruptcy counsel as part of the U.S. Trustee's Initial Debtor Interview ("IDI").

6. On May 6, 2025, the U.S. Trustee commenced Debtor's telephonic § 341(a) Meeting of Creditors as scheduled [Doc. No. 16] but due to exigent circumstances, was unable to complete the examination, leading to the adjournment of the § 341(a) Meeting to May 13, 2025 at 9:00 a.m. [Doc. No. 26] when it was completed (collectively "341a Meeting") following a detailed examination of the Debtor through its sole and Managing Member, Eric David Bartels ("Mr. Bartels").

7. While the Debtor has filed its first Monthly Operating Report [Doc. No. 40], its contents are both incomplete and fundamentally flawed. For example, while the Debtor states that in April 2025 it did not have any bank accounts open other than the DIP accounts (Question 10), the U.S. Trustee notes that the earliest transactions shown on the Axos Bank statement for account ending in 8417, apparently Debtor's sole Debtor-in-Possession account ("DIP account"), are dated April 29-30, 2025, a full 27-28 days after the April 2, 2025 case commencement date. This circumstance, combined with Mr. Bartels' § 341(a) testimony that Debtor has continued to do business after filing for bankruptcy, strongly suggests that Debtor utilized one or more of its

pre-petition bank accounts during the interim period[2], but has nevertheless failed to produce copies of those subject bank accounts. Moreover, Debtor has chosen to decline to give any response to Question 11 regarding whether it has sold any assets other than inventory, and given the non-sequitur response of "N/A" to depositing all of its receipts for the business into its DIP account. Finally, contrary to Mr. Bartels' § 341(a) testimony, Debtor perhaps falsely affirms that it has timely filed its 2024 tax return and paid its tax liability (Question 6).

8. The Debtor has not yet filed a proposed plan of reorganization. Given the case commencement date of April 2, 2025, 11 U.S.C. § 1189 requires the plan to be filed no later than July 1, 2025.

9. Mr. Bartels is the "Managing Agent" and 100% shareholder of the Debtor. *See* Debtor's Statement of Financial Affairs (Doc. No. 25, part 13, item 28). Mr. Bartels appears to act as the Debtor's sole principal, having signed the petition and schedules, as the "Managing Agent" of the Debtor.

10. As described in the Debtor's bankruptcy schedules and Mr. Bartels' § 341(a) testimony, given an overall lack of tangible assets, the primary source of Debtor's value is its own operations as a high-end luxury watch wholesaler with retail sales to the general public, reportedly generating gross sales revenue of several millions of dollars annually since its formation in or about October 2021. Mr. Bartels' testimony indicated that each watch sold by the Debtor costs "upwards of $30, $40, $50 thousand or more apiece."

11. Mr. Bartels is identified on Schedule H as the sole personal guarantor of the Debtor's non-priority unsecured obligations totaling $411,480.00 to eleven (11) separate

[2]Notably, the second entry on the Axos Bank DIP account is a $13,200 "Wire Transfer Credit" from the Debtor itself, presumably from a non-DIP account, on April 30, 2025.

"Merchant cash advance" ("MCA") lenders, all obtained between September 2024 and March 2025.

12. During his § 341(a) testimony, Mr. Bartels attributed the Debtor's need to file the instant bankruptcy case to the monthslong failure of "Restivo,"[3] a supplier/vendor in Italy to deliver numerous luxury watches reportedly ordered and paid for by the Debtor and the resulting dip in Debtor's cashflow. While the timeline associated with these events morphed during Mr. Bartels' § 341(a) testimony, he testified that these circumstances were what triggered the Debtor's decision to begin borrowing from the MCA lenders in August 2024. Mr. Bartels' § 341(a) testimony cited the "aggressive" collection methods of the MCA lenders, including daily or weekly ACH payments from the Debtor's checking account, as the cause of Debtor's complete liquidation of its existing inventory of luxury watches in or about October 2024.

<u>Usage of Debtor's Bank Accounts and Mr. Bartels' Pre-petition Compensation</u>

13. At Part 13, Item 30 on Debtor's Statement of Financial Affairs describes transfers out of Debtor's business checking and savings accounts to Mr. Bartels' personal checking and savings accounts during the one-year period of January 1, 2024 to December 31, 2024[4] totaling $3,348,865.05 as well as transfers into Debtor's business checking and savings accounts from Mr. Bartels' personal checking and savings accounts totaling $2,817,721.50 during that same one-year period. Notably, the net difference of $531,143.55 remaining in Mr. Bartels' personal accounts at the end of calendar year 2024 is described on Debtor's Statement of Financial Affairs

[3]Mr. Bartels also testified that Restivo is associated with a domestic wholesaler called "Star Watches, Ltd."

[4]Mr. Bartels testified at the 341a Meeting that the reference in item 30 to "December 31, 2025" is a typographical error, intended to demarcate the one-year period of January 1 through December 31, 2024.

as Mr. Bartels' "Employee compensation"— a characterization he affirmed during his 341a Meeting testimony.

14. Further, according to his testimony at the 341a Meeting, Mr. Bartels has sole and exclusive access to Debtor's bank accounts, pre-petition and post-petition, for all transactions. In connection with the IDI and 341a Meeting, the U.S. Trustee requested and obtained copies of Debtor's checking and savings accounts at Wells Fargo Bank for the months directly leading up to the filing of this case. In particular, while the Debtor, through proposed Counsel Gurdin, has not yet fully complied with copies of all of the bank statements requested by the U.S. Trustee covering numerous account-to-account transfers to and from Debtor's Wells Fargo accounts during this pre-petition period, the U.S. Trustee has analyzed activity in Debtor's said Wells Fargo accounts ("Bank Analysis") from August 2024 to and including March 2025, the 8-month period leading up to the April 2, 2025 case commencement.

15. As evidenced by the underlying bank statements, in each and every month from August 2024 to March 2025, Mr. Bartels engaged in numerous and repeated online gambling transactions, betting amounts varying from a thousand dollars to tens of thousands of dollars in wagers from Debtor's business checking account at Windcreek-PA online casino, BetRivers, Sugar House online casino, Bet365, Caesars Sports, Fanduel, and Jackpot City online casino.

16. As demonstrated by the U.S. Trustee's detailed Bank Analysis, summarized in the table below, when coupled with the deposits apparently stemming from his winning wagers during this 8-month time period, Mr. Bartels' gambling activities **funded by the Debtor** resulted in a net loss for each of those 8 months, with **a combined net loss of $(1,400,263.39)**:

///

///

**Mr. Bartels' Gambling Transactions:**

| | | |
|---|---|---|
| Acct x9319 August 2024 – | 4 Gambling deposits | $17,700 |
| | 65 Gambling withdrawals | $394,900 |
| | **Net withdrawal** | **($377,200)** |
| Acct x9319 September 2024 - | Zero (0) Gambling deposits | |
| | 52 Gambling withdrawals | **($469,400)** |
| Acct x4740 October 2024[5] – | Zero (0) Gambling deposits | |
| | 2 Gambling withdrawals | **($18,500)** |
| Acct x4740 November 2024 – | 43 Gambling deposits | $93,676 |
| | 20 Gambling withdrawals | $212,900 |
| | **Net withdrawal** | **($119,224)** |
| Acct x4740 December 2024 – | 36 Gambling deposits | $162,836.61 |
| | 24 Gambling withdrawals | $239,300 |
| | **Net withdrawal** | **($76,463.39)** |
| Acct x4740 January 2025 – | 4 Gambling deposits | $23,447 |
| | 5 Gambling withdrawals | $52,200 |
| | **Net withdrawal** | **($28,753)** |
| Acct x4757 February 2025 – | One (1) Gambling deposit | $5,010 |
| Acct x4740 February 2025 -- | 27 Gambling withdrawals | $223,200 |
| | **Net withdrawal** | **($218,190)** |
| Acct x4740 March 2025 – | 2 Gambling deposits | $4,692 |
| | 13 Gambling withdrawals | $97,225 |
| | **Net withdrawal** | **($92,533)** |

17. When asked to characterize his gambling losses borne by the Debtor's funds, Mr. Bartels stated that those monies should also be treated as his "compensation." Therefore, in sum,[6] during a period of declining gross revenue and an inability to deliver promised product to

[5] Debtor closed its Wells Fargo business checking account ending in 9319 as of September 30, 2024, reportedly due to "fraud" by one or more of the MCA lenders according to Mr. Bartels' § 341(a) testimony and conducted its business solely out of its business savings account until a replacement business checking account ending in 4740 was opened on October 30, 2024 by the Debtor. Thus, this entry covers only the 2 day period October 30-31, 2024.

[6] While not included in this total, the U.S. Trustee notes that dozens of entries on Debtor's

its customers, in the 8 months immediately preceding the filing of this bankruptcy case, Mr. Bartels nevertheless caused the Debtor to pay him **"compensation" of at least $1,931,406.94** ($531,143.55 + $ 1,400,263.39), largely by funding Mr. Bartels' personal gambling activities.

18. In addition, during that same 8-month time frame, Mr. Bartels repeatedly transferred substantial amounts between Debtor's bank accounts (ending in 9319, 4740 and 4757) and Mr. Bartels' various personal checking (ending in 9620 and 2425) and savings accounts (ending in 5435, 0091 and 4072), as well as to himself via Zelle or his CashApp. When asked to explain during the 341(a) Meeting, Mr. Bartels testified that he did this to "protect deposits" made by Debtor's customers from being subject to the ACH transfers of the MCA lenders out of Debtor's checking account and to earn interest upon said funds before they were used to purchase the customers' watch orders.

19. As demonstrated by the U.S. Trustee's detailed Bank Analysis, summarized in the table below, a substantial churn of funds transferred between the Debtor's business checking and savings accounts and Mr. Bartels' personal checking and savings accounts during this 8-month time period:

**<u>Transfers to/from Mr. Bartels' Personal Accounts</u>**

| | | |
|---|---|---|
| Acct x9319 August 2024 – | 13 deposits from Acct x9620 | $197,500 |
| | 16 withdrawals to Acct x9620 | ($234,000) |
| | 3 deposits from Acct x5435/0091 | $58,158.75 |
| | **Net cash-in** | **$21,658.75** |
| Acct x9319 September 2024 – | 18 deposits from Acct x9620 | $334,625 |
| | 11 withdrawals to Acct x9620 | ($122,500) |
| | One (1) withdrawal to Acct x5435 | ($1,500) |
| | **Net cash-in** | **$210,625** |

---

checking account statements reflect its payment of Mr. Bartels' personal expenses at gas stations, restaurants and food delivery, car washes, clothing purchases, Apple.com and a trip to a beauty salon during this same time frame.

| | | |
|---|---|---|
| Acct x4740 October 2024[7] – | Zero (0) deposits from Bartels' Acct | $0.00 |
| | Zero (0) withdrawals to Bartels' Acct | $0.00 |
| Acct x4740 November 2024 – | 19 deposits from Acct x2425 | $280,270 |
| | 16 withdrawals from Acct x2425 | ($162,197.48) |
| | **Net cash-in** | **$118,072.52** |
| Acct x4757 November 2024 -- | One (1) deposit from Acct x2425 | $70,000 |
| | 25 withdrawals to Acct x2425 | ($309,200) |
| | **Net cash-out** | **($239,200)** |
| Acct x4740 December 2024 – | 14 deposits from Acct x2425 | $123,049 |
| | 9 withdrawals to Acct x2425 | ($87,833) |
| | **Net cash-in** | **$35,216** |
| Acct x4757 December 2024 -- | 4 deposits from Acct x2425 | $45,000 |
| | 27 withdrawals to Acct x2425 | ($579,229.39) |
| | **Net cash-out** | **($534,229.39)** |
| Acct x4740 January 2025 – | 70 deposits from Acct x2425 | $241,556.41 |
| | 35 withdrawals to Acct x2425 | ($270,737.53) |
| | 5 deposits from Acct x4072 | $83,644 |
| | Zero withdrawals to Acct x4072 | ($0.00) |
| | **Net cash-in** | **$54,462.88** |
| Acct x4757 January 2025 – | 17 deposits from Acct x2425/Zelle | $35,907 |
| | 7 withdrawals to Acct x2425 | ($50,706) |
| | 2 deposits from Acct x4072 | $8,932.01 |
| | 1 withdrawal to Acct x4072 | ($17,500) |
| | **Net cash-out** | **($23,366.99)** |
| Acct x4740 February 2025 -- | 44 deposits from Acct x2425 | $435,696 |
| | 18 withdrawals to Acct x2425 | ($125,254) |
| | 11 deposits from Acct x4072 | $206,612.75 |
| | Zero withdrawals to Acct x4072 | ($0.00) |
| | **Net cash-in** | **$517,054.75** |
| Acct x4757 February 2025 – | 11 deposits from Acct x2425 | $77,222 |
| | 18 withdrawals to Acct x2425 | ($227,077) |

[7] Debtor closed its Wells Fargo business checking account ending in 9319 as of September 30, 2024, reportedly due to "fraud" by one or more of the MCA lenders according to Mr. Bartels' 341(a) testimony and conducted its business solely out of its business savings account until a replacement business checking account ending in 4740 was opened on October 30, 2024 by the Debtor. Thus, this entry covers only the 2-day period October 30-31, 2024.

| | | |
|---|---|---|
| | 2 deposits from Acct x4072 | $7,000 |
| | Zero withdrawals to Acct x4072 | ($0.00) |
| | **Net cash-out** | **($142,855)** |
| Acct x4740 March 2025 – | 18 deposits from Acct x2425 | $69,981.50 |
| | 14 withdrawals to Acct x2425 | ($261,601) |
| | 12 deposits from Acct x4072 | $125,001 |
| | 4 withdrawals to Acct x4072 | ($85,269) |
| | **Net cash-out** | **($151,887.50)** |
| Acct x4757 March 2025 – | 17 deposits from Acct x2425 | $250,843.50 |
| | 16 withdrawals to Acct x2425 | ($198,087) |
| | 4 deposits from Acct x4072 | $91,500 |
| | 9 withdrawals to Acct x4072 | ($107,346) |
| | **Net cash-in** | **$36,910.50** |

The end result of all of this back-and-forth activity is a total of $994,000.40 being transferred to the Debtor from Mr. Bartels' personal accounts, while at least $1,091,538.88 was withdrawn from the Debtor to Mr. Bartels, resulting in the net balance of **$97,538.48** remaining in Mr. Bartels' personal accounts as of March 31, 2025, 2 days before case commencement.

22. In this context, while the U.S. Trustee has not yet been provided with all of the bank statements requested for review and analysis, it is also notable that during the 5-month period between August 2024 and January 2025, the Debtor made numerous transfers to and from at least one additional business banking account at Bank of America. This apparent account, which is reflected Debtor's pre-petition business checking and savings account statements as "Bank of America, N./ Bnf=Luxury Time Global LLC," received a total of at least $544,050 from Debtor's checking and savings accounts from August 20, 2024 to January 15, 2025, when 5 final deposits were sent by said Bank of America account to the Debtor between January 17-28, 2025 totaling $79,500. The apparent existence of this account, which is not identified as either an open or closed account in the Debtor's schedules, indicates that the Debtor was or is conducting business via additional undisclosed avenues.

Debtor's Business Model

20. During his 341a Meeting testimony, Mr. Bartels described that the Debtor conducts its business by acting as a trusted intermediary between authorized dealers of luxury watch brands like Rolex and buyers worldwide. He testified that while the Debtor does this through a number of different "platforms," between 70% to 80% of all of the Debtor's sales are conducted through the platform, "Chrono24." In order to access the marketplace and marketing conducted on and through Chrono24, Debtor pays a $2,400.00 monthly subscription fee plus sales commissions of 3% to 6% on each item. In a typical transaction, the monies advanced by a particular buyer are deposited into something resembling an escrow account held by Chrono24 until the item is obtained and shipped to the customer, at which point, Chrono24 deducts its commission then releases the funds to the seller/authorized dealer/supplier.

21. However, Mr. Bartels testified that the Debtor also engages in direct sales, such as the situation when the Debtor transferred its customers' funds to Restivo/Star Watches Ltd. to pay for an order of luxury watches but instead of fulfilling the order, Restivo/Star Watches Ltd. applied those monies to pay all or part of a past-due balance apparently owed by the Debtor. Mr. Bartels claimed that this was an unexpected and unforeseen aberration from past transactions with Restivo/Star Watches Ltd.

22. As admitted during Mr. Bartels' § 341(a) testimony, between at least March 26, 2025 and Friday, May 9, 2025—which is one week before case commencement through five weeks post-petition— Chrono24 had the Debtor's account "on pause" which prevented the Debtor from doing business on or through that platform, causing severe additional disruption to Debtor's cashflow. Reportedly, only after long negotiations between the Debtor, Chrono24 and

their respective counsel was Debtor's access "reactivated" one business day before the May 13, 2025 341a Meeting.

23. Mr. Bartels also testified that between April and September 2024, he caused the Debtor to borrow in installments a total of $1,100,000.00 from "Peter Malak" to fund, in part or in full, the purchase of speculative watch inventory to "take advantage of deep discounts on multiple units" on the hope that these "extra" watches (i.e. watches for which no customer had placed an existing order) would appreciate in value such that the Debtor could directly sell them from its in-house stock when a future customer did place such an order. Mr. Bartels testified that he would engage in this practice "when I see an opportunity." Mr. Bartels conceded that this strategy proved unsuccessful when the MCA lenders levied upon Debtor's bank accounts, seizing its available cash, which forced the Debtor to liquidate its entire inventory in stock at a loss in order to generate additional cash for operations.

24. This shortage of cash also reportedly caused Debtor's sole employee, Director of Sales Claire Butler, to transfer $45,000.00 during the last week of November 2024 (an amount representing over half of her annual salary of $85,000.00) to the Debtor. Mr. Bartels testified that he was unsure if this was a gift or a loan to the Debtor; Claire Butler is not an insider, holds no equity interest in the Debtor and is not listed as one of Debtor's creditors.

<u>Debtor's Sparse and Incomplete Business Records</u>

25. Despite the multi-stage, multiple party, high-dollar nature of all of Debtor's transactions, as admitted by <u>Debtor-in-Possession's Affidavit as to Filing of Certain Tax Returns and Financial Statements</u> ("Debtor's Affidavit") [Doc. No. 7, filed on April 3, 2025], as of the April 2, 2025 case commencement date, "No Balance Sheet or Statement of Operations has been prepared … [and] No Statement of Income and Expenses for the 12 months Ending December 31

…". Instead, Debtor promised that these required financial statements would be prepared by an unidentified accountant "shortly after the application to employ the accountant is approved."

26. Therefore, as the U.S. Trustee has discussed with Debtor and its counsel since the April 14, 2025 IDI, an accountant's assistance is admittedly necessary to provide an accurate financial foundation for Debtor's ongoing financial reporting, as well as for the formulation of any plan. Nevertheless, it has taken until May 17, 2025—more than 6 weeks after case commencement— for the Debtor to file its long-promised application to retain CPA/Financial Professional Brian T. Kelly with the Court [Doc. No. 35]. The incomplete nature and deficiencies exhibited in Debtor's first MOR filed on May 21, 2025 serve only to underscore Debtor's apparent need for such professional financial assistance.

27. Indeed, even setting aside the drawn-out efforts to retain a financial professional, when the U.S. Trustee questioned Mr. Bartels about the 6-month Profit and Loss Statement attached to Debtor's Affidavit, covering September 2024 to February 2025, during the 341a Meeting, he testified that despite displaying "Net Profit" totaling $97,040.00 for the months of November 2024 through February 2025, that calculation inexplicably did not include Debtor's daily/weekly payments via ACH withdrawal to the MCA lenders. This was Mr. Bartels' explanation for the sizable difference between Debtor's 6-month Profit and Loss Statement and Debtor's reported balance of one dollar ($1.00) as the combined total of its business checking and savings accounts as of case commencement on April 2, 2025.

28. Moreover, despite Debtor's reported reliance upon its outside accountant for the preparation and proper content of its financial records and statements, Mr. Bartels testified that the Debtor's financial books and records exist primarily as digital documents, retained only on Mr. Bartels' laptop and backed up to his cloud account, and reportedly not retained in any form

by any outside accountant or financial professional. Indeed, the Debtor has no in-house financial staff or bookkeeper, relying instead upon Mr. Bartels alone.[8]

**<u>"Cause" for Conversion or Dismissal</u>**

<u>Failure to File Other Necessary Documents</u>.

29. Upon electing to be a debtor under Subchapter V, the Debtor was required to file with the Court, among other things, the Debtor's most recent balance sheet, statement of operations, and cash-flow statement (or an affidavit that one or more of these documents have not been prepared). 11 U.S.C. § 1187, incorporating § 1116(1). While the Debtor's Affidavit of April 3, 2025 admits that none of these documents has been prepared, Debtor promised that they would all be prepared once its accountant was retained. Despite this, however, no such employment application for Debtor's proposed accountant was filed until May 17, 2025, 6 weeks after case commencement.

<u>Deficient Monthly Operating Reports</u>.

30. 11 U.S.C. §§ 308(b), 704(a)(8), 1106(a)(1), 1116(4), 1184, and 1187 collectively require the Debtor to file with the Court and furnish to the U.S. Trustee certain financial reports. Despite this, as described herein, not only is the Debtor delinquent in providing requested additional bank statements regarding the flow of Debtor's funds back and forth from the various personal bank accounts of its sole principal, Mr. Bartels (see below), the contents of its very first MOR are woefully deficient.

31. The U.S. Trustee cannot perform his statutory monitoring function without the aid of current and accurate financial information. This lack of financial accountability evidences a

[8] Mr. Bartels testified that Claire Butler, Debtor's sole employee and Director of Sales, has no access to any of Debtor's bank accounts, accounting software or financial records.

serious disregard for the fiduciary responsibilities assigned to the Debtor. The Debtor's failure to file complete and accurate financial reports constitutes "cause" for conversion of this case under 11 U.S.C. § 1112(b)(4)(E), (F), and (H); *see also In re Four Wells Ltd.*, 2016 WL 1445393, at *10 (B.A.P. 6th Cir. Apr. 12, 2016) (citations omitted). ]

Delinquent or Incomplete IDI Requested Documents.

32. The Debtor has failed to provide a copy of the following documents requested by the U.S. Trustee from the Debtor at the IDI and the 341(a) Meeting:

a. Mr. Bartels' Wells Fargo Premier Checking account, ending in x9620, for the period January 1, 2024 to the present;

b. Mr. Bartels' Wells Fargo Business Platinum Savings account, ending in x8605, for the period January 1, 2024 to the present;

c. Mr. Bartels' Wells Fargo Platinum Savings account, ending in x5435, for the period January 1, 2024 to the present;

d. Mr. Bartels' Wells Fargo Premier Checking account, ending in x 2425, for the period January 1, 2024 to the present;

e. Mr. Bartels' Wells Fargo Way2Save Savings account, ending in x0091, for the period January 1, 2024 to the present;

f. Mr. Bartels' Cash App for the period January 1, 2024 to the present; and

g. A copy of the underlying vehicle sales contract or vehicle lease for a BMW X6 midsize coupe SUV associated with Debtor's recurring monthly payment to "BMW USA" including its reported surrender by Mr. Bartels in or about April or May 2025; and

h. Debtor's income tax returns for 2024, when available.

As a result, the U.S. Trustee is unable to determine whether the Debtor has complied with its statutory reporting requirements. The Debtor's continuing failure to timely provide the requested documents constitutes "cause" for conversion of this case under 11 U.S.C. § 1112(b)(4)(E) and (H).

Unreasonable Delay Prejudicial to Creditors.

33. The Debtor's financial reporting obligations and deficiencies were brought to the Debtor and its counsel's attention early in this case at the IDI on April 14, 2025, and the § 341(a) examinations on May 6, 2025 and May 13, 2025. In addition, the U.S. Trustee has notified and reminded the Debtor, through its proposed counsel, on an informal basis on numerous occasions of its reporting obligations.

34. Moreover, despite having voluntarily filed its bankruptcy case on April 2, 2025, the Debtor waited until May 17, 2025 to seek court approval to employ an accountant [Doc. No. 35], whose assistance is apparently needed to ensure the accuracy of any monthly operating reports and to prepare outstanding income tax returns. The Debtor's unreasonable delay in obtaining adequate accounting assistance for this estate is prejudicial to creditors and likewise warrants conversion or dismissal.

35. Subchapter V chapter 11 cases are designed to move quickly and for that reason, Debtor is expected to file a plan within ninety days of the petition, absent extraordinary circumstances beyond the debtor's control. *See* 11 U.S.C. § 1189. Here, more than 6 weeks into the case, Debtor has only just filed its employment application to retain the required financial reporting services of a CPA.

36. Moreover, as revealed at the 341(a) Meeting concluded on May 13, 2025, Debtor's May 2, 2025 bankruptcy schedules and statements remain incorrect and incomplete,

lacking a number of creditors as well as at least one material asset—an undisclosed account receivable asset comprised of paid-for but undelivered luxury watches from Restivo, valued by Mr. Bartels at $719,000.00. Further, while Mr. Bartels has admittedly personally guaranteed the obligations owed by the Debtor to all of its MCA lenders, the amounts paid to those MCA lenders is only listed for the 90-day pre-petition period in Part 2, item 3 of the Statement of Financial Affairs, rather than for the 1-year pre-petition period in item 4 of same.

37. Under these circumstances, it is highly unlikely the Debtor will be able to propose a plan timely, let alone one that stands a chance of confirmation. *See* 11 U.S.C. § 1112(b)(4)(J), (M) (failure to file or confirm a plan within time fixed by court); (inability to effectuate substantial consummation of a confirmed plan).

Indicia of Bad Faith Filing and Gross Mismanagement.

38. While no single test has been established for determining whether a petition has been filed in bad faith, the Sixth Circuit has set forth eight factors to aid courts in conducting a "careful, flexible analysis":

a. The debtor has one asset.

b. The pre-petition conduct of the debtor has been improper.

c. There are only a few unsecured creditors.

d. The debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court.

e. The debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford.

f. The filing of the petition effectively allows the debtor to evade court orders.

g. The debtor has no ongoing business or employees.

h. The lack of possibility of reorganization.

*In re Village Gate, LLC*, 2024 WL 4236407, at *7 (Bankr. S.D. Ohio Sept. 17, 2024) (citing *Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d 127, 131 (6th Cir. 1995)).

39. While not all of the *Trident* factors in are present here, the Debtor's bankruptcy filing bears several hallmarks of a bad faith filing. While Debtor has listed a single dollar in its bank accounts and its empty display cases as its only physical assets, with or without the inclusion of its still-unscheduled account receivable asset from Restivo, Debtor has essentially only one asset—its ongoing sale of luxury watches to a select customer base. Debtor's ability to continue to monetize this asset relies upon its tenuous ability to maintain customer confidence to deliver the luxury watches on-demand, for the promised price and in the promised condition, all of which rely upon factors, entities and individuals outside of Debtor's direct control.

40. Additionally, by using the Debtor to fund his prolific pre-petition gambling activities, Mr. Bartels, the Debtor's sole and managing member, has wrought significant damage upon the Debtor's cashflow and necessitated its heavily leveraged, high interest borrowing from the MCA lenders. In addition, Mr. Bartels also caused the net sum of hundreds of thousands of dollars to be transferred from the Debtor's business accounts to his personal checking and savings accounts for the entire calendar year 2024, which Mr. Bartels' § 341(a) testimony admitted was at least in part done to divert funds from Debtor's MCA lender-creditors. While Mr. Bartels has sought to justify his use of nearly two million dollars of Debtor's business funds as his "compensation," these matters are more properly reviewed by an independent fiduciary, as a chapter 7 trustee would be, to determine whether the estate has any recourse with respect to any

of the prepetition actions taken by Mr. Bartels, and by extension, the Debtor over which Mr. Bartels still exercises sole authority and control.

41. The Debtor, through Mr. Bartels, has blamed much of its need to file for bankruptcy on the alleged fraud committed against it by the MCA lenders. Nevertheless, the only claims filed by the Debtor against any of the MCA lenders have been adversary proceedings to avoid alleged preferential payments during the 90-day (not one-year) pre-petition period, with no overt allegation of any fraud for breach of the underlying borrowing instruments. If the Debtor is unable or unwilling to pursue actions against the MCA lenders for the benefit of its creditors, that may also indicate that the Debtor is engaged in gross mismanagement of the estate. 11 U.S.C. § 1112(b)(4)(B). The Court should convert this case so that an independent fiduciary can determine whether such claims are viable and may be available to provide a distribution to unsecured creditors.

42. In sum, the circumstances surrounding the commencement of its chapter 11 case and the manner in which it, and Mr. Bartels, its Managing Member, have proceeded thus far are indicative of a Debtor who wishes to continue to avoid payment of its creditors, litigate causes of action which have not borne fruit to date, and insulate Mr. Bartels' self-interested high-stakes gambling activities using the Debtor's funds from its creditors, rather than a legitimate attempt to reorganize under chapter 11. The Court should therefore find that there is "cause" to convert or dismiss the Debtor's case under 11 U.S.C. § 1112(b)(1).

**Relief Requested**

37. Under 11 U.S.C. § 1112(b)(1), the Court must determine whether "cause" exists to convert or dismiss the Debtor's case. § 1112(b) enumerates sixteen non-exhaustive examples of "cause." *See In re Creekside Sr. Apts., L.P.*, 489 B.R. at 60 (§ 1112(b) examples non-

exhaustive). Whether "cause" exists is a question left to the sound discretion of the bankruptcy court. *In re Four Wells Ltd.*, 2016 WL 1445393, at *9.

38. As explained in the paragraphs above, the U.S. Trustee contends that "cause" exists to convert or dismiss the Debtor's case under 11 U.S.C. §§ 1112(b)(4)(A), (B), (E), (F), (H), (J), and (M). Despite this case being pending for nearly 8 weeks, the Debtor has failed to fulfill its duties as a debtor under Chapter 11 by complying with its financial reporting requirements, providing documents reasonably requested by the U.S. Trustee, providing a feasible framework for repayment of its creditors, and filing its petition in good faith. Thus, there is ample "cause" to convert or dismiss this case.

39. Once the Court determines that "cause" exists, it must convert to chapter 7 or dismiss the Debtor's case, whichever is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). The U.S. Trustee is unaware of any unusual circumstances which would prevent the Court from converting this case to chapter 7 under 11 U.S.C. § 1112(b)(2). As described above, there are numerous potential transfers and other actions which may be administrable by an independent chapter 7 trustee. Therefore, the U.S. Trustee would recommend conversion as the appropriate remedy.

WHEREFORE, the U.S. Trustee respectfully requests that the Court:

A. Convert these reorganization proceedings to a liquidation case under chapter 7 or, in the alternative, dismiss the Debtor's case pursuant to 11 U.S.C. § 1112(b)(1); and further,

B. Grant such other relief that may be proper under the circumstances.

ANDREW R. VARA
United States Trustee
Regions 3 and 9

Dated: May 27, 2025

Joseph P. Schalk
Acting Assistant United States Trustee

By:/s/ Kenneth G. Lau
Kenneth G. Lau, Trial Attorney
United States Department of Justice
Office of the United States Trustee
Middle District of Pennsylvania
1501 N. 6th Street, Box 302
Harrisburg, PA 17102
Phone: (616) 456-2485
Email: Kenneth.G.Lau@usdoj.gov

# EXHIBIT "B"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| LUXURY TIME GLOBAL, LLC | : | CASE NO. 5:25-bk-00912-MJC |
| | : | |
| DEBTOR | : | |

**DECLARATION OF BANKRUPTCY AUDITOR NICOLE WATSON**
**IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION**
**FOR CONVERSION OR DISMISSAL**

I, NICOLE WATSON, hereby declare as follows:

1. I am over the age of eighteen years, and if called upon to testify I could and would do so competently. I am employed as a Bankruptcy Auditor by the Office of the United States Trustee for the Middle District of Pennsylvania. I am the Bankruptcy Auditor assigned to review in In re: Luxury Time Global, LLC, ("Debtor"), Case No. 5:25-bk-00912 MJC. I have personal knowledge of the facts set forth herein, and based on that personal knowledge, I assert that all facts are true and correct to the best of my knowledge.

2. On April 2, 2025, Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code.[1] In the course of my duties as the Bankruptcy Auditor assigned to this matter, on behalf of the U.S. Trustee, I have conducted a thorough review and analysis of the Debtor's bankruptcy petition, schedules and statements, as summarized hereinbelow:

3. According to the Debtor's petition, the Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). The Debtor elected to proceed under subchapter V of chapter 11.

4. In response to the Court's Notice of Incomplete and/or Deficient Filing dated April 3, 2025 [Doc No. 4], on April 14, 2025, Debtor filed an Application for Extension of Time for Filing of Schedules and Statements [Doc. No. 13], which the Court granted on April 22, 2025 [Doc.

---

[1] *See Case Docket for In re: Luxury Time Global, LLC, 5:25-bk-00912 MJC* ("Case Docket"), attached hereto as Exhibit 1 and incorporated by this reference as if set forth in full.

No. 21], extending the filing deadline to May 6, 2025. On May 2, 2025, Debtor timely filed its Schedules and Statements [Doc. No. 25].

5. Debtor's Schedule A/B identifies $2,501.00 of assets, comprised of vacant jewelry display cases valued at $2,500, and a $1.00 combined balance in its Wells Fargo business checking and savings accounts. Debtor also lists no secured debt in its Schedule D.

6. By contrast, Debtor's Schedule E/F identifies a total of $2,280,519.61, all of which is characterized as non-priority unsecured debt.

7. On May 6, 2025, Debtor's initial § 341(a) meeting of creditors ("341(a) Meeting") was commenced but not completed due to exigent circumstances involving the sudden unavailability of Debtor's proposed bankruptcy counsel ("Counsel Gurdin"). This necessitated the continuance of the 341(a) Meeting to May 13, 2025 when it was conducted and formally concluded.[2]

8. On both May 6, 2025 and May 13, 2025, Kenneth G. Lau, Trial Attorney for the U.S. Trustee and I attended the 341(a) Meeting and examined the Debtor, through its sole Managing Member Eric David Bartels ("Mr. Bartels"), at length. In conjunction with the Initial Debtor Interview on April 14, 2025 as well as the 341(a) Meeting, I requested that Debtor through counsel provide all of the following documents for my review and analysis:

- Copies of the latest 941 payroll tax returns filed;
- A complete copy of each debtor's latest filed Federal tax or information return (Form 1120 – U.S. Corporation Income Tax Return and related schedules, or Form 1065 – U.S. Return of Partnership Income and related schedules);
- Most recently prepared (i) unaudited financial statements (monthly) and (ii) audited financial statements, with disclosures;
- A written indication of whether the debtor utilizes a calendar or fiscal period reporting schedule;

[2] *See Case Docket*. Transcripts of the May 6, 2025 and May 13, 2025 sessions of Debtor's 341(a) Meeting can be made available for review if necessary.

- A list of each software system used to maintain financial records;
- A chart of accounts from each software system used to maintain financial records;
- Corporate organization chart of all debtor and any non-debtor entities;
- If applicable, all intercompany transactions between debtor and non-debtor affiliates (if any), for 30 days prior to the petition date;
- A copy of Debtor's (i) trial balance, as of the month end prior to filing, and (ii) unadjusted general ledger for thirty days prior to filing;
- Copies of most recent bank statements with un-redacted account numbers for all accounts open as of the filing date and a listing of those bank accounts (in Excel or Word) also including full account numbers;
- Copies of certificates of insurance which must name the U.S. Trustee as a party to be notified (i.e., a "notice party", not a named insured) in the event of a policy cancellation or other change (certificates must be provided no later than 15 days after the filing date.);
- Debtor's Cash Flow Forecast or Budget (e.g., 13-week); and
- Evidence of debtor-in-possession bank accounts (e.g., letter from bank indicating the designation);
- Mr. Bartels' Wells Fargo Premier Checking account, ending in x9620, for the period January 1, 2024 to the present;
- Debtor's Wells Fargo Business Platinum Savings account, ending in x8605, for the period January 1, 2024 to the present;
- Mr. Bartels' Wells Fargo Platinum Savings account, ending in x5435, for the period January 1, 2024 to the present;
- Mr. Bartels' Wells Fargo Premier Checking account, ending in x 2425, for the period January 1, 2024 to the present;
- Mr. Bartels' Wells Fargo Way2Save Savings account, ending in x0091, for the period January 1, 2024 to the present;
- Mr. Bartels' Cash App for the period January 1, 2024 to the present;

- A copy of the underlying vehicle sales contract or vehicle lease for a BMW X6 midsize coupe SUV associated with Debtor's recurring monthly payment to "BMW USA" including its reported surrender by Mr. Bartels in or about April or May 2025; and
- Debtor's income tax returns for 2024, when available.

As previously described in the U.S. Trustee's underlying Motion to Convert or Dismiss this case under 11 U.S.C. § 1112(b), to date, Debtor has been able to produce, through Counsel Gurdin, some but not all of the requested business and banking records requested by the U.S. Trustee.

9. Based upon Debtor's partial document production to date, during the interim period, in conjunction with the U.S. Trustee's detailed examinations of the Debtor, I have compiled and analyzed Debtor's bank statements and related documents for the pre-petition period of January 2024 to March 2025 for the following bank accounts:

(1) Debtor's Wells Fargo checking and savings accounts (ending 9319, 4740, 4757 and 8605); and

(2) Mr. Bartels' personal Wells Fargo Platinum and Way2Save savings accounts (ending 5435 and 0091).

10. My analysis of Debtor's subject bank statements reveals that in each and every month from January 2024 to March 2025, Mr. Bartels engaged in numerous and repeated online gambling transactions, betting amounts varying from several hundred dollars to tens of thousands of dollars in wagers from Debtor's business checking account at Windcreek-PA online casino, BetRivers, Sugar House online casino, Fanatics Sportsbook, Bet365, Pointsbet PA, Caesars Sportsbook, Fanduel, Mohegan Sun casino, Parx Casino- Bensalem, and Jackpot City online casino. A true and correct copy of my detailed compilation and analysis in support of the above summary demonstrating Mr. Bartels' persistent and repeated use of the Debtor's bank accounts to fund his gambling transactions ("Gambling Transactions Summary") is attached hereto as Exhibit 2 and is incorporated herein by this reference as if set forth in full.

11. As demonstrated by the Exhibit 2 Gambling Transactions Summary, when coupled with the deposits apparently stemming from his winning wagers during this 15-month time period, Mr. Bartels' personal gambling activities **funded by the Debtor,** including numerous in-person

ATM withdrawals at Mohegan Pennsylvania Casino and Resort, Wind Creek Bethlehem Casino and Resort and Mount Airy Casino and Resort, resulted **in a net loss for each of those 15 months**, with a combined net loss of no less than **$(4,667,586.85)**.

12. Moreover, during this same 15-month time frame, Mr. Bartels repeatedly transferred substantial amounts between Debtor's business bank accounts (ending in 9319, 8605, 4740 and 4757) and Mr. Bartels' various personal checking (ending in 9620 and 2425) and savings accounts (ending in 5435, 0091 and 4072), as well as to himself via Zelle or his CashApp. When asked to explain during the 341(a) Meeting, Mr. Bartels testified that he did this to "protect deposits" made by Debtor's customers from being subject to the ACH transfers of the Merchant cash advance lenders[3] out of Debtor's checking account, and to earn interest upon said funds before they were used to purchase the customers' watch orders.

13. I have compiled and analyzed Debtor's bank statements and related documents for the pre-petition period of January 2024 to March 2025 to produce the U.S. Trustee's "Transfers to/from Bartels' Personal Accounts," attached hereto as Exhibit 3 and incorporated by this reference as if set forth in full. As summarized in the attached Exhibit 3 table, a substantial churn of funds transferred between the Debtor's business checking and savings accounts and Mr. Bartels' personal checking and savings accounts during this 15-month time period, ultimately resulting in a total of $11,082,584.72 being transferred to the Debtor from Mr. Bartels' personal accounts, while at least[4] $9,981,168.51 was withdrawn from the Debtor to Mr. Bartels' personal accounts between January 1, 2024 to March 31, 2025, 2 days before case commencement.

---

[3]Debtor's Schedules list non-priority unsecured obligations totaling $411,480.00 owed to eleven (11) separate "Merchant cash advance" ("MCA") lenders, all obtained between September 2024 and March 2025.

[4]Several accounts were not produced, such as Mr. Bartels' Wells Fargo personal checking accounts ending in 9620 and 2425 or Mr. Bartels' Wells Fargo personal savings account ending in 4072, or an apparent Bank of America account, all of which are referenced in transfers in Debtor's business checking and savings accounts. In addition, Mr. Bartels' personal saving account ending in 0091, had documents produced only through October 2024 when that account was closed.

14. Moreover, as demonstrated in the Exhibit 3 "Transfers to/from Bartels' Personal Accounts," as Debtor's cashflows apparently worsened,[5] for the 9-month period beginning in July 2024 and ending in March 2025, the net balance total of **$649,896.19** was siphoned from the Debtor's business checking and savings accounts into Mr. Bartels' various personal checking and savings accounts.

I declare under penalty of perjury that the foregoing facts are true and correct.

Executed on July 8, 2025, in Harrisburg, Pennsylvania.

NICOLE WATSON

[5]During the 341(a) Meeting, Mr. Bartels, on behalf of the Debtor, testified that one of the primary reasons behind Debtor's decision to borrow several hundred thousand dollars from the MCA lenders was to obtain sufficient cash to pay for the Debtor's continuing operations during a period of decreased cashflow and liquidation of the Debtor's existing inventory.

**PlnDue, CREDS, SubV, SmBus, MotDism, 2002**

# U.S. Bankruptcy Court
# Middle District of Pennsylvania (Wilkes-Barre)
# Bankruptcy Petition #: 5:25-bk-00912-MJC

*Date filed:* 04/02/2025
*341 meeting:* 05/13/2025
*Deadline for filing claims:* 07/21/2025
*Deadline for filing claims (govt.):* 09/29/2025

*Assigned to:* Honorable Mark J Conway
Chapter 11
Voluntary
Asset

***Debtor 1***
**Luxury Time Global, LLC**
6 Dickinson Close
Moosic, PA 18507
LACKAWANNA-PA
Tax ID / EIN: 87-3175429
***dba* Luxury Time Global**

represented by **C. Stephen Gurdin, Jr**
67-69 Public Square, Suite 501
Wilkes-Barre, PA 18701-2512
570 826-0481
Fax : 570 822-7780
Email: Stephen@gurdinlaw.com

***Trustee***
**Jill E. Durkin**
Durkin Law, LLC
(Trustee)
401 Marshbrook Road
Factoryville, PA 18419
570-881-4158

***Asst. U.S. Trustee***
**United States Trustee**
US Courthouse
1501 N. 6th St
Harrisburg, PA 17102
717 221-4515

represented by **Kenneth G Lau**
DOJ-Ust
125 Ottawa Avenue NW
Suite 200r
Grand Rapids, MI 49503
616-456-2485
Fax : 616-456-2550
Email: kenneth.g.lau@usdoj.gov

| Filing Date | # | Docket Text |
|---|---|---|
| 04/02/2025 | 1 (9 pgs; 2 docs) | Chapter 11 Voluntary Petition for a Non-Individual Small Business, SubChapter V . Filing fee due in the amount of $1738.00. Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC. (Gurdin, C.) (Entered: 04/02/2025) |
| 04/02/2025 | 2 | Creditor List Uploaded. (There is no image or paper document associated with this entry.) Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)1). (Gurdin, C.) (Entered: 04/02/2025) |
| 04/02/2025 | | Receipt of Voluntary Petition (Chapter 11)( 5:25-bk-00912) [misc,volp11a] (1738.00) filing fee. Receipt number A11421386, amount $ 1738.00. (RE: |

| | | |
|---|---|---|
| | | related document(s)1). (U.S. Treasury) (Entered: 04/02/2025) |
| 04/03/2025 | 3<br>(1 pg) | Entry of Appearance of Kenneth G. Lau Filed by Kenneth G Lau of DOJ-Ust on behalf of United States Trustee. (Lau, Kenneth) (Entered: 04/03/2025) |
| 04/03/2025 | 4<br>(2 pgs; 2 docs) | Notice of Incomplete and/or Deficient Filing. Request submitted to BNC for mailing. (RE: related document(s)1). (McHugh, Michael) (Entered: 04/03/2025) |
| 04/03/2025 | 5<br>(2 pgs; 2 docs) | The US Trustee appoints Jill E. Durkin to serve as trustee in this Chapter 11 Small business Subchapter V case. Notice of Electronic filing herein represents the official trustee appointment by the US Trustee. Filed by U.S. Trustee. (Attachments: # 1 Exhibit Verified Statement of Subchapter V Trustee Durkin)(Sellars, D) (Entered: 04/03/2025) |
| 04/03/2025 | 6<br>(8 pgs; 4 docs) | Application to Employ C. STEPHEN GURDIN JR as Attorney. Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)1). (Attachments: # 1 Affidavit of Disinterestedness # 2 Proposed Order # 3 Certificate of Service) (Gurdin, C.) (Entered: 04/03/2025) |
| 04/03/2025 | 7<br>(48 pgs; 4 docs) | Affidavit *as to cash flow and financials* Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)1). (Attachments: # 1 Exhibit 2023 tax return # 2 Exhibit profit and loss # 3 Certificate of Service) (Gurdin, C.) (Entered: 04/03/2025) |
| 04/04/2025 | 8<br>(4 pgs; 4 docs) | Subchapter V Scheduling Order and Notice . (RE: related document(s)1). Status hearing to be held on 6/5/2025 at 10:00 AM - Max Rosenn US Courthouse, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (McHugh, Michael) (Entered: 04/04/2025) |
| 04/05/2025 | 9<br>(9 pgs) | BNC Certificate of Notice (Ch 11 document sent to the Securities and Exchange Commission) (RE: related document(s)1). Notice Date 04/05/2025. (Admin.) (Entered: 04/06/2025) |
| 04/06/2025 | 10<br>(3 pgs) | BNC Certificate of Notice (Order setting status hearing) (RE: related document(s)8). Notice Date 04/06/2025. (Admin.) (Entered: 04/07/2025) |
| 04/12/2025 | 11<br>(4 pgs; 2 docs) | Motion to set claims bar date Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)1, 5, 8). (Attachments: # 1 Proposed Order) (Gurdin, C.) (Entered: 04/12/2025) |
| 04/12/2025 | 12<br>(7 pgs; 4 docs) | Amended Application to Employ C. STEPHEN GURDIN, JR. as Attorney. Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)6). (Attachments: # 1 Affidavit of Disinterestedness # 2 Proposed Order # 3 Certificate of Service) (Gurdin, C.) (Entered: 04/12/2025) |
| 04/14/2025 | 13<br>(4 pgs; 2 docs) | First Motion to Extend Time to file Schedules, Statements and other Documents Required by FRBP 1007(b). Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)1). (Attachments: # 1 Proposed Order) (Gurdin, C.) (Entered: 04/14/2025) |
| 04/15/2025 | 14 | A proper certificate of service was not filed with docket entry #11. See L.B.R. 9013-3. Failure to file a proper certificate of service on or before |

| | | |
|---|---|---|
| | | April 17, 2025 may result in the denial of the Motion to Set Claims Bar Date, without prejudice, and without further notice. IT IS SO ORDERED on 4/15/2025. /s/Mark J. Conway (There is no image or paper document associated with this entry.) (RE: related document(s)11). (McHugh, Michael) (Entered: 04/15/2025) |
| 04/16/2025 | 15 | Clerk to provide notice of meeting of creditors to all parties in interest. (There is no image or paper document associated with this entry.) Filed by U.S. Trustee. 341(a) meeting to be held 5/6/2025 at 11:00 AM - for Ch 11 only. The 341 meeting will be conducted by telephone. Refer to the call-in instructions. (Schalk, Joseph) (Entered: 04/16/2025) |
| 04/16/2025 | 16 (5 pgs; 4 docs) | Notice of Meeting of Creditors. Request submitted to BNC for mailing 341(a) meeting to be held 5/6/2025 at 11:00 AM - for Ch 11 only. The 341 meeting will be conducted by telephone. Refer to the call-in instructions. Last day to oppose dischargeability is 7/5/2025. (McHugh, Michael) (Entered: 04/16/2025) |
| 04/16/2025 | 17 (8 pgs; 4 docs) | Certificate of Service *of Motion to Set Claims Bar Dates;* Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)11). (Attachments: # 1 Motion # 2 Form 410 Proof of Claim Form # 3 Proposed Order) (Gurdin, C.) (Entered: 04/16/2025) |
| 04/18/2025 | 18 (4 pgs) | BNC Certificate of Notice (341 Meeting Notice (Chapter 11)) (RE: related document(s)16). Notice Date 04/18/2025. (Admin.) (Entered: 04/19/2025) |
| 04/18/2025 | 19 (3 pgs) | BNC Certificate of Notice (Notice) (RE: related document(s)16). Notice Date 04/18/2025. (Admin.) (Entered: 04/19/2025) |
| 04/21/2025 | 20 (5 pgs; 4 docs) | Order Granting Motion to set claims bar date. Instructions for service (C. Stephen Gurdin) are attached. (RE: related document(s)11). Proofs of Claims due by 7/21/2025. Government Proof of Claims Due by 9/29/2025. Clerks Office Follow-Up Due by 5/1/2025. (Eshelman, Ryan) (Entered: 04/21/2025) |
| 04/22/2025 | 21 (2 pgs; 2 docs) | Order Granting Motion to Extend Time to file Schedules, Statements and other Documents Required by FRBP 1007(b). (RE: related document(s) 13). Incomplete Filings due by 5/6/2025. (McHugh, Michael) (Entered: 04/22/2025) |
| 04/24/2025 | 22 (9 pgs; 4 docs) | Certificate of Service *of Order Granting Motion to Set Claims Bar Dates;* Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)11, 20). (Attachments: # 1 Order Granting Motion to Set Claims Bar Dates # 2 Proof of Claim Form # 3 Mailing List) (Gurdin, C.) (Entered: 04/24/2025) |
| 04/29/2025 | 23 (2 pgs; 2 docs) | Notice setting hearing. Request submitted to BNC for mailing. (RE: related document(s)12). Hearing scheduled for 6/5/2025 at 10:00 AM at Max Rosenn US Courthouse, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (McHugh, Michael) (Entered: 04/29/2025) |

| | | |
|---|---|---|
| 04/30/2025 | 24<br>(9 pgs; 2 docs) | Adversary case 5:25-ap-00023. Complaint Filed by C. Stephen Gurdin Jr on behalf of LUXURY TIME GLOBAL LLC, FUNDERS GROUP LLC against FUNDERS GROUP LLC. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 07/29/2025. (Attachments: # 1 Exhibit) 12 (Recovery of money/property - 547 preference) (Gurdin, C.) (Entered: 04/30/2025) |
| 05/02/2025 | 25<br>(31 pgs; 2 docs) | *Declaration Under Penalty of Perjury for Non-Individual Debtors;* Schedule A-B; Schedule D; Schedule E-F; Schedule G; Schedule H; Summary of Assets and Liabilities;, Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy, Disclosure of Compensation of Attorney for Debtor , Verification of *CREDITOR MATRIX; LIST OF EQUITY SECURITY HOLDERS* Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)1). (Gurdin, C.)Modified on 5/5/2025 (MPM). (Entered: 05/02/2025) |
| 05/06/2025 | 26 | Statement Adjourning Meeting of 341(a) Meeting of Creditors. Section 341 (a) Meeting Continued. (There is no image or paper document associated with this entry.) Filed by U.S. Trustee. 341(a) meeting to be held 5/13/2025 at 09:00 AM - for Ch 11 only. The 341 meeting will be conducted by telephone. Refer to the call-in instructions. (Lau, Kenneth) (Entered: 05/06/2025) |
| 05/06/2025 | 27<br>(9 pgs; 2 docs) | Adversary case 5:25-ap-00024. Complaint Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global LLC against I Got Funded LLC I Got Funded LLC. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 08/4/2025. (Attachments: # 1 Exhibit Exhibit 1 Preferential Payments) 12 (Recovery of money/property - 547 preference) (Gurdin, C.) (Entered: 05/06/2025) |
| 05/08/2025 | 28<br>(32 pgs) | BNC Certificate of Notice (Ch 11 document sent to the Securities and Exchange Commission) (RE: related document(s)25). Notice Date 05/08/2025. (Admin.) (Entered: 05/09/2025) |
| 05/09/2025 | 29<br>(11 pgs) | Objection to *Debtor's Application to Employ C. Stephen Gurdin, Jr., Esquire as General Bankruptcy Counsel;* Filed by U.S. Trustee (RE: related document(s)6, 12). (Lau, Kenneth) (Entered: 05/09/2025) |
| 05/09/2025 | 30<br>(2 pgs; 2 docs) | Notice setting hearing. Request submitted to BNC for mailing. (RE: related document(s)6, 12). Hearing scheduled for 6/5/2025 at 10:00 AM at Max Rosenn US Courthouse, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (McHugh, Michael) (Entered: 05/09/2025) |
| 05/09/2025 | 31<br>(3 pgs) | Objection to *Debtor's Amended Application to Employ General Counsel.* Filed by John J Martin of Law Offices John J. Martin on behalf of Michael Afonso (RE: related document(s)6, 12). (Martin, John) (Entered: 05/09/2025) |
| 05/12/2025 | 32<br>(2 pgs; 2 docs) | Amended Notice setting hearing. Request submitted to BNC for mailing. (RE: related document(s)6, 12, 23, 29, 30, 31). Hearing scheduled for 6/5/2025 at 10:00 AM at Max Rosenn US Courthouse, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (McHugh, Michael) (Entered: 05/12/2025) |
| 05/14/2025 | 33<br>(2 pgs) | Request for Notice under 2002 Filed by Lisa M. Doran of Doran & Doran, P.C. on behalf of Orafi, Inc.. (Doran, Lisa) (Entered: 05/14/2025) |

| | | |
|---|---|---|
| 05/14/2025 | 34 (9 pgs; 2 docs) | Adversary case 5:25-ap-00026. Complaint Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global LLC against Empire Recovery Soutions LLC, Sinclair Funding Group. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 08/12/2025. (Attachments: # 1 Exhibit Exhibit 1 Preferential Payments) 12 (Recovery of money/property - 547 preference) (Gurdin, C.) (Entered: 05/14/2025) |
| 05/17/2025 | 35 (15 pgs; 6 docs) | Application to Employ Brian T. Kelly as Accountant. Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC. (Attachments: # 1 Affidavit of Disinterestedness # 2 Retention Agrement # 3 Proposed Order # 4 Certificate of Service # 5 Mailing List) (Gurdin, C.) (Entered: 05/17/2025) |
| 05/17/2025 | 36 (4 pgs) | Exhibit (fully executed retention). Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)35). (Gurdin, C.) (Entered: 05/17/2025) |
| 05/18/2025 | 37 (9 pgs; 2 docs) | Adversary case 5:25-ap-00028. Complaint Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global LLC against THORO CORP THORO CORP. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 08/16/2025. (Attachments: # 1 Exhibit Exhibit 1 Preferential Payments) 12 (Recovery of money/property - 547 preference) (Gurdin, C.) (Entered: 05/18/2025) |
| 05/20/2025 | 38 | Certification that 341 Meeting of Creditors Held. (There is no image or paper document associated with this entry.) Filed by U.S. Trustee. (Lau, Kenneth) (Entered: 05/20/2025) |
| 05/20/2025 | 39 (1 pg) | Request for Notice under 2002 & Filed by COMMONWEALTH OF PA - UCTS. (Mitten, Linda) (Entered: 05/20/2025) |
| 05/21/2025 | 40 (8 pgs; 2 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period APRIL 2025 Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC. (Attachments: # 1 Exhibit DIP account statement for April 2025) (Gurdin, C.) (Entered: 05/21/2025) |
| 05/22/2025 | 41 (3 pgs) | Status Report Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)1). (Gurdin, C.) (Entered: 05/22/2025) |
| 05/27/2025 | 42 (22 pgs; 3 docs) | Motion to Convert Ch. 11 Case to Ch. 7, or in the alternative, Dismiss Ch. 11 Case *by the United States Trustee;*. Filing Fee due in the amount of $15.00. Filed by Kenneth G Lau of DOJ-Ust on behalf of United States Trustee (RE: related document(s)1). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Lau, Kenneth) (Entered: 05/27/2025) |
| 05/28/2025 | 43 | Filing fee not required. (There is no image or paper document associated with this entry.) (RE: related document(s)42). (McHugh, Michael) (Entered: 05/28/2025) |
| 05/28/2025 | 44 (2 pgs; 2 docs) | Notice setting objection date and hearing. Request submitted to BNC for mailing. (RE: related document(s)42). Objections due by 6/18/2025. Hearing scheduled for 6/24/2025 at 10:00 AM at Max Rosenn US Courthouse, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (McHugh, Michael) (Entered: 05/28/2025) |

| | | |
|---|---|---|
| 05/30/2025 | 45<br>(3 pgs) | BNC Certificate of Notice (Notice of Hearing) (RE: related document(s)44). Notice Date 05/30/2025. (Admin.) (Entered: 05/31/2025) |
| 05/31/2025 | 46<br>(15 pgs; 6 docs) | Amended Application to Employ Brian T. Kelly as Accountant. Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)35). (Attachments: # 1 Affidavit of Disinterestedness # 2 Engagement Letter # 3 Proposed Order # 4 Certificate of Service # 5 Mailing List) (Gurdin, C.) (Entered: 05/31/2025) |
| 06/02/2025 | 47<br>(9 pgs; 3 docs) | Motion to Continue Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)1, 8, 12, 23, 29, 30, 31, 32). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Gurdin, C.) (Entered: 06/02/2025) |
| 06/03/2025 | 48<br>(2 pgs; 2 docs) | Order Granting Motion To Continue (RE: related document(s)12, 47). Hearing scheduled for 6/24/2025 at 10:00 AM at Max Rosenn US Courthouse, 197 South Main Street, Courtroom 2, Wilkes-Barre, PA 18701. (McHugh, Michael) (Entered: 06/03/2025) |
| 06/03/2025 | 49 | **Proceeding Memo for hearing scheduled on: 06/05/2025**<br>**MATTER:** Amended Application to Employ C. STEPHEN GURDIN, JR. as Attorney # 12 ; Objection filed by U.S Trustee # 29 Objection filed by Michael Afonso # 31<br>**APPEARANCES:** N/A<br>**DISPOSITION:** Hearing of 06/05/2025 on the Amended Application to Employ C. STEPHEN GURDIN, JR. as Attorney canceled; not held. A Motion to Continue the hearing was filed to docket entry # 47 . Order Granting the continuance has been entered. /s/ Mark J. Conway.<br>**HEARING Scheduled for 06/24/2025 at 10:00 AM at U.S. Courthouse, 197 S. Main St. Wilkes-Barre, PA.** (Price, Lyndsey) (Entered: 06/03/2025) |
| 06/03/2025 | 50<br>(10 pgs; 2 docs) | Adversary case 5:25-ap-00034. Complaint Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global LLC against FAMILY FUNDING GROUP FAMILY FUNDING GROUP LLC. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 09/1/2025. (Attachments: # 1 Exhibit Exhibit 1) 12 (Recovery of money/property - 547 preference) (Gurdin, C.) (Entered: 06/03/2025) |
| 06/04/2025 | 51<br>(2 pgs; 2 docs) | Notice of Motion to Dismiss Ch. 11 Case pursuant to 11 U.S.C. 1112(b) and Certificate of Service. Notice served on 6/4/2025. Filed by Kenneth G Lau of DOJ-Ust on behalf of United States Trustee (RE: related document(s)42, 44). Objections due by 6/18/2025. (Attachments: # 1 Certificate of Service) (Lau, Kenneth) (Entered: 06/04/2025) |
| 06/04/2025 | 52 | **Proceeding Memo for hearing scheduled on: 06/05/2025**<br>**MATTER:** Scheduling Hearing # 8<br>**APPEARANCES:** N/A<br>**DISPOSITION:** Hearing of 06/05/2025 on the Scheduling Conference canceled; not held. A Motion to Continue the hearing was filed to docket entry # 47. Order Granting the continuance has been entered. /s/ Mark J. Conway<br>**HEARING Scheduled for 06/24/2025 at 10:00 AM at U.S. Courthouse, 197 S. Main St. Wilkes-Barre, PA.** (Price, Lyndsey) (Entered: 06/04/2025) |

| | | |
|---|---|---|
| 06/04/2025 | 53<br>(9 pgs; 2 docs) | Adversary case 5:25-ap-00036. Complaint Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global LLC against KASH ADVANCE LLC KASH ADVANCE LLC. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 09/2/2025. (Attachments: # 1 Exhibit Exhibit 1 Preferential Payments) 12 (Recovery of money/property - 547 preference) (Gurdin, C.) (Entered: 06/04/2025) |
| 06/05/2025 | 54<br>(9 pgs; 2 docs) | Adversary case 5:25-ap-00037. Complaint Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global LLC against LIFE LONG TRUSTED SE LIFE LONG TRUSTED SERVICES LLC. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 09/3/2025. (Attachments: # 1 Exhibit Exhibit 1 Preferential Payments) 12 (Recovery of money/property - 547 preference) (Gurdin, C.) (Entered: 06/05/2025) |
| 06/13/2025 | 55<br>(5 pgs; 2 docs) | Request / Motion to continue hearing with concurrence *re Section 1112(b) Motion to Convert or Dismiss Case, Amended Employment Application for Debtor's Counsel Gurdin and the Court's Status hearing, as well as related Objection filing deadline;* Filed by U.S. Trustee (RE: related document(s)12, 42). (Attachments: # 1 Proposed Order)(Lau, Kenneth)Modified on 6/16/2025 (PAR). (Entered: 06/13/2025) |
| 06/15/2025 | 56<br>(4 pgs; 3 docs) | Certificate of no objection *to Amended Application to Employ Accountant* Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)46). (Attachments: # 1 Certificate of Service # 2 Proposed Order) (Gurdin, C.) (Entered: 06/15/2025) |
| 06/16/2025 | 57 | **Proceeding Memo for hearing scheduled on: 06/24/2025**<br>**MATTER:** Subchapter V Status Hearing # 8<br>**APPEARANCES:** N/A<br>**DISPOSITION:** Hearing of 06/24/2025 canceled; not held. Request to Continue Matter with Consent filed; hearing continued.<br>**HEARING Scheduled for 07/17/2025 at 10:00 AM at U.S. Courthouse, 197 S. Main St. Wilkes-Barre, PA.** (Ratchford, Patricia) (Entered: 06/16/2025) |
| 06/16/2025 | 58 | **Proceeding Memo for hearing scheduled on: 06/24/2025**<br>**MATTER:** Amended Application to Employ C. STEPHEN GURDIN, JR. as Attorney # 12 ; Objection filed by U.S Trustee # 29 Objection filed by Michael Afonso # 31<br>**APPEARANCES:** N/A<br>**DISPOSITION:** Hearing of 06/24/2025 canceled; not held. Request to Continue Matter with Consent filed; hearing continued.<br>**HEARING Scheduled for 07/17/2025 at 10:00 AM at U.S. Courthouse, 197 S. Main St. Wilkes-Barre, PA.** (Ratchford, Patricia) (Entered: 06/16/2025) |

| | | |
|---|---|---|
| 06/16/2025 | 59 | **Proceeding Memo for hearing scheduled on: 06/24/2025**<br>**MATTER:** Motion to Convert Ch. 11 Case to Ch. 7, or in the alternative, Dismiss Ch. 11 Case# 42 filed by the US Trustee;(Objection deadline is 06/18/2025)<br>**APPEARANCES:** N/A<br>**DISPOSITION:** Hearing of 06/24/2025 canceled; not held. Request to Continue Matter with Consent filed; hearing continued.<br>**HEARING Scheduled for 07/17/2025 at 10:00 AM at U.S. Courthouse, 197 S. Main St. Wilkes-Barre, PA.** (Ratchford, Patricia) (Entered: 06/16/2025) |
| 06/16/2025 | 60<br>(13 pgs; 5 docs) | Motion to Extend Time to file a plan with nonconcurrence. Notice served on 6/16/2025. Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)1). Objections due by 06/30/2025. (Attachments: # 1 Proposed Order # 2 Certificate of Service # 3 Notice # 4 Exhibit MATRIX) (Gurdin, C.) (Entered: 06/16/2025) |
| 06/18/2025 | 64<br>(2 pgs; 2 docs) | Order Granting Amended Application to Employ Brian T Kelly, CPA as Accountant (RE: related document(s)46). (McHugh, Michael) (Entered: 06/20/2025) |
| 06/19/2025 | 61<br>(13 pgs; 4 docs) | Motion To Shorten Time *as to Debtor Motion to Extend Plan 90 day Period* Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)60). (Attachments: # 1 Exhibit Motion to extend 90 day period # 2 Certificate of Service # 3 Proposed Order) (Gurdin, C.) (Entered: 06/19/2025) |
| 06/19/2025 | 62<br>(9 pgs; 2 docs) | Adversary case 5:25-ap-00046. Complaint Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global LLC against NFG ADVANCE LLC NFG ADVANCE LLC. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 09/17/2025. (Attachments: # 1 Exhibit Exhibit 1 Preferential Payments Amended) 12 (Recovery of money/property - 547 preference) (Gurdin, C.) (Entered: 06/19/2025) |
| 06/20/2025 | 63<br>(9 pgs; 2 docs) | Adversary case 5:25-ap-00047. Complaint Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global LLC against PETER MALAK. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 09/18/2025. (Attachments: # 1 Exhibit Exhibit 1 Preferential Payments Amended) 12 (Recovery of money/property - 547 preference) (Gurdin, C.) (Entered: 06/20/2025) |
| 06/20/2025 | 65<br>(2 pgs; 2 docs) | Order Granting Motion to Extend Time Ninety (90) Day Period to File Chapter 11 Plan. (RE: related document(s) 60). Chapter 11 Plan due by 7/25/2025. *Motion for Shortened notice filed at 61 is deemed moot.* (McHugh, Michael)Modified on 6/23/2025 (MPM). (Entered: 06/23/2025) |
| 06/23/2025 | 66 | The Clerk's Office has stopped the paper service of the document at docket entry # 65. Service was incorrect. (There is no image or paper document associated with this entry.) (RE: related document(s)65). (Boyle, Cindy) (Entered: 06/23/2025) |
| 06/23/2025 | 67<br>(4 pgs) | Debtor-In-Possession Monthly Operating Report for Filing Period MAY 2005 Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC. (Gurdin, C.) (Entered: 06/23/2025) |


Case 5:25-bk-00910-MJC Doc 73-1 Filed 10/14/26 Entered 10/14/26 13:57:48 Desc Exhibit Exhibit 1 Complaint and Exhibits Page 8 of 9

| | | |
|---|---|---|
| 06/23/2025 | 68<br>(4 pgs) | Debtor-In-Possession Monthly Operating Report for Filing Period APRIL 2025 *AMENDED* Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC. (Gurdin, C.) (Entered: 06/23/2025) |
| 06/24/2025 | 69<br>(8 pgs) | Exhibit (DIP ACCOUNT MAY). Filed by C. Stephen Gurdin Jr on behalf of Luxury Time Global, LLC (RE: related document(s)67). (Gurdin, C.) (Entered: 06/24/2025) |
| 07/03/2025 | 70<br>(35 pgs; 2 docs) | Adversary case 5:25-ap-00051. Complaint Filed by David J. Harris on behalf of PETER MALAK against Luxury Time Global, LLC. Filing Fee due in the amount of $ 350.00. Certificate of Service of the Complaint and Summons is due by: 10/1/2025. (Attachments: # 1 Exhibit Exhibit "A") 62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud),(67 (Dischargeability - 523(a)(4), fraud as fiduciary, embezzlement, larceny)) (Harris, David) (Entered: 07/03/2025) |
| 07/07/2025 | 71<br>(3 pgs) | Entry of Appearance of Christian P. LaBletta Filed by Christian P. LaBletta of LaBletta & Walters LLC on behalf of Omar Baker. (LaBletta, Christian) (Entered: 07/07/2025) |
| 07/07/2025 | 72<br>(2 pgs) | Entry of Appearance of David J. Harris Filed by David J. Harris on behalf of PETER MALAK. (Harris, David) (Entered: 07/07/2025) |

---

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/08/2025 11:01:56 | | | |
| **PACER Login:** | [redacted] | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:25-bk-00912-MJC Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

**Luxury Time Global**
**Gambling Transactions Summary**

| Month & Year | Bank | Account | Account No. | No. Transactions | Deposits | Withdrawals | Net Withdrawal |
|---|---|---|---|---|---|---|---|
| January 2024 | Wells Fargo | Debtor Business Checking | x9319 | 16 | $ 43,662.00 | | |
| January 2024 | Wells Fargo | Debtor Business Checking | x9319 | 76 | | $ 366,753.83 [1] | $ (323,091.83) |
| February 2024 | Wells Fargo | Debtor Business Checking | x9319 | 0 | $ - | | |
| February 2024 | Wells Fargo | Debtor Business Checking | x9319 | 75 | | $ 386,341.82 [2] | $ (386,341.82) |
| March 2024 | Wells Fargo | Debtor Business Checking | x9319 | 0 | $ - | | |
| March 2024 | Wells Fargo | Debtor Business Checking | x9319 | 30 | | $ 345,910.00 | $ (345,910.00) |
| April 2024 | Wells Fargo | Debtor Business Checking | x9319 | 0 | $ - | | |
| April 2024 | Wells Fargo | Debtor Business Checking | x9319 | 28 | | $ 304,847.88 [3] | $ (304,847.88) |
| May 2024 | Wells Fargo | Debtor Business Checking | x9319 | 0 | $ - | | |
| May 2024 | Wells Fargo | Debtor Business Checking | x9319 | 112 | | $ 528,397.94 [4] | $ (528,397.94) |
| June 2024 | Wells Fargo | Debtor Business Checking | x9319 | 0 | $ - | | |
| June 2024 | Wells Fargo | Debtor Business Checking | x9319 | 104 | | 489,838.99 [5] | $ (489,838.99) |
| July 2024 | Wells Fargo | Debtor Business Checking | x9319 | 0 | $ - | | |
| July 2024 | Wells Fargo | Debtor Business Checking | x9319 | 49 | | $ 436,195.00 | $ (436,195.00) |
| August 2024 | Wells Fargo | Debtor Business Checking | x9319 | 4 | $ 17,700.00 | | |
| August 2024 | Wells Fargo | Debtor Business Checking | x9319 | 65 | | $ 394,900.00 | $ (377,200.00) |
| September 2024 | Wells Fargo | Debtor Business Checking | x9319 | 0 | $ - | | |
| September 2024 | Wells Fargo | Debtor Business Checking | x9319 | 53 | | $ 471,400.00 | $ (471,400.00) |
| October 2024 | Wells Fargo | Debtor Business Checking | x9319 | 0 | $ - | | |
| October 2024 | Wells Fargo | Debtor Business Checking | x9319 | 44 | | $ 450,700.00 | |
| October 2024 | Wells Fargo | Debtor Business Checking | x4740 | 0 | $ - | | |
| October 2024 | Wells Fargo | Debtor Business Checking | x4740 | 2 | | $ 18,500.00 [6] | $ (469,200.00) |
| November 2024 | Wells Fargo | Debtor Business Checking | x4740 | 43 | $ 93,676.00 | | |
| November 2024 | Wells Fargo | Debtor Business Checking | x4740 | 20 | | $ 212,900.00 | $ (119,224.00) |
| December 2024 | Wells Fargo | Debtor Business Checking | x4740 | 36 | $ 162,836.61 | | |
| December 2024 | Wells Fargo | Debtor Business Checking | x4740 | 24 | | $ 239,300.00 | $ (76,463.39) |
| January 2025 | Wells Fargo | Debtor Business Checking | x4740 | 4 | $ 23,447.00 | | |
| January 2025 | Wells Fargo | Debtor Business Checking | x4740 | 5 | | $ 52,200.00 | $ (28,753.00) |
| February 2025 | Wells Fargo | Debtor Business Checking | x4740 | 0 | $ - | | |
| February 2025 | Wells Fargo | Debtor Business Checking | x4740 | 27 | | $ 223,200.00 | |
| February 2025 | Wells Fargo | Debtor Business Savings | x4757 | 1 | $ 5,010.00 | | |
| February 2025 | Wells Fargo | Debtor Business Savings | x4757 | 0 | | $ - | $ (218,190.00) |
| March 2025 | Wells Fargo | Debtor Business Checking | x4740 | 2 | $ 4,692.00 | | |
| March 2025 | Wells Fargo | Debtor Business Checking | x4740 | 13 | | $ 97,225.00 | $ (92,533.00) |
| **Net withdrawals** | | | | | | | **$ (4,667,586.85)** |

**Notes**

[1] These include 2 ATM withdrawasl of $2,007.99 each at Mohegan Pennsylvania Casino and Resort, 1 ATM withdrawal of $2,006.00 at Wind Creek Bethlehem Casino and Resort, and 3 ATM withdrawals of $2,005.95 each at Mount Airy Casino Resort.

[2] These include 3 ATM withdrawals of $2,007.99 each at Moghegan Pennsylvania Casino and Resort and 3 ATM withdrawals of $2,005.95 each at Mount Airy Casino Resort.

[3] These include 2 ATM withdrawals of $2,007.99 each at Moghegan Pennsylvania Casino and Resort and 2 ATM withdrawals of $2,005.95 each at Mount Airy Casino Resort.

[4] These include 6 ATM withdrawals of $2,007.99 each at Moghegan Pennsylvania Casino and Resort.

[5] These include 1 ATM withdrawal of $2,007.99 each at Moghegan Pennsylvania Casino and Resort and 1 ATM withdrawal of $2,006.00 at Wind Creek Bethlehem Casino and Resort

[6] While Mr. Bartels testified that the Debtor had closed its Wells Fargo Business Checking account ending in 9319 as of September 30, 2024, as part of the May 29, 2025 partial additional documentation production, Debtor, through Counsel Gurdin, produced an October 2024 statement for this

acccount covering October 1 through 30, 2024, when Debtor's replacement business checking account ending in 4740 was opened. Thus, the entire month through October 31, 2024 is now covered by the US Trustee's analysis.

<u>Luxury Time Global Bank Accounts:</u>

| | | | |
|---|---|---|---|
| | Wells Fargo | Debtors Business Checking | x9319 |
| | Wells Fargo | Debtors Business Checking | x4740 |
| | Wells Fargo | Debtor Business Savings | x4757 |

**Luxury Time Global**
**Trans ers to rom Mr. Bartels ersonal Account**

| Month & Year | Business Account | Account No. | No. Transactions | ersonal Accounts | Deposits | Withdrawals | Net |
|---|---|---|---|---|---|---|---|
| January 2024 | Debtor Business Savings | x8605 | 0 | x5435 | $ - | | |
| | | | 15 | x5435 | | $ 626,500.00 | $ (626,500.00) |
| | | | 0 | x9620 | $ - | | |
| | | | 3 | x9620 | | $ 10,500.00 | $ (10,500.00) |
| January 2024 | Debtor Business Checking | x9319 | 37 | x5435 | $ 1,131,050.00 | | |
| | | | 3 | x5435 | | $ 106,000.00 | $ 1,025,050.00 |
| | | | 12 | x9620 | $ 214,000.00 | | |
| | | | 5 | x9620 | | $ 40,000.00 | $ 174,000.00 |
| | | | | Net Cash to Debtor | $ 1,345,050.00 | $ 783,000.00 | $ 562,050.00 |
| February 2024 | Debtor Business Savings | x8605 | 0 | x5435 | $ - | | |
| | | | 6 | x5435 | | $ 341,000.00 | $ (341,000.00) |
| | | | 1 | x9620 | $ 25,000.00 | | |
| | | | 3 | x9620 | | $ 14,400.00 | $ 10,600.00 |
| February 2024 | Debtor Business Checking | x9319 | 22 | x5435 | $ 831,350.00 | | |
| | | | 2 | x5435 | | $ 250,000.00 | $ 581,350.00 |
| | | | 5 | x9620 | $ 142,000.00 | | |
| | | | 3 | x9620 | | $ 40,000.00 | $ 102,000.00 |
| | | | 1 | x0091 | $ 6,637.25 | | |
| | | | 1 | x0091 | | $ 338.00 | $ 6,299.25 |
| | | | | Net Cash to Debtor | $ 1,004,987.25 | $ 645,738.00 | $ 359,249.25 |
| March 2024 | Debtor Business Savings | x8605 | 0 | x5435 | $ - | | |
| | | | 6 | x5435 | | $ 346,000.00 | $ (346,000.00) |
| | | | 0 | x9620 | $ - | | |
| | | | 4 | x9620 | | $ 60,611.60 | $ (60,611.60) |
| March 2024 | Debtor Business Checking | x9319 | 19 | x5435 | $ 716,834.78 | | |
| | | | 4 | x5435 | | $ 305,000.00 | $ 411,834.78 |
| | | | 5 | x9620 | $ 146,000.00 | | |
| | | | 4 | x9620 | | $ 23,000.00 | $ 123,000.00 |
| | | | 1 | x0091 | $ 82.22 | | |
| | | | 0 | x0091 | | $ - | $ 82.22 |
| | | | 0 | Cash App | $ - | | |
| | | | 5 | Cash App | | $ 9,690.00 | $ (9,690.00) |
| | | | | Net Cash to Debtor | $ 862,917.00 | $ 744,301.60 | $ 118,615.40 |
| April 2024 | Debtor Business Savings | x8605 | 0 | x5435 | $ - | | |
| | | | 14 | x5435 | | $ 614,500.00 | $ (614,500.00) |
| | | | 0 | x9620 | $ - | | |
| | | | 8 | x9620 | | $ 60,600.00 | $ (60,600.00) |
| April 2024 | Debtor Business Checking | x9319 | 19 | x5435 | $ 875,500.00 | | |
| | | | 5 | x5435 | | $ 447,000.00 | $ 428,500.00 |
| | | | 5 | x9620 | $ 253,000.00 | | |
| | | | 3 | x9620 | | $ 40,000.00 | $ 213,000.00 |
| | | | | **Net cash to Bartels** | $ 1,128,500.00 | $ 1,162,100.00 | **$ ( ,6 . )** |
| May 2024 | Debtor Business Savings | x8605 | 0 | x5435 | $ - | | |
| | | | 13 | x5435 | | $ 1,024,000.00 | $ (1,024,000.00) |
| | | | 0 | x9620 | $ - | | |
| | | | 2 | x9620 | | $ 31,000.00 | $ (31,000.00) |
| May 2024 | Debtor Business Checking | x9319 | 30 | x5435 | $ 1,487,500.00 | | |
| | | | 2 | x5435 | | $ 340,000.00 | $ 1,147,500.00 |
| | | | 7 | x9620 | $ 280,000.00 | | |
| | | | 2 | x9620 | | $ 20,000.00 | $ 260,000.00 |
| | | | | Net Cash to Debtor | $ 1,767,500.00 | $ 1,415,000.00 | $ 352,500.00 |

**Luxury Time Global**

**Trans ers to rom Mr. Bartels ersonal Account**

| Month & Year | Business Account | Account No. | No. Transactions | ersonal Accounts | Deposits | Withdrawals | Net |
|---|---|---|---|---|---|---|---|
| June 2024 | Debtor Business Savings | x8605 | 0 | x5435 | $ - | | |
| | | | 8 | x5435 | | $ 426,000.00 | $ (426,000.00) |
| | | | 0 | x9620 | $ - | | |
| | | | 1 | x9620 | | $ 22,000.00 | $ (22,000.00) |
| June 2024 | Debtor Business Checking | x9319 | 19 | x5435 | $ 920,500.00 | | |
| | | | 1 | x5435 | | $ 200,000.00 | $ 720,500.00 |
| | | | 3 | x9620 | $ 91,000.00 | | |
| | | | 1 | x9620 | | $ 20,000.00 | $ 71,000.00 |
| | | | 3 | x0091 | $ 48,997.75 | | |
| | | | 0 | x0091 | | $ - | $ 48,997.75 |
| | | | | Net Cash to Debtor | $ 1,060,497.75 | $ 668,000.00 | $ 392,497.75 |
| July 2024 | Debtor Business Savings | x8605 | 0 | x5435 | $ - | | |
| | | | 8 | x5435 | | $ 402,257.51 | $ (402,257.51) |
| | | | 0 | x9620 | $ - | | |
| | | | 1 | x9620 | | $ 55,000.00 | $ (55,000.00) |
| July 2024 | Debtor Business Checking | x9319 | 11 | x5435 | $ 770,000.00 | | |
| | | | 3 | x5435 | | $ 480,000.00 | $ 290,000.00 |
| | | | 3 | x9620 | $ 73,500.00 | | |
| | | | 3 | x9620 | | $ 64,500.00 | $ 9,000.00 |
| | | | 0 | x0091 | $ - | | |
| | | | 1 | x0091 | | $ 35,000.00 | $ (35,000.00) |
| | | | | **Net cash to Bartels** | $ 843,500.00 | $ 1,036,757.51 | **$ ( , 57.5 )** |
| August 2024 | Debtor Business Savings | x8605 | 1 | x5435 | $ 429.77 | | |
| | | | 1 | x5435 | | $ 15,000.00 | $ (14,570.23) |
| | | | 4 | x9620 | $ 28,000.00 | | |
| | | | 9 | x9620 | | $ 93,000.00 | $ (65,000.00) |
| August 2024 | Debtor Business Checking | x9319 | 2 | x5435 | $ 48,000.00 | | |
| | | | 0 | x5435 | | $ - | $ 48,000.00 |
| | | | 13 | x9620 | $ 197,500.00 | | |
| | | | 16 | x9620 | | $ 234,000.00 | $ (36,500.00) |
| | | | 1 | x0091 | $ 10,158.75 | | |
| | | | 0 | x0091 | | $ - | $ 10,158.75 |
| | | | 0 | Cash App | $ - | | |
| | | | 2 | Cash App | | $ 12,500.00 | $ (12,500.00) |
| | | | | **Net ash to Bartels** | $ 284,088.52 | $ 354,500.00 | **$ (7 ,4 .48)** |
| September 2024 | Debtor Business Savings | x8605 | 1 | x5435 | $ 1,500.00 | | |
| | | | 0 | x5435 | | $ - | $ 1,500.00 |
| | | | 5 | x9620 | $ 38,500.00 | | |
| | | | 14 | x9620 | | $ 181,500.00 | $ (143,000.00) |
| September 2024 | Debtor Business Checking | x9319 | 0 | x5435 | $ - | | |
| | | | 1 | x5435 | | $ 1,500.00 | $ (1,500.00) |
| | | | 19 | x9620 | $ 336,875.00 | | |
| | | | 12 | x9620 | | $ 157,500.00 | $ 179,375.00 |
| | | | | Net Cash to Debtor | $ 376,875.00 | $ 340,500.00 | $ 36,375.00 |
| October 2024 | Debtor Business Savings | x8605 | 1 | x5435 | $ 3,504.03 | | |
| | | | 0 | x5435 | | $ - | $ 3,504.03 |
| | | | 5 | x9620 | $ 27,550.00 | | |
| | | | 18 | x9620 | | $ 231,150.00 | $ (203,600.00) |
| October 2024 [1] | Debtor Business Checking | x9319 | 0 | x5435 | $ - | | |
| | | | 0 | x5435 | | $ - | $ - |
| | | | 15 | x9620 | $ 225,400.00 | | |
| | | | 16 | x9620 | | $ 135,343.00 | $ 90,057.00 |
| | | | | **Net ash to Bartels** | $ 256,454.03 | $ 366,493.00 | **$ ( , 8. 7)** |

**Luxury Time Global**
**Trans ers to rom Mr. Bartels ersonal Account**

| Month & Year | Business Account | Account No. | No. Transactions | ersonal Accounts | Deposits | Withdrawals | Net |
|---|---|---|---|---|---|---|---|
| November 2024 | Debtor Business Savings | x4757 | 1 | x2425 | $ 70,000.00 | | |
| | | | 25 | x2425 | | $ 309,200.00 | $ (239,200.00) |
| November 2024 | Debtor Business Checking | x4740 | 19 | x2425 | $ 280,270.00 | | |
| | | | 16 | x2425 | | $ 162,197.48 | $ 118,072.52 |
| | | | | **Net ash to Bartels** | $ 350,270.00 | $ 471,397.48 | **$ ( , 7.48)** |
| December 2024 | Debtor Business Savings | x4757 | 4 | x2425 | $ 45,000.00 | | |
| | | | 27 | x2425 | | $ 579,229.39 | $ (534,229.39) |
| December 2024 | Debtor Business Checking | x4740 | 14 | x2425 | $ 123,049.00 | | |
| | | | 9 | x2425 | | $ 87,833.00 | $ 35,216.00 |
| | | | | **Net ash to Bartels** | $ 168,049.00 | $ 667,062.39 | **$ (4 , . )** |
| January 2025 | Debtor Business Savings | x4757 | 17 | x2425 | $ 35,907.00 | | |
| | | | 7 | x2425 | | $ 50,706.00 | $ (14,799.00) |
| | | | 2 | x4072 | $ 8,932.01 | | |
| | | | 2 | x4072 | | $ 17,500.00 | $ (8,567.99) |
| January 2025 | Debtor Business Checking | x4740 | 70 | x2425 | $ 241,556.41 | | |
| | | | 35 | x2425 | | $ 270,737.53 | $ (29,181.12) |
| | | | 5 | x4072 | $ 83,644.00 | | |
| | | | 0 | x4072 | | $ - | $ 83,644.00 |
| | | | | Net Cash to Debtor | $ 370,039.42 | $ 338,943.53 | $ 31,095.89 |
| February 2025 | Debtor Business Savings | x4757 | 11 | x2425 | $ 77,222.00 | | |
| | | | 18 | x2425 | | $ 227,077.00 | $ (149,855.00) |
| | | | 2 | x4072 | $ 7,000.00 | | |
| | | | 0 | x4072 | | $ - | $ 7,000.00 |
| February 2025 | Debtor Business Checking | x4740 | 44 | x2425 | $ 435,696.00 | | |
| | | | 18 | x2425 | | $ 125,254.00 | $ 310,442.00 |
| | | | 11 | x4072 | $ 206,612.75 | | |
| | | | 0 | x4072 | | $ - | $ 206,612.75 |
| | | | | Net Cash to Debtor | $ 726,530.75 | $ 352,331.00 | $ 374,199.75 |
| March 2025 | Debtor Business Savings | x4757 | 17 | x2425 | $ 250,843.50 | | |
| | | | 16 | x2425 | | $ 200,087.00 | $ 50,756.50 |
| | | | 4 | x4072 | $ 91,500.00 | | |
| | | | 5 | x4072 | | $ 88,087.00 | $ 3,413.00 |
| March 2025 | Debtor Business Checking | x4740 | 18 | x2425 | $ 69,981.50 | | |
| | | | 14 | x2425 | | $ 261,601.00 | $ (191,619.50) |
| | | | 11 | x4072 | $ 125,001.00 | | |
| | | | 4 | x4072 | | $ 85,269.00 | $ 39,732.00 |
| | | | | **Net ash to Bartels** | $ 537,326.00 | $ 635,044.00 | **$ ( 7,7 8. )** |
| | | | | | $ 11,082,584.72 | $ 9,981,168.51 | $ 1,101,416.21 |

[1] While Mr. Bartels testified that the Debtor had closed its Wells Fargo business checking account ending in 9319 as of September 30,2024, as part of the May 29, 2025 partial additional document production, Debtor, through Counsel Gurdin, produced an October 2024 statement for this account covering October 1 through 30, 2024, when Debtor's replacement business checking account ending in 4740 was opened. Thus, the entire month through October 31, 2924 is now covered by the US Trustee's analysis.

ric Bartels Personal Bank Accounts:

| Color | Bank | Account | No. |
|---|---|---|---|
| (green) | Wells Fargo | ric Bartels Savings | x5435 |
| (yellow) | Wells Fargo | ric Bartels Checking | x9620 |
| (purple) | Wells Fargo | ric Bartels Checking | x2425 |
| (pink) | Wells Fargo | ric Bartels Ways2Save | x0091 |
| (blue) | Wells Fargo | ric Bartels Savings | x4072 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Luxury Time Global, LLC | : | Case No. **5:25-bk-00912-MJC** |
| | : | |
| Debtor | : | |

ORDER

And now this _______ day of ____________, 2026 upon the Motion of Trustee Jill E. Durkin to Enforce the Automatic Stay under 11 U.S.C. § 362(a)(3), and the response thereto,

The Court finds Peter Malak ("Malak") to be in violation of the Automatic Stay, and

It is hereby ORDERED, ADJUDGED and DECREED that the MOTION is GRANTED, and

It is hereby ORDERED, ADJUDGED and DECREED MALAK is enjoined from the continued prosecution of the competing District Court Action titled Peter Malak v. Eric D. Bartels, et al., filed at Case #3:26-cv-01222-JKM, United States District Court for the Middle District of Pennsylvania (the "District Court Action"), and

It is further ORDERED that MALAK shall take appropriate action to correct his stay violations and facilitate the substitution of the Trustee as Plaintiff in the District Court Action and the referral thereof to this Court.

_________________________, J
Honorable Mark J. Conway
U.S. Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Luxury Time Global, LLC | : | Case No. **5:25-bk-00912-MJC** |
| | : | |
| Debtor | : | |

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Enforce the Automatic Stay was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all parties and in addition, I served the Motion upon counsel for respondent via email:

Geff Blake
Blake & Walsh, LLC
436 Jefferson Avenue
Scranton, PA 18510
Email: Gblake@blakewalshlaw.Com

Date: July 24, 2026

*/s/ Beverly Weiss Manne*
Beverly Weiss Manne, Esq.
PA ID No. 34545
**TUCKER ARENSBERG, P.C.**
1500 One PPG Place
Pittsburgh, PA 15222
Phone: 412-594-5525
Email: bmanne@tuckerlaw.com