FILED (EDSS)
**July 31, 2026**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Wilkes-Barre

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(WILKES-BARRE)**

| | |
|---|---|
| In re:<br>LUXURY TIME GLOBAL, LLC<br>Debtor. | Chapter 7<br>Case No. 5:25-bk-00912-MJC<br>Matter: Docs. 151, 153 & 156 |

# ERIC DAVID BARTELS' MOTION FOR LEAVE TO FILE LIMITED SUR-REPLY TO DOCUMENT 156, FOR CONSIDERATION BEFORE ENTRY OF PROPOSED ORDER, AND FOR HEARING

Eric David Bartels ("Bartels"), appearing pro se solely in his individual capacity, respectfully moves for leave to file the Limited Sur-Reply attached as Exhibit A. The filing responds only to legal arguments, factual characterizations, and compensation/disclosure issues newly raised or materially crystallized in the Trustee's Reply [Doc. 156] (the "Reply"). Bartels also requests that the Court consider the attached Sur-Reply before ruling on the pending employment papers and set a hearing or other appropriate schedule.

## RELIEF REQUESTED

**1.** No rule gives Bartels an automatic right to file a sur-reply. He therefore seeks leave rather than filing an unauthorized brief. This request is not a withdrawal, retreat, or abandonment of any pending objection. It is a procedurally proper request for permission to answer new material raised after his last authorized filing.

2. The Reply does more than answer the Renewed Objection. It relies on a nonbinding decision addressing section 327(c), argues that Rule 2018 participation is unavailable to Bartels, states that he is the subject of potential claims, suggests that his prompt objections caused or were intended to cause delay, invokes section 546 urgency, seeks retrospective approval under a standard requiring a hearing and extraordinary circumstances, and states that work connected to the already-filed Malak Action will be treated as the Engagement Letter's formal-proceeding event for purposes of the 40% litigation-tier contingency. Doc. 156 paras. 13, 17-29, 42-47 & at 12. The issue is now concrete, not prospective. On July 24, 2026, proposed special counsel filed papers on the Trustee's behalf in the separately pending federal action, Malak v. Bartels, No. 3:26-cv-01222-JKM, Doc. 20 (M.D. Pa. July 24, 2026), and the Trustee contemporaneously filed Doc. 152 in this Court. Bartels cites those filings for one limited purpose: they document actual Trustee-side, litigation-related services undertaken while the employment application was pending, making the scope, preapproval-service, and compensation disclosures in the employment record material now. This Motion does not ask the Court to grant, deny, or otherwise evaluate relief requested in either filing, or to decide any issue concerning the separate federal action.

3. This Motion concerns only the sufficiency of the employment and compensation record before this Court. It does not ask the Court, in this Motion, to grant, deny, stay, modify,

transfer, refer, substitute a party in, authorize intervention in, or otherwise manage or decide the separate Malak Action. Nor does it seek a merits or claim-ownership determination. Bartels is represented by counsel in that action; this Motion is not a response, appearance, consent, or opposition there. All such issues and positions are reserved for the appropriate court and counsel of record. This Motion asks only whether the requested employment order should include retrospective authority, broad compensation language, and conflict findings before the record identifies the relevant scope, services, information-use safeguards, and fee treatment.

4. Good cause exists because the verified conflicts-search schedule identifies Bartels as a "Potential Party in Interest," and the Reply identifies him as the subject of potential claims and among potential defendants. Doc. 151-1, Sch. 1; Doc. 156 paras. 28, 33. That direct, personal exposure - rather than any former-equity interest - supports the limited Rule 2018 leave requested. The proposed order at Doc. 156-1 would overrule Bartels' objections, approve the Firms nunc pro tunc to July 15, 2026, make a no-adverse-interest finding, and find the case appropriate for employment under a "general retainer," without expressly resolving the Rule 2018 request, identifying the particular facts supporting retrospective approval, or providing a current disclosure concerning actual preapproval services and the proposed compensation treatment for any estate Recovery associated with services reflected in the separate action.

**5.** The filing causes no cognizable delay. Bartels objected two days after the original application, renewed promptly after the Trustee amended material terms, and now seeks leave one day after the Reply. The Reply does not identify an August 2026 § 546 deadline; on the dates it provides, the federal avoidance deadline appears to be April 2, 2027, subject to closure, dismissal, or a separately applicable limitation period.

**6.** Pursuant to L.B.R. 9013-2(d), a copy of the unpublished decision relied upon by the Trustee, In re Team Systems International, LLC, No. 22-10066 (CTG), D.I. 420 (Bankr. D. Del. Feb. 1, 2024), is attached as Exhibit B.

**WHEREFORE**

Bartels respectfully requests that the Court: (a) grant leave to file the attached Limited Sur-Reply; (b) deem the Limited Sur-Reply filed as of the date the Motion is docketed; (c) consider the Limited Sur-Reply before entering an order on Documents 151, 153, and 156; (d) set a hearing or establish an appropriate response schedule on the Rule 2018 request, retrospective approval, conflicts/disclosures, and proposed compensation terms; and (e) grant such other relief as is just.

Dated: July 31, 2026

Respectfully submitted,
/s/ Eric D. Bartels
**ERIC D. BARTELS, Pro Se**
6 Dickinson Close, Moosic, PA 18507
570-479-7141 | edb5020@gmail.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**(WILKES-BARRE)**

| | |
|---|---|
| In re:<br>LUXURY TIME GLOBAL, LLC<br>Debtor. | Chapter 7<br>Case No. 5:25-bk-00912-MJC<br>Matter: Docs. 151, 153 & 156 |

**EXHIBIT A**
**ERIC DAVID BARTELS' LIMITED SUR-REPLY TO TRUSTEE'S REPLY [DOC. 156]**

## PRELIMINARY STATEMENT

The Reply presents a limited employment-record question. It identifies Bartels as the subject of potential claims, states that the proposed Firms may investigate or pursue claims involving him, and asserts that work connected to the separately pending Malak Action bears on the proposed 40% contingency tier. Doc. 156 paras. 26-28, 42-47 & at 12. On July 24, 2026, proposed counsel filed Doc. 20 on the Trustee's behalf in that separate action, and the Trustee filed Doc. 152 in this Court. Bartels cites those papers only as dated evidence that proposed counsel performed Trustee-side, litigation-related services while its employment request was pending. That evidence makes the engagement, preapproval-services, and compensation disclosures material now; it does not request a ruling on the merits, ownership, stay, forum, parties, prosecution, or disposition of the separate action.

Bartels does not seek a veto over the Trustee's investigation or litigation decisions. He requests narrowly defined Rule 2018 participation so the Court may decide the employment application on a complete record concerning: (1) whether the engagement as disclosed covers the services reflected in the July 24 filings; (2) services performed before approval; (3) the asserted 40% tier and the category of any estate Recovery to which it would apply; (4) whether a "general retainer" or another payment arrangement is actually relied upon; and (5) safeguards governing current ORAFI representation, ORAFI-derived information, and any future matter in which the estate's interests may diverge from ORAFI.

References to the Malak Action are made solely to identify the fact, timing, and stated scope of filings made while the employment request was pending, and solely as they bear on the employment, disclosure, and compensation record. This Sur-Reply does not ask the Court to grant, deny, stay, modify, transfer, refer, or otherwise affect the relief requested in District Court Doc. 20 or Bankruptcy Doc. 152. It does not ask the Court to decide claim ownership, real-party-in-interest status, substitution, intervention, referral, the automatic stay, merits, defenses, jurisdiction, or litigation strategy. Bartels is represented by counsel in the District Court Action; this is not a response, appearance, consent, or opposition in that action. All such issues and positions are expressly reserved for the appropriate court and counsel of record.

## I. BARTELS' EXPRESSLY IDENTIFIED STATUS AS THE SUBJECT OF POTENTIAL CLAIMS PROVIDES CONCRETE RULE 2018 CAUSE; TEAM SYSTEMS DOES NOT ELIMINATE THE COURT'S DISCRETION.

**1.** The Trustee's principal authority, In re Team Systems International, LLC, No. 22-10066 (CTG), D.I. 420 (Bankr. D. Del. Feb. 1, 2024), addresses whether noncreditor equity holders who were fraudulent-transfer defendants could invoke the creditor-specific objection mechanism in § 327(c). It does not analyze or decide Rule 2018(a). A copy is attached as Exhibit B under L.B.R. 9013-2(d).

**2.** Bartels does not claim creditor status, invoke § 327(c)'s creditor-specific objection mechanism, assert an equity recovery in this insolvent estate, or seek to direct estate litigation. He seeks only the Court's discretionary, matter-specific permission under Rule 2018(a) to be heard on the present employment, retrospective-effectiveness, conflict-safeguard, scope, and compensation record.

**3.** Team Systems is materially distinguishable. It involved a former client, successor counsel had been installed before the retention request, and the trustee agreed to use separate counsel if he pursued that creditor. Team Systems at 3, 6-7. Here, the present record describes an ongoing ORAFI representation and affirmatively invokes knowledge developed through that relationship as a reason to select the Firms and reduce estate startup costs. The present application and verified materials do not identify a prospective protocol governing estate-side use of ORAFI-derived information, screening, or the circumstances in which separate conflicts counsel would be required.

4. Rule 2018(a) is discretionary, and Bartels does not claim automatic leave. But the Trustee's assertion that he has no "economic or similar interest" disregards the record. The Amended Application's verified conflicts-search schedule identifies him as a "Potential Party in Interest," and the Reply identifies him as the subject of potential claims and among potential defendants. Doc. 151-1, Sch. 1; Doc. 156 paras. 28, 33. This District's Local Rules define a "party in interest" as a person or entity who may be affected by a bankruptcy proceeding. L.B.R. 9001-1(i). Although Global Industrial construed § 1109(b) in a Chapter 11 case, its concrete-interest principle supports the Rule 2018 cause analysis: a party in interest has a "sufficient stake in the proceeding so as to require representation," and the inquiry looks to legally protected interests that could be affected by the bankruptcy proceeding. In re Global Indus. Techs., Inc., 645 F.3d 201, 210-11 (3d Cir. 2011). This Motion does not claim an automatic right under that separate statute; it asks the Court to exercise Rule 2018's express discretion on the record here. The employment request thus concerns proposed counsel's scope, preapproval services, and contingent-fee treatment in connection with work that the Trustee says may be directed at Bartels - a direct, personal stake rather than an abstract former-equity interest. Those record facts, coupled with the documented July 24 Trustee-side, litigation-related services in the separately pending action, provide concrete cause for the strictly limited participation requested here. They do not give Bartels a veto over estate litigation or ask this Court to decide the separate action.

**5.** The Reply twice attributes application-content requirements to Rule 2014(b). Doc. 156 ¶¶ 16, 31. Under the current rule, those requirements appear in Rule 2014(a)(2), and the professional's verified statement is required by Rule 2014(a)(3); Rule 2014(b) instead addresses services by members and associates of an employed firm. Bartels does not contend that the miscitation alone defeats the Application. It underscores why the Court should evaluate the current employment record under the current disclosure rule.

## II. THE COURT MAY CONSIDER A CONFINED RESPONSE WITHOUT GRANTING A VETO OR ENDORSING DELAY.

**6.** The Court need not hold that every potential defendant has an automatic Rule 2018 right. It need only determine whether, under the circumstances alleged here, narrowly confined participation will assist the Court in evaluating its own §§ 327 and 328 approval function on a complete record.

7. The Trustee and the United States Trustee serve distinct statutory functions, but neither filing presently addresses Bartels' confined procedural concern: whether the Court should enter the requested employment order before the record identifies the scope of preapproval services, the fee base, the intended use of ORAFI-derived information, and safeguards for matters in which the estate's interests may become materially adverse to a current Firm client. Rule 2018 allows the Court to define any participation precisely so Bartels cannot direct estate litigation.

**8.** Bartels seeks disclosure and prospective safeguards, not immunity, delay, or control over targets, subpoenas, discovery, settlements, or any estate cause of action. Nothing requested prevents the Trustee from preserving a deadline, investigating lawfully, or seeking prospective counsel authority. If the Court finds immediate prospective employment appropriate, Bartels asks only that the expressly reserved issues not be decided by implication or on a stale record.

## III. THE DATES STATED IN DOC. 156 DO NOT ESTABLISH AN AUGUST 2026 § 546(a) DEADLINE.

**9.** The Reply's asserted urgency does not follow from the dates it supplies. Section 546(a)(1) expressly uses “the later of,” but the Reply does not identify a date on which § 546 will expire. On the Reply's own chronology, the § 546(a)(1)(A) date is April 2, 2027. Even assuming August 22, 2025 is the relevant first-trustee appointment for § 546(a)(1)(B), that date is August 22, 2026. The later date is April 2, 2027, subject to closure, dismissal, or a separately applicable claim-specific limitation. 11 U.S.C. §§ 301(b), 348(a), 546(a); In re American Pad & Paper Co., 478 F.3d 546, 551-53 (3d Cir. 2007).

**10.** This is statutory arithmetic, not a disagreement with the Trustee's duty to investigate promptly. Nothing requested here would bar preservation of evidence, investigation, or timely pursuit of any claim subject to a separately identified limitation period. If the Trustee relies on a different limitation, tolling expiration, state-law period, contractual deadline, or other claim-specific date, the governing claim, provision, and calculation

should be identified before the asserted time pressure is used to support retrospective employment or undefined fee treatment.

## IV. GENERAL URGENCY DOES NOT ESTABLISH THE PARTICULARIZED BASIS FOR RETROSPECTIVE APPROVAL.

**11.** The Reply invokes In re Bird, 396 B.R. 613, 616 (Bankr. M.D. Pa. 2008), for a standard requiring a hearing, satisfaction of § 327, and circumstances sufficiently extraordinary to warrant retrospective approval. Doc. 156 ¶ 43. F/S Airlease likewise requires a particularized analysis; useful work alone does not satisfy the extraordinary-circumstances standard. In re F/S Airlease II, Inc., 844 F.2d 99, 105-08 (3d Cir. 1988).

12. The Reply acknowledges that the First Application sought a different effective date and characterizes that as an "incorrect proposed effective date" corrected with other typographical matters. Doc. 156 para. 7. Bartels does not contend that a correction itself establishes misconduct. The Amended Application now states that the Firms commenced work on July 15, 2026. Doc. 151 paras. 1, 13. The actual July 24 District Court and Bankruptcy Court filings show Trustee-side litigation activity while the employment request was pending. Bartels does not contend that their filing dates prove when drafting began. The present record nevertheless does not identify the particular services performed before approval, by whom, when, why they could not await an order, what compensation is sought or disclaimed for each interval, or how those services are treated under the requested contingent-fee structure. The filings are cited solely to establish the timing and nature of services, not to invite the Court to resolve relief requested in either filing.

13. The Reply identifies potentially significant claims and the desirability of prompt work, but it does not identify a particular emergency that made a prompt, fully defined application and prospective approval impracticable. The July 24 filings make the disclosure issue more, not less, important: they document litigation-related Trustee-side services in a separately pending federal action while the employment request was pending. This Sur-Reply does not ask the Court to assess or rule on the relief requested in those filings. The application and reply do not supply a verified timeline or compensation treatment for those actual Trustee-side services.

**14.** At minimum, the Court should reserve retrospective effectiveness and compensation until a hearing or such other process as the Court deems appropriate, supported by a current verified record establishing the services performed before approval, the reason for the original and revised effective dates, the need for any preapproval work, the relevant scope and conflict status, and the compensation treatment requested for that period. That relief leaves the Trustee free to seek prospective employment now if the Court otherwise finds it appropriate.

## V. THE ASSERTED 40% MALAK LITIGATION TIER AND “GENERAL RETAINER” LANGUAGE REQUIRE SPECIFIC, VERIFIED CLARIFICATION.

**15.** Current Rule 2014(a)(2)(E) requires an employment application to state specific facts showing any proposed arrangement for compensation. The Engagement Letter supplies a 35% or 40% contingent fee on a defined Recovery, with the 40% tier following a lawsuit, adversary proceeding, arbitration, or other formal proceeding. Doc. 147-2 at 2-3.

16. The Reply characterizes the proposed Firms' work related to the separately pending Malak Action as a qualifying "filing of a lawsuit, arbitration, or other formal proceeding." Doc. 156 para. 47. The July 24 papers confirm that proposed counsel undertook Trustee-side, litigation-related services in that action. Bartels cites that fact solely for the limited compensation-disclosure question: the present record does not identify which estate Recovery, if any, the Firms contend would be subject to the 40% tier; whether the separate action is within the original Matter or was added through the writing required by the Engagement Letter; or how any eventual estate recovery would be treated where it involves work by other participants, noncash value, costs, or expenses.

17. Before approving any compensation arrangement that may apply the 40% tier to an estate Recovery arising from services reflected in the July 24 papers, the Court should require a verified, nonprivileged clarification of: (a) whether those services are within the current engagement; (b) whether the engagement was modified in writing to include them; (c) the category of estate Recovery, if any, that the Firms would treat as a covered Recovery; (d) treatment of costs, expenses, and any mixed recovery; and (e) work performed by the Firms before entry of an employment order. This request seeks disclosure concerning employment and compensation only; it does not ask the Court to decide the separate action's claims, parties, merits, forum, stay, or disposition.

18. The Reply gives substantive meaning to the proposed order's phrase "general retainer," explaining that it refers to a limited upfront payment of attorney fees. Doc. 156 para. 49(1). Bartels does not allege that a general retainer, advance, credit, or other payment arrangement exists. But if the Trustee relies on any such arrangement in support of the requested employment or compensation terms, the record should identify its payer, amount, date, ownership, terms, application to Trustee-side work, and any credit against the contingency fee. If no general retainer is part of the engagement, that phrase should not be included in the proposed order.

## VI. CURRENT ORAFI REPRESENTATION, ORAFI-DERIVED INFORMATION, AND CONFLICT SAFEGUARDS REQUIRE A CURRENT VERIFIED RECORD.

19. The Reply says the Trustee can decide whether ORAFI should ever be investigated and that other counsel can be retained later. Doc. 156 para. 40. The issue is not the Trustee's capability or good faith. It is whether counsel that currently represents ORAFI may be the estate's initial advisor on whether the estate should examine, challenge, investigate, negotiate with, or become adverse to that same current client, without a disclosed prospective protocol. ORAFI's consent may address ORAFI's position; it does not eliminate the Court's duty to evaluate the estate-side employment record under sections 327 and 328.

20. The Firms affirmatively rely on knowledge developed through the ORAFI representation as a reason for their selection and reduced startup cost. That makes the following nonprivileged matters material to the employment record: (a) the general categories of ORAFI-derived information proposed for estate-side use; (b) whether the Firms possess nonpublic ORAFI communications or documents relevant to the Trustee engagement; (c) the consent, screening, or information-use safeguards governing that material; and (d) the circumstances requiring conflicts counsel before the Firms undertake estate-side work materially adverse to ORAFI.

21. The financial question is conditional, not accusatory. The Reply defines a "general retainer" as a limited upfront payment. If a general retainer, advance, credit, or other payment arrangement is being relied upon to fund, credit, subsidize, or apply to Trustee-side work, the record should identify the payer, amount, date, ownership, terms, earned or unearned status, any allocation to estate work, and any credit against the contingency fee. Bartels does not allege that any such arrangement exists, that ORAFI paid the Trustee, or that any payment was improper.

22. The requested safeguard is limited and practical. The Court need not deny all employment or halt investigation. It can approve appropriately defined prospective work while reserving any ORAFI-adverse work, use of ORAFI-derived confidential information, and related fee treatment unless and until the Trustee and Firms file a verified supplement identifying the applicable screening, consent, conflicts-counsel, and disclosure protocol. That approach protects the estate without impairing lawful investigation of other potential transfers.

## VII. REQUESTED LIMITED RELIEF

WHEREFORE, Bartels respectfully requests that the Court:

**(a)** grant leave and deem this Limited Sur-Reply filed as of the date of the Motion;

**(b)** expressly decide the Rule 2018 request and permit Bartels limited, matter-specific participation solely concerning the employment record, retrospective effectiveness, conflict safeguards, scope, and compensation terms;

**(c)** consider this Motion and Sur-Reply before entering an order on Documents 151, 153, and 156, and set a hearing or establish a short response schedule as the Court deems appropriate;

**(d)** recognize that the current record does not establish an August 2026 § 546(a) deadline and require identification of any different claim-specific deadline relied upon;

**(e)** deny or reserve retrospective effectiveness and preapproval compensation unless and until the Court determines, on a current verified record and after any process the Court directs, that retrospective approval is warranted;

(f) require a verified, nonprivileged supplement identifying the preapproval services; the proposed compensation treatment, if any, for an estate Recovery connected to services

reflected in the July 24 filings; the 40% Recovery base; treatment of mixed recoveries and expenses; and the factual basis for any "general retainer" finding. The requested supplement concerns employment and compensation disclosure only and seeks no ruling concerning the separate action;

(g) require a verified disclosure of the current ORAFI representation, ORAFI-derived information proposed for estate-side use, applicable screening and consent safeguards, circumstances requiring conflicts counsel, and, if any general retainer, advance, credit, or other payment arrangement is relied upon, its source, payer, amount, ownership, terms, allocation, and treatment under the requested compensation arrangement;

(h) alternatively, if employment is otherwise approved now, approve it prospectively and reserve retrospective compensation, ORAFI-adverse work that may require additional safeguards, and any request to apply the 40% tier to an estate Recovery associated with services reflected in the July 24 filings, pending the required verified supplement; and

**(i)** grant such other relief as is just.

Dated: July 31, 2026

Respectfully submitted,
/s/ Eric D. Bartels
**ERIC D. BARTELS, Pro Se**
6 Dickinson Close, Moosic, PA 18507
570-479-7141 | edb5020@gmail.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**(WILKES-BARRE)**

| | |
|---|---|
| In re:<br>LUXURY TIME GLOBAL, LLC<br>Debtor. | Chapter 7<br>Case No. 5:25-bk-00912-MJC<br>Matter: Docs. 151, 153 & 156 |

## CERTIFICATE OF SERVICE

I certify that on July 31, 2026, I served a true and correct copy of the foregoing Motion for Leave to File Limited Sur-Reply to Document 156, the attached Limited Sur-Reply (Exhibit A), Exhibit B (In re Team Systems International, LLC), the separately filed Proposed Order, and the Certificate of Use of Generative AI by first-class United States mail, postage prepaid, and by electronic mail where an e-mail address is listed, upon the following:

Jill E. Durkin, Esquire
Chapter 7 Trustee
Durkin Law, LLC
401 Marshbrook Road
Factoryville, PA 18419
jilldurkinesq@gmail.com;
jdurkin@jilldurkinlaw.com

Beverly Weiss Manne, Esquire
Counsel for ORAFI, Inc.; Proposed Special Counsel to Trustee
Tucker Arensberg, P.C.
One PPG Place, Suite 1500
Pittsburgh, PA 15222
bmanne@tuckerlaw.com

Kasey D. Bolton, Esquire
Counsel for ORAFI, Inc.; Proposed Special Counsel to Trustee
Tucker Arensberg, P.C.
300 Corporate Center Drive, Suite 200
Camp Hill, PA 17011
kbolton@tuckerlaw.com

Justin J. Gendler, Esquire
Counsel for ORAFI, Inc.; Proposed Special Counsel to Trustee
Gendler & Gendler, PLLC
P.O. Box 450135
Sunrise, FL 33345
jgendler@gendlerlawyers.com

ORAFI, Inc. d/b/a Timeless Jewelers
17616 Collins Avenue
Sunny Isles Beach, FL 33160

C. Stephen Gurdin, Jr., Esquire
Counsel for Debtor
67-69 Public Square, Suite 501
Wilkes-Barre, PA 18701-2512
stephen@gurdinlaw.com

Office of the United States Trustee
Sylvia H. Rambo United States Courthouse
1501 N. 6th St., Box 302
Harrisburg, PA 17102
USTPRegion03.HA.ECF@usdoj.gov

Geff Blake, Esquire
Counsel for Peter Malak
Blake & Walsh, LLC
436 Jefferson Avenue
Scranton, PA 18510
gblake@blakewalshlaw.com

Dated: July 31, 2026

/s/ Eric D. Bartels
**ERIC D. BARTELS, Pro Se**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**(WILKES-BARRE)**

| | |
|---|---|
| In re: | Chapter 7 |
| LUXURY TIME GLOBAL, LLC | Case No. 5:25-bk-00912-MJC |
| Debtor. | Matter: Docs. 151, 153 & 156 |

## CERTIFICATE OF USE OF GENERATIVE AI

Pursuant to Judge Mark J. Conway's published procedures concerning the use of generative artificial intelligence, I certify as follows:

**1.** The specific generative AI tool used was OpenAI's ChatGPT.

**2.** ChatGPT assisted with organization, initial drafting, editing, issue spotting, legal-research leads, citation formatting, the proposed order, and the certificate of service.

**3.** Before filing, I personally reviewed the filing, verified factual statements against the docket filings and records available to me, and checked the accuracy of the legal citations. I understand that I remain responsible for the filing and should not sign or file this certificate unless the foregoing statements are true.

Dated: July 31, 2026

Respectfully submitted,
/s/ Eric D. Bartels
**ERIC D. BARTELS, Pro Se**
Solely in His Individual Capacity
6 Dickinson Close
Moosic, PA 18507
570-479-7141
edb5020@gmail.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**(WILKES-BARRE)**

| | |
|---|---|
| In re: | Chapter 7 |
| LUXURY TIME GLOBAL, LLC | Case No. 5:25-bk-00912-MJC |
| Debtor. | Matter: Docs. 151, 153 & 156 |

**EXHIBIT B**
**IN RE TEAM SYSTEMS INTERNATIONAL, LLC**
**No. 22-10066 (CTG), D.I. 420**
**(Bankr. D. Del. Feb. 1, 2024)**

The unpublished decision cited by the Trustee is attached pursuant to L.B.R. 9013-2(d).

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

**CRAIG T. GOLDBLATT**
**JUDGE**

**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

February 1, 2024

**VIA CM/ECF**

Re: *In re Team Systems International, LLC*, No. 22-10066

Dear Counsel:

The Court held a hearing on January 30, 2024, on the trustee's application to retain Chipman Brown Cicero & Cole LLP as general bankruptcy counsel [D.I. 399].[1] After the hearing, the Court indicated that it would grant the motion and proceeded to set forth its reasons on the record. While the Court's explanation might have been clear enough to allow the parties to understand the basis for the Court's decision, in light of the possibility that the ruling may be subject to review, the Court has concluded that it could not in fairness require a reviewing court to make sense of the Court's oral ruling. This letter ruling is accordingly intended to replace the Court's oral observations and provide the basis for the Court's decision to overrule the objection and grant the trustee's application.[2]

This bankruptcy case was filed in January 2022 under chapter 11.[3] The debtor was in the government contracting business. After a multi-day evidentiary hearing on a motion to dismiss the bankruptcy case, the Court converted the case to one under

---

[1] Chipman Brown Cicero & Cole LLP is referred to as "Chipman Brown."

[2] The objecting defendants (as defined below) have separately moved to vacate the Court's January 31, 2024 bench ruling. D.I. 416. This decision to replace the bench ruling with this letter opinion essentially moots any challenge to the bench ruling. The Court believes, however, that the motion to vacate is in fact directed at the order this Court will enter granting the trustee's application. The Court will accordingly treat that order as being the subject of the motion to vacate, and will address that motion after it is fully briefed and before the Court for determination.

[3] D.I. 1.

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

chapter 7.[4] George L. Miller was appointed as interim trustee.[5] The Court authorized the trustee to retain Archer & Greiner as bankruptcy counsel under 11 U.S.C. § 327(a).[6]

The motion to dismiss the bankruptcy case was filed by the debtor's two largest creditors, GPDEV, LLC and Simons Exploration, Inc., both of which held judgments against the debtor relating to goods and services they provided to the debtor in connection with a government contract.[7] Those creditors' efforts to enforce their judgments are what led the debtor to file this bankruptcy case. After the case was converted to chapter 7, those creditors sought, at the § 341 meeting, to elect a chapter 7 trustee who would replace Miller and become the case trustee. After an evidentiary hearing, the Court concluded that while those judgment creditors were in fact entitled to elect a trustee, the trustee they selected was not eligible to serve under § 321 of the Bankruptcy Code. As a result, their effort to elect a trustee was unsuccessful and Miller remained in place as the case trustee.[8]

The bankruptcy case has been active and highly contentious. A large part of the reason for that has been an adversary proceeding that the trustee filed against the owners of the debtor, seeking the recovery of millions of dollars of transfers that the trustee alleges that the debtor made to the defendants in the period prior to the bankruptcy filing.[9]

There are other disputes, too. The objecting defendants take issue with what they describe as the trustee's failure to pursue estate receivables from the federal government that they contend would be sufficient, if recovered, to render the estate solvent and thereby obviate the fraudulent conveyance lawsuit. The trustee faults the objecting defendants for failure to cooperate sufficiently with his efforts to pursue those alleged receivables. At one point, the objecting defendants filed a motion seeking standing to act on behalf of the bankruptcy estate (in lieu of the chapter 7 trustee) to file claims and seek to recover on part of the alleged government receivable.[10] The trustee then filed a Rule 11 motion against the objecting

---

[4] D.I. 151.

[5] D.I. 152.

[6] D.I. 173.

[7] Those creditors are referred to as the "judgment creditors."

[8] *See* D.I. 228.

[9] *See Miller v. Mott, et al.,* Adv. Proc. No. 23-50004-CTG (Bankr. D. Del.). Certain of the defendants are the parties objecting to the retention of Chipman Brown. Those parties are referred to as the "objecting defendants."

[10] D.I. 328.

defendants, contending that there is no competent evidence supporting the alleged receivable and that counsel for the objecting defendants failed to conduct reasonable diligence before filing the standing motion. And while the objecting defendants have since withdrawn the standing motion, the parties remain in discovery with respect to the trustee's Rule 11 motion.[11]

One additional aspect of this case's procedural history is also relevant to the current motion. After the judgment creditors, Bering Straits Logistics Services, LLC is the debtor's next largest creditor.[12] While Bering Straits has not been particularly active in the bankruptcy case, it did participate (incidentally) in the hearing on the motion to dismiss, as well as the hearing on the contested trustee election. Bering Straits' lead counsel has been Cabot Christianson, P.C., an Alaska-based law firm. Chipman Brown had served as Bering Straits' Delaware counsel.

In November 2023, David W. Carickhoff and Bryan J. Hall, the two lawyers from Archer & Greiner who were most actively involved in the representation of the chapter 7 trustee, moved to Chipman Brown, thus precipitating the trustee's motion to retain Chipman Brown. Before Carickhoff and Hall joined Chipman Brown, Bering Straits consented to the substitution of Potter Anderson & Corroon LLP as its Delaware counsel, and the chapter 7 trustee agreed to engage separate counsel if he wished to proceed against Bering Straits.[13]

The objecting defendants object to the motion, claiming that Chipman Brown's prior representation of Bering Straits precludes it from serving as general bankruptcy counsel to the chapter 7 trustee.

## Analysis

### I. The objecting defendants lack standing to object to the retention under 11 U.S.C. § 327(c).

The Court begins with the presumption that the objecting defendants, who hold equity in the debtor, are parties-in-interest in the bankruptcy case and have standing to appear and be heard on any dispute that might affect the value of their equity interests in the debtor. But even accepting the broadest possible view of standing as a general matter, a provision of the Bankruptcy Code, 11 U.S.C. § 327(c),

---

[11] *See* D.I. 385.

[12] Bering Straits Logistics Services, LLC is referred to as "Bering Straits."

[13] D.I. 399-1 at 2 (Hall Declaration).

addresses who may object to the retention of counsel on account of that counsel's representation of a creditor. It provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.[14]

This language expressly and unambiguously limits standing to object to a retention in these circumstances to other creditors or the United States trustee. The objecting defendants are neither. They hold equity in the debtor but are not creditors. They therefore lack standing to raise this objection.

The objecting defendants respond to that argument by taking issue with the assertion that they are not creditors. Their basis for creditor status is 11 U.S.C § 502(h), which provides that "[a] claim arising from the recovery of property under section … 550 … of this title shall be determined, and shall be allowed … or disallowed … the same as if such claim had arisen before the date of the filing of the petition."[15]

Because the objecting defendants are being sued for a fraudulent conveyance, with the trustee's claim to recover the allegedly fraudulent conveyance arising under § 550, the objecting defendants assert that § 502(h) renders them creditors. But that is wrong. Section 502(h) does not *create* a claim, it merely addresses *when* a claim that might come into being as a result of the trustee's recovery of property would arise. The provision states that if one holds a claim that arises from the recovery of property under § 550, the claim is treated as a prepetition claim.

There are contexts in which this provision does important work. Consider a vendor that was owed $1,000 for goods or services provided before the bankruptcy and received payment in full on that claim in the 90-day period before the bankruptcy filing. The prepetition payment effectively allowed that creditor to be paid in full on its claim, while other general unsecured creditors would receive whatever *pro rata* distribution was available to similarly situated creditors. For our purposes, let's assume that is $.30 on the dollar.

---

[14] 11 U.S.C. § 327(c).

[15] 11 U.S.C. § 502(h).

Under 11 U.S.C. § 547, the trustee may be able to avoid the $1,000 payment as preferential and recover the $1,000 from the vendor. But if the trustee in bankruptcy can recover $1,000 from the vendor, then the vendor is *worse* off than it would have been had it not received the prepetition payment, in which case it would have come into bankruptcy holding a $1,000 claim on which it would have received a *pro rata* distribution of $300. Section 502(h) solves that problem. It allows the preference defendant who repays the $1,000 to assert a prepetition claim for $1,000, and thus receive whatever *pro rata* distribution other similarly situated creditors are receiving.

Section 502(h) may also have some application in a fraudulent conveyance case. Consider a customer of the debtor who (without any knowledge of the debtor's fraudulent intent) buys a widget from the debtor for $100 that was actually worth $1,000. Because the customer did not pay reasonably equivalent value, the transfer of the widget may be avoidable by the trustee in bankruptcy under 11 U.S.C. § 548. In that case, § 548(c) gives the customer a lien on the widget to the extent of the value it paid, here, $100. Section 502(h) thus allows the customer, after returning the widget, to assert its secured claim.

The objecting defendants argue that because they are being sued under § 550, they are creditors holding contingent claims under § 502(h). And the objecting creditors are right in their suggestion that the fact that all of this is contingent on what might happen the adversary proceeding does not matter. The Bankruptcy Code's definition of claim is extremely broad and expressly includes "contingent" claims.[16]

That is all fine and good. But in order to have standing, the objecting defendants must still describe some set of circumstances in which they might end up holding a claim. They are being sued for fraudulent conveyance, not a preference, so they are unlike the vendor whose prepetition claim against the debtor would be restored when it repays the preferential payment it received. And unlike the widget-buyer in the fraudulent conveyance example, there is no allegation or suggestion that the objecting defendants paid anything in exchange for the prepetition transfers the debtor made to them. Their position throughout the bankruptcy case has been that the alleged transfers were tantamount to dividends of profits that a solvent corporation might make to its shareholders on account of their ownership of the company. The objecting defendants (despite being given every opportunity to offer a theory) have made no suggestion that there is any circumstance in which they would hold a claim against the debtor. As such, they are not creditors. Under the plain

[16] *See* 11 U.S.C. § 101(5).

language of § 327(c), they may not object to the trustee's motion to retain Chipman Brown.

**II. Even if the objecting defendants had standing, their objection to the application would nevertheless be overruled because it lacks merit.**

In the alternative, however, the Court has little trouble finding Chipman Brown to satisfy the requirements of § 327(a) of the Bankruptcy Code. Section 327(a) provides that the "trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

In *In re Marvel Entertainment Group*, the Third Circuit described the standard under § 327(a) as one that depends on which of three categories is applicable:

> (1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion—pursuant to § 327(a) and consistent with § 327(c)—disqualify an attorney who has a potential conflict of interest and (3) the district court may not disqualify an attorney on the appearance of conflict alone.[17]

The Court is satisfied that Chipman Brown has no "actual conflict" that precludes its representation of the trustee. Bering Straits is a former rather than a present client of the firm's. And Bering Straits, which has the same lead counsel it has had throughout the case and new Delaware counsel, has not objected to the retention in any way.

At most, any conflict is "potential." And under *Marvel*, in the case of a "potential" conflict, the bankruptcy court has discretion to approve or disapprove the retention, based on the court's assessment of the totality of the circumstances. The objecting defendants contend that Bering Straits has some connection to the trustee's Rule 11 motion and that one or more lawyers at Chipman Brown may end up as witnesses in connection with that motion. And the objecting defendants further argue

[17] 140 F.3d 463, 476 (3d Cir. 1998). The objecting defendants urge the Court to apply the standard adopted by the Bankruptcy Court for the Northern District of Illinois in *In re Envirodyne Indust., Inc.*, 150 B.R. 1009 (Bankr. N.D. Ill. 1993). While the facts of *Envirodyne* are materially different from those here (the creditor in that case remained a client of the firm whose retention was at issue) such that it by no means clear that application of *Envirodyne*'s standard would lead to a different outcome in this case, this Court nevertheless believes it more appropriate to apply the principles set forth by the Third Circuit in *Marvel*.

that the trustee will be required to retain conflicts counsel to deal with any possible objection to the Bering Straits proof of claim.[18]

This Court's assessment, based on its experience in having presided over this highly contentious bankruptcy case for more than two years, is that whatever disputes the estate may have with Bering Straits are of relatively minor importance in the scheme of this bankruptcy case. And even if an attorney from Chipman Brown were to be called as a witness in the Rule 11 Motion, that possibility would not bar other attorneys from Chipman Brown from continuing as counsel to the trustee. Nonetheless, the objecting defendants have made no persuasive argument that such testimony will be relevant to the Rule 11 dispute.

In sum, on the totality of the record and based on the extensive knowledge that the attorneys now at Chipman Brown have obtained over the course of this very contentious bankruptcy case, the Court does not believe that the circumstances identified by the objecting defendants provide a sufficient basis to deny the trustee's application. The application will therefore be granted, and a separate order will be entered.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge

[18] That proof of claim was objected to immediately before the § 341 meeting. The objection was withdrawn without prejudice in December 2023. *See* D.I. 398.