FILED (EDSS)
**August 10, 2026**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Wilkes-Barre

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(WILKES-BARRE)**

| | |
|---|---|
| In re:<br>LUXURY TIME GLOBAL, LLC<br>Debtor. | Chapter 7<br>Case No. 5:25-bk-00912-MJC<br>Matter: Docs. 151, 153, 156 & 160 |

# ERIC DAVID BARTELS' LIMITED SUR-REPLY TO TRUSTEE'S REPLY [DOC. 156]

Pursuant to the Court's August 4, 2026 Order [Doc. 160], Eric David Bartels ("Bartels"), appearing pro se solely in his individual capacity, submits this Limited Sur-Reply to the Trustee's Reply [Doc. 156]. It is confined to matters raised or materially clarified in the Reply and does not replace or withdraw Bartels' prior objections and responses.

## PRELIMINARY STATEMENT

The Reply sharpens four issues relevant to the proposed employment: Bartels' limited participation under Rule 2018; asserted urgency and retrospective effectiveness; the 40% contingency trigger and any retainer; and safeguards arising from the current representation of ORAFI, Inc. ("ORAFI"). It identifies Bartels as the subject of potential claims and states that Tucker Arensberg, P.C. and Gendler & Gendler, PLLC (collectively, the "Firms") may investigate or pursue claims involving him. It also asserts that work in Malak v. Bartels, No. 3:26-cv-01222-JKM (M.D. Pa.) (the "Malak Action"), bears on the proposed 40% tier. Doc. 156 ¶¶ 26-28, 42-47 & at 12.

On July 24, 2026, counsel proposed for employment filed District Court Doc. 20 on the Trustee's behalf, and the Trustee filed Bankruptcy Doc. 152. Bartels cites those filings only as dated evidence of Trustee-side, litigation-related work while the Trustee's employment request was pending. Those filings make the disclosed scope, preapproval services, compensation terms, and ORAFI safeguards material now. Bartels does not seek to direct the Trustee's litigation decisions; he seeks limited participation so the Court can evaluate those matters on a complete record.

References to the Malak Action are limited to those employment, disclosure, and compensation issues. Bartels is represented by counsel in that action. This filing neither alters nor supplements any position taken through counsel there and is not a response, appearance, consent, or opposition in that action. All issues concerning claim ownership, substitution, intervention, referral, the automatic stay, merits, defenses, jurisdiction, and litigation strategy remain reserved for that court and counsel of record.

## I. BARTELS' EXPRESSLY IDENTIFIED STATUS AS THE SUBJECT OF POTENTIAL CLAIMS PROVIDES CONCRETE RULE 2018 CAUSE; TEAM SYSTEMS DOES NOT ELIMINATE THE COURT'S DISCRETION.

**1.** The Trustee's principal authority, In re Team Systems International, LLC, No. 22-10066 (CTG), 2024 Bankr. LEXIS 232, D.I. 420 (Bankr. D. Del. Feb. 1, 2024), addresses

whether noncreditor equity holders who were fraudulent-transfer defendants could invoke the creditor-specific objection mechanism in § 327(c). It does not analyze or decide Rule 2018(a). A copy accompanies this Sur-Reply as Attachment A pursuant to L.B.R. 9013-2(d).

**2.** Bartels does not claim creditor status, invoke § 327(c)'s creditor-specific objection mechanism, ask the Court to disqualify the Firms solely because they represent ORAFI, assert any right to an equity distribution, or seek to direct estate litigation. He seeks only the Court's discretionary, matter-specific permission under Rule 2018(a) to be heard on the present employment, retrospective-effectiveness, conflict-safeguard, scope, and compensation record.

**3.** Team Systems is materially distinguishable. There, the creditor was a former client of proposed counsel, successor counsel had been installed before the retention request, and the trustee agreed to use separate counsel for any action against that creditor. Team Systems at 3, 6-7. Here, ORAFI remains a current client, and the Firms rely on knowledge developed through that representation as a reason for selection and reduced estate startup costs. The Amended Application identifies formal conflicts-counsel triggers - an identified estate claim against ORAFI or directly adverse litigation - but does not define who conducts threshold review before those triggers, how ORAFI-related information is handled, or when responsibility is handed off. Doc. 151 ¶¶ 15, 18; Doc. 151-1 ¶¶ 17, 21, 26.

**4.** Rule 2018(a) is discretionary, and Bartels does not claim automatic leave. But the Trustee's assertion that he has no "economic or similar interest" disregards the record. The Amended Application's verified conflicts-search schedule identifies him as a "Potential Party in Interest," and the Reply identifies him as the subject of potential claims and among potential defendants. Doc. 151-1, Sch. 1; Doc. 156 ¶¶ 28, 33. This District's Local Rules define a "party in interest" as a person or entity who may be affected by a bankruptcy proceeding. L.B.R. 9001-1(j). Although Global Industrial construed § 1109(b) in a Chapter 11 case, its concrete-interest principle supports the Rule 2018 cause analysis: a party in interest has a "sufficient stake in the proceeding so as to require representation," and the inquiry looks to legally protected interests that could be affected by the bankruptcy proceeding. In re Global Industrial Technologies, Inc., 645 F.3d 201, 210-11 (3d Cir. 2011). This Sur-Reply does not claim an automatic right under that separate statute; it asks the Court to exercise Rule 2018's express discretion on the record here. The Trustee's stated intention to use the Firms in work potentially directed at Bartels gives him a concrete concern in the Firms' scope, preapproval services, and contingent compensation. Although that exposure does not confer an automatic right to intervene, together with the documented July 24 Trustee-side, litigation-related work and compensation issues it supplies a record basis for the Court to consider limited participation under Rule 2018(a). That relief would not give Bartels a veto over estate litigation or ask this Court to decide the Malak Action.

**5.** The Reply repeatedly cites Rule 2014(b) for application-content requirements. Doc. 156 ¶¶ 16, 31-32. Under the current rule, those requirements appear in Rule 2014(a)(2), the professional's verified statement is required by Rule 2014(a)(3), and Rule 2014(b) addresses services by members and associates of an employed firm. The citation error does not itself decide the Amended Application; the current rule controls.

## II. THE COURT MAY CONSIDER A CONFINED RESPONSE WITHOUT GRANTING A VETO OR ENDORSING DELAY.

**6.** The Court need not hold that every potential defendant has an automatic Rule 2018 right. It need only determine whether, on this record, narrowly confined participation will assist the Court in evaluating its own §§ 327 and 328 approval function on a complete record.

**7.** The Trustee's Reply and the present record do not fully resolve Bartels' confined procedural concern. They do not identify the particular preapproval services, the specific Recovery base to which the 40% tier would apply in connection with the July 24 filings, or the safeguards governing any estate-side use of ORAFI-related information and handoff before a matter becomes formally adverse to ORAFI. Rule 2018 permits the Court to confine Bartels' participation while leaving all estate-litigation decisions to the Trustee.

**8.** Bartels seeks disclosure and prospective safeguards, not immunity, delay, or control over targets, subpoenas, discovery, settlements, or any estate cause of action. Nothing requested prevents the Trustee from preserving a deadline, conducting an investigation, or seeking prospective counsel authority. If the Court finds immediate prospective employment appropriate, Bartels asks only that the expressly reserved issues not be decided by implication or on an incomplete record.

## III. DOC. 156 DOES NOT ESTABLISH AN AUGUST 2026 DEADLINE UNDER § 546(a).

**9.** The Reply does not identify a date on which § 546 will expire. Under §§ 301(b), 348(a), and 546(a)(1)(A), the two-year date is April 2, 2027. Section 546(a)(1)(B) runs from an appointment or election under one of its enumerated sections; In re American Pad & Paper Co. holds that an interim appointment under § 701 does not trigger that provision. Even if August 22, 2025 were used, its one-year date would be August 22, 2026 - earlier than April 2, 2027. Thus, the current record establishes no August 2026 deadline under § 546(a), subject to § 546(a)(2) and any claim-specific limitation period. 11 U.S.C. §§ 301(b), 348(a), 546(a); In re American Pad & Paper Co., 478 F.3d 546, 551-53 (3d Cir. 2007).

**10.** This is statutory arithmetic, not a disagreement with the Trustee's duty to investigate promptly. Nothing requested here would bar preservation of evidence, investigation, or timely pursuit of any claim subject to a separately identified limitation period. If the Trustee relies on a different limitation, tolling expiration, state-law period, contractual deadline, or other claim-specific date, the governing claim, provision, and calculation should be identified before the asserted time pressure is used to support retrospective employment or undefined fee treatment.

## IV. GENERAL URGENCY DOES NOT ESTABLISH THE PARTICULARIZED BASIS FOR RETROSPECTIVE APPROVAL.

**11.** The Reply invokes In re Bird, 396 B.R. 613, 616 (Bankr. M.D. Pa. 2008), for a standard requiring a hearing, satisfaction of § 327, and circumstances sufficiently extraordinary to warrant retrospective approval. Doc. 156 ¶ 43. F/S Airlease likewise requires a particularized analysis; useful work alone does not satisfy the extraordinary-circumstances standard. In re F/S Airlease II, Inc., 844 F.2d 99, 105-08 (3d Cir. 1988).

**12.** The Reply acknowledges that the First Application sought a different effective date and characterizes it as an "incorrect proposed effective date" corrected with other typographical matters. Doc. 156 ¶ 7. Bartels does not contend that the correction itself establishes misconduct. The Amended Application says the Firms began work on July 15, 2026. Doc. 151 ¶¶ 1, 13. The July 24 filings show Trustee-side litigation activity while the employment request was pending, but do not establish when drafting began. The current record does not identify the particular preapproval services, who performed them, when and why they began, or what compensation is sought for them under the contingent-fee arrangement. The filings are cited only for the timing and nature of services, not to invite resolution of the relief requested in either filing.

**13.** The Trustee filed the First Application on July 15, 2026, the same date the Amended Application says the Firms began work. That is not a months-late request. But prompt filing alone does not establish extraordinary circumstances for pre-order employment or explain the treatment of pre-order services. At the hearing, the Trustee and the Firms should identify those services, why they could not await an order, their scope and conflict status, and the compensation sought.

**14.** The Court should reserve retrospective effectiveness and compensation until the September 10, 2026 hearing and any further process it directs. Any retrospective relief should rest on a current verified record addressing the pre-order services, why they began before approval, their scope and conflict status, and the compensation sought. This would leave the Trustee free to seek prospective employment.

## V. THE ASSERTED 40% TIER AND "GENERAL RETAINER" LANGUAGE REQUIRE SPECIFIC, VERIFIED CLARIFICATION.

**15.** Current Rule 2014(a)(2)(E) requires an employment application to state specific facts showing any proposed arrangement for compensation. The Engagement Letter and Amended Application provide for a 35% or 40% contingent fee on the defined term "Recovery," with the 40% tier triggered by filing a lawsuit, adversary proceeding, arbitration, or other formal proceeding. Doc. 151 ¶¶ 21-22 & n.1; Doc. 147-2 at 2-3; see Doc. 156 ¶ 35. Because compensation terms approved under § 328(a) may constrain later review only when the retention order expressly and unambiguously approves the specific terms, clarity at retention protects the estate, the Firms, and the Court. Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253, 261-62 (3d Cir. 1995).

**16.** The Reply treats proposed substitution or intervention in the Malak Action as satisfying the Engagement Letter's formal-proceeding trigger. Doc. 156 ¶ 47. The July 24 filings confirm Trustee-side, litigation-related work in that action. The Trustee and the Firms should therefore identify the "applicable Litigation Matter" deemed triggered and the "Recoveries" they contend fall within the 40% tier. This is solely a compensation-disclosure issue.

**17.** Before approving any arrangement that may apply the 40% tier to an estate Recovery associated with the July 24 services, the Court should require verified, nonprivileged clarification of: (a) whether those services are within the current engagement; (b) whether the engagement was modified in writing to include them; (c) the category of estate Recovery, if any, that the Firms would treat as a covered Recovery; (d) treatment of costs, expenses, and any mixed recovery; and (e) work performed before entry of an employment order. This request concerns employment and compensation disclosure only.

18. The Reply gives substantive meaning to the proposed order's phrase "general retainer," explaining that it refers to a limited upfront payment of attorney fees. Doc. 156 ¶ 49(1). Bartels does not allege that a general retainer, advance, credit, or other payment arrangement exists. But if the Trustee relies on any such arrangement in support of the requested employment or compensation terms, the record should identify its payer, amount, date, ownership, terms, application to Trustee-side work, and any credit against the contingency fee. If no general retainer is part of the engagement, that phrase should not be included in the proposed order.

## VI. THE FIRMS' CURRENT ORAFI REPRESENTATION REQUIRES DEFINED SAFEGUARDS.

**19.** The Reply says the Trustee will decide whether ORAFI should be investigated and that separate counsel can be retained later. Doc. 156 ¶ 40. Bartels does not contend that representation of a creditor alone automatically disqualifies the Firms. See 11 U.S.C. § 327(c). The narrower question is how the Amended Application's own exclusion of ORAFI-adverse matters will operate. Any supplement or order should confirm that the Firms will not evaluate, advise on, or undertake an ORAFI-adverse matter and should identify when the Trustee or properly retained conflicts counsel assumes responsibility.

**20.** The Firms rely on familiarity and knowledge developed through the ORAFI representation as reasons for selection and reduced estate startup cost. That reliance makes prospective safeguards material. Any order should confirm that the Firms may use only information they are permitted to use for the estate, will preserve all duties owed to ORAFI, will not handle an ORAFI-adverse matter, and will promptly transfer any such matter to the Trustee or properly retained conflicts counsel.

**21.** The requested safeguard is limited. The Court can approve appropriately defined prospective work while expressly excluding ORAFI-adverse matters pending further disclosure and order. That approach protects the estate without impairing investigation of other potential transfers.

## VII. REQUESTED LIMITED RELIEF

WHEREFORE, Bartels respectfully requests that the Court:

**(a)** consider this Court-authorized Limited Sur-Reply together with Documents 151, 153, and 156 in deciding the Amended Application;

**(b)** expressly decide the Rule 2018 request and permit Bartels limited, matter-specific participation solely concerning the employment record, retrospective effectiveness, conflict safeguards, scope, and compensation terms;

**(c)** consider any timely response and the complete record at the scheduled September 10, 2026 hearing before deciding the Amended Application;

**(d)** recognize that the current record does not establish an August 2026 deadline under § 546(a) and require identification of any different claim-specific deadline relied upon;

**(e)** deny or reserve retrospective effectiveness and preapproval compensation unless and until the Court determines, on a current verified record and after any process the Court directs, that retrospective approval is warranted;

**(f)** require a verified, nonprivileged supplement identifying the preapproval services; compensation sought for any estate Recovery connected to the July 24 filings; the 40% Recovery base; treatment of mixed recoveries and expenses; and the factual basis for any "general retainer";

**(g)** require a verified, nonprivileged supplement confirming the scope of the current ORAFI representation, exclusion of ORAFI-adverse work, compliance with applicable confidentiality duties, and prompt handoff to the Trustee or properly retained conflicts counsel if an ORAFI-adverse matter arises;

**(h)** alternatively, if employment is approved after the scheduled hearing, approve it prospectively, exclude ORAFI-adverse work pending further disclosure and order, and reserve retrospective compensation and application of the 40% tier to any Recovery associated with the July 24 services pending verified clarification; and

**(i)** grant such other relief as is just.

Dated: August 10, 2026

Respectfully submitted,
/s/ Eric D. Bartels

**ERIC D. BARTELS, Pro Se**
Solely in His Individual Capacity
6 Dickinson Close, Moosic, PA 18507
570-479-7141 | edb5020@gmail.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**(WILKES-BARRE)**

| | |
|---|---|
| In re: | Chapter 7 |
| LUXURY TIME GLOBAL, LLC | Case No. 5:25-bk-00912-MJC |
| Debtor. | Matter: Docs. 151, 153, 156 & 160 |

## CERTIFICATE OF SERVICE

I certify that on August 10, 2026, I served a true and correct copy of the foregoing Limited Sur-Reply to Trustee's Reply [Doc. 156], the Certificate of Use of Generative AI, and Attachment A (In re Team Systems International, LLC) by first-class United States mail, postage prepaid, upon the following recipients:

Jill E. Durkin, Esquire
Chapter 7 Trustee
Durkin Law, LLC
401 Marshbrook Road
Factoryville, PA 18419

Kasey D. Bolton, Esquire
Counsel for ORAFI, Inc.; Proposed Special Counsel to Trustee
Tucker Arensberg, P.C.
300 Corporate Center Drive, Suite 200
Camp Hill, PA 17011
ORAFI, Inc. d/b/a Timeless Jewelers
17616 Collins Avenue
Sunny Isles Beach, FL 33160

Kenneth G. Lau, Trial Attorney
Counsel for Office of the United States Trustee
U.S. Department of Justice - U.S. Trustee Program
125 Ottawa Avenue NW, Suite 200R
Grand Rapids, MI 49503

Beverly Weiss Manne, Esquire
Counsel for ORAFI, Inc.; Proposed Special Counsel to Trustee
Tucker Arensberg, P.C.
One PPG Place, Suite 1500
Pittsburgh, PA 15222
Justin J. Gendler, Esquire
Counsel for ORAFI, Inc.; Proposed Special Counsel to Trustee
Gendler & Gendler, PLLC
P.O. Box 450135
Sunrise, FL 33345
C. Stephen Gurdin, Jr., Esquire
Counsel for Debtor
67-69 Public Square, Suite 501
Wilkes-Barre, PA 18701-2512
Geff Blake, Esquire
Counsel for Peter Malak
Blake & Walsh, LLC
436 Jefferson Avenue
Scranton, PA 18510

Dated: August 10, 2026

/s/ Eric D. Bartels
**ERIC D. BARTELS, Pro Se**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**(WILKES-BARRE)**

| | |
|---|---|
| In re:<br>LUXURY TIME GLOBAL, LLC<br>Debtor. | Chapter 7<br>Case No. 5:25-bk-00912-MJC<br>Matter: Docs. 151, 153, 156 & 160 |

## CERTIFICATE OF USE OF GENERATIVE AI

Pursuant to Judge Mark J. Conway's published procedures concerning the use of generative artificial intelligence, I certify as follows:

**1.** The specific generative AI tool used was OpenAI's ChatGPT.

**2.** OpenAI's ChatGPT assisted with organization, drafting, revision, issue spotting, legal-research leads, and citation formatting throughout pages 1-6 of the Limited Sur-Reply. It also assisted with drafting the Certificate of Service and this certificate. Attachment A was not generated or altered by AI.

**3.** Before filing, I personally reviewed the entire filing, verified its factual assertions against the cited docket materials and records available to me, and checked the accuracy of every citation and legal authority, including every AI-assisted portion. I adopt the filing as my own and remain solely responsible for its contents.

Dated: August 10, 2026

Respectfully submitted,
/s/ Eric D. Bartels
**ERIC D. BARTELS, Pro Se**
Solely in His Individual Capacity
6 Dickinson Close
Moosic, PA 18507
570-479-7141
edb5020@gmail.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**(WILKES-BARRE)**

| | |
|---|---|
| In re: | Chapter 7 |
| LUXURY TIME GLOBAL, LLC | Case No. 5:25-bk-00912-MJC |
| Debtor. | Matter: Docs. 151, 153, 156 & 160 |

**ATTACHMENT A**
**UNPUBLISHED AUTHORITY SUBMITTED PURSUANT TO L.B.R. 9013-2(d)**
**IN RE TEAM SYSTEMS INTERNATIONAL, LLC**
**No. 22-10066 (CTG), D.I. 420**
**(Bankr. D. Del. Feb. 1, 2024)**

The complete unpublished decision cited by the Trustee follows this cover page.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

**CRAIG T. GOLDBLATT**
**JUDGE**

**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

February 1, 2024

**VIA CM/ECF**

Re: *In re Team Systems International, LLC*, No. 22-10066

Dear Counsel:

The Court held a hearing on January 30, 2024, on the trustee's application to retain Chipman Brown Cicero & Cole LLP as general bankruptcy counsel [D.I. 399].[1] After the hearing, the Court indicated that it would grant the motion and proceeded to set forth its reasons on the record. While the Court's explanation might have been clear enough to allow the parties to understand the basis for the Court's decision, in light of the possibility that the ruling may be subject to review, the Court has concluded that it could not in fairness require a reviewing court to make sense of the Court's oral ruling. This letter ruling is accordingly intended to replace the Court's oral observations and provide the basis for the Court's decision to overrule the objection and grant the trustee's application.[2]

This bankruptcy case was filed in January 2022 under chapter 11.[3] The debtor was in the government contracting business. After a multi-day evidentiary hearing on a motion to dismiss the bankruptcy case, the Court converted the case to one under

[1] Chipman Brown Cicero & Cole LLP is referred to as "Chipman Brown."

[2] The objecting defendants (as defined below) have separately moved to vacate the Court's January 31, 2024 bench ruling. D.I. 416. This decision to replace the bench ruling with this letter opinion essentially moots any challenge to the bench ruling. The Court believes, however, that the motion to vacate is in fact directed at the order this Court will enter granting the trustee's application. The Court will accordingly treat that order as being the subject of the motion to vacate, and will address that motion after it is fully briefed and before the Court for determination.

[3] D.I. 1.

chapter 7.[4] George L. Miller was appointed as interim trustee.[5] The Court authorized the trustee to retain Archer & Greiner as bankruptcy counsel under 11 U.S.C. § 327(a).[6]

The motion to dismiss the bankruptcy case was filed by the debtor's two largest creditors, GPDEV, LLC and Simons Exploration, Inc., both of which held judgments against the debtor relating to goods and services they provided to the debtor in connection with a government contract.[7] Those creditors' efforts to enforce their judgments are what led the debtor to file this bankruptcy case. After the case was converted to chapter 7, those creditors sought, at the § 341 meeting, to elect a chapter 7 trustee who would replace Miller and become the case trustee. After an evidentiary hearing, the Court concluded that while those judgment creditors were in fact entitled to elect a trustee, the trustee they selected was not eligible to serve under § 321 of the Bankruptcy Code. As a result, their effort to elect a trustee was unsuccessful and Miller remained in place as the case trustee.[8]

The bankruptcy case has been active and highly contentious. A large part of the reason for that has been an adversary proceeding that the trustee filed against the owners of the debtor, seeking the recovery of millions of dollars of transfers that the trustee alleges that the debtor made to the defendants in the period prior to the bankruptcy filing.[9]

There are other disputes, too. The objecting defendants take issue with what they describe as the trustee's failure to pursue estate receivables from the federal government that they contend would be sufficient, if recovered, to render the estate solvent and thereby obviate the fraudulent conveyance lawsuit. The trustee faults the objecting defendants for failure to cooperate sufficiently with his efforts to pursue those alleged receivables. At one point, the objecting defendants filed a motion seeking standing to act on behalf of the bankruptcy estate (in lieu of the chapter 7 trustee) to file claims and seek to recover on part of the alleged government receivable.[10] The trustee then filed a Rule 11 motion against the objecting

---

[4] D.I. 151.

[5] D.I. 152.

[6] D.I. 173.

[7] Those creditors are referred to as the "judgment creditors."

[8] *See* D.I. 228.

[9] *See Miller v. Mott, et al.,* Adv. Proc. No. 23-50004-CTG (Bankr. D. Del.). Certain of the defendants are the parties objecting to the retention of Chipman Brown. Those parties are referred to as the "objecting defendants."

[10] D.I. 328.

defendants, contending that there is no competent evidence supporting the alleged receivable and that counsel for the objecting defendants failed to conduct reasonable diligence before filing the standing motion. And while the objecting defendants have since withdrawn the standing motion, the parties remain in discovery with respect to the trustee's Rule 11 motion.[11]

One additional aspect of this case's procedural history is also relevant to the current motion. After the judgment creditors, Bering Straits Logistics Services, LLC is the debtor's next largest creditor.[12] While Bering Straits has not been particularly active in the bankruptcy case, it did participate (incidentally) in the hearing on the motion to dismiss, as well as the hearing on the contested trustee election. Bering Straits' lead counsel has been Cabot Christianson, P.C., an Alaska-based law firm. Chipman Brown had served as Bering Straits' Delaware counsel.

In November 2023, David W. Carickhoff and Bryan J. Hall, the two lawyers from Archer & Greiner who were most actively involved in the representation of the chapter 7 trustee, moved to Chipman Brown, thus precipitating the trustee's motion to retain Chipman Brown. Before Carickhoff and Hall joined Chipman Brown, Bering Straits consented to the substitution of Potter Anderson & Corroon LLP as its Delaware counsel, and the chapter 7 trustee agreed to engage separate counsel if he wished to proceed against Bering Straits.[13]

The objecting defendants object to the motion, claiming that Chipman Brown's prior representation of Bering Straits precludes it from serving as general bankruptcy counsel to the chapter 7 trustee.

## Analysis

### I. The objecting defendants lack standing to object to the retention under 11 U.S.C. § 327(c).

The Court begins with the presumption that the objecting defendants, who hold equity in the debtor, are parties-in-interest in the bankruptcy case and have standing to appear and be heard on any dispute that might affect the value of their equity interests in the debtor. But even accepting the broadest possible view of standing as a general matter, a provision of the Bankruptcy Code, 11 U.S.C. § 327(c),

---

[11] *See* D.I. 385.

[12] Bering Straits Logistics Services, LLC is referred to as "Bering Straits."

[13] D.I. 399-1 at 2 (Hall Declaration).

Case 22-10066-CTG Doc 426 Filed 02/01/24 Page 4 of 7



addresses who may object to the retention of counsel on account of that counsel's representation of a creditor. It provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.[14]

This language expressly and unambiguously limits standing to object to a retention in these circumstances to other creditors or the United States trustee. The objecting defendants are neither. They hold equity in the debtor but are not creditors. They therefore lack standing to raise this objection.

The objecting defendants respond to that argument by taking issue with the assertion that they are not creditors. Their basis for creditor status is 11 U.S.C § 502(h), which provides that "[a] claim arising from the recovery of property under section … 550 … of this title shall be determined, and shall be allowed … or disallowed … the same as if such claim had arisen before the date of the filing of the petition."[15]

Because the objecting defendants are being sued for a fraudulent conveyance, with the trustee's claim to recover the allegedly fraudulent conveyance arising under § 550, the objecting defendants assert that § 502(h) renders them creditors. But that is wrong. Section 502(h) does not *create* a claim, it merely addresses *when* a claim that might come into being as a result of the trustee's recovery of property would arise. The provision states that if one holds a claim that arises from the recovery of property under § 550, the claim is treated as a prepetition claim.

There are contexts in which this provision does important work. Consider a vendor that was owed $1,000 for goods or services provided before the bankruptcy and received payment in full on that claim in the 90-day period before the bankruptcy filing. The prepetition payment effectively allowed that creditor to be paid in full on its claim, while other general unsecured creditors would receive whatever *pro rata* distribution was available to similarly situated creditors. For our purposes, let's assume that is $.30 on the dollar.

---

[14] 11 U.S.C. § 327(c).

[15] 11 U.S.C. § 502(h).

Under 11 U.S.C. § 547, the trustee may be able to avoid the $1,000 payment as preferential and recover the $1,000 from the vendor. But if the trustee in bankruptcy can recover $1,000 from the vendor, then the vendor is *worse* off than it would have been had it not received the prepetition payment, in which case it would have come into bankruptcy holding a $1,000 claim on which it would have received a *pro rata* distribution of $300. Section 502(h) solves that problem. It allows the preference defendant who repays the $1,000 to assert a prepetition claim for $1,000, and thus receive whatever *pro rata* distribution other similarly situated creditors are receiving.

Section 502(h) may also have some application in a fraudulent conveyance case. Consider a customer of the debtor who (without any knowledge of the debtor's fraudulent intent) buys a widget from the debtor for $100 that was actually worth $1,000. Because the customer did not pay reasonably equivalent value, the transfer of the widget may be avoidable by the trustee in bankruptcy under 11 U.S.C. § 548. In that case, § 548(c) gives the customer a lien on the widget to the extent of the value it paid, here, $100. Section 502(h) thus allows the customer, after returning the widget, to assert its secured claim.

The objecting defendants argue that because they are being sued under § 550, they are creditors holding contingent claims under § 502(h). And the objecting creditors are right in their suggestion that the fact that all of this is contingent on what might happen the adversary proceeding does not matter. The Bankruptcy Code's definition of claim is extremely broad and expressly includes "contingent" claims.[16]

That is all fine and good. But in order to have standing, the objecting defendants must still describe some set of circumstances in which they might end up holding a claim. They are being sued for fraudulent conveyance, not a preference, so they are unlike the vendor whose prepetition claim against the debtor would be restored when it repays the preferential payment it received. And unlike the widget-buyer in the fraudulent conveyance example, there is no allegation or suggestion that the objecting defendants paid anything in exchange for the prepetition transfers the debtor made to them. Their position throughout the bankruptcy case has been that the alleged transfers were tantamount to dividends of profits that a solvent corporation might make to its shareholders on account of their ownership of the company. The objecting defendants (despite being given every opportunity to offer a theory) have made no suggestion that there is any circumstance in which they would hold a claim against the debtor. As such, they are not creditors. Under the plain

[16] *See* 11 U.S.C. § 101(5).

language of § 327(c), they may not object to the trustee's motion to retain Chipman Brown.

## II. Even if the objecting defendants had standing, their objection to the application would nevertheless be overruled because it lacks merit.

In the alternative, however, the Court has little trouble finding Chipman Brown to satisfy the requirements of § 327(a) of the Bankruptcy Code. Section 327(a) provides that the "trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

In *In re Marvel Entertainment Group*, the Third Circuit described the standard under § 327(a) as one that depends on which of three categories is applicable:

> (1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion—pursuant to § 327(a) and consistent with § 327(c)—disqualify an attorney who has a potential conflict of interest and (3) the district court may not disqualify an attorney on the appearance of conflict alone.[17]

The Court is satisfied that Chipman Brown has no "actual conflict" that precludes its representation of the trustee. Bering Straits is a former rather than a present client of the firm's. And Bering Straits, which has the same lead counsel it has had throughout the case and new Delaware counsel, has not objected to the retention in any way.

At most, any conflict is "potential." And under *Marvel*, in the case of a "potential" conflict, the bankruptcy court has discretion to approve or disapprove the retention, based on the court's assessment of the totality of the circumstances. The objecting defendants contend that Bering Straits has some connection to the trustee's Rule 11 motion and that one or more lawyers at Chipman Brown may end up as witnesses in connection with that motion. And the objecting defendants further argue

---

[17] 140 F.3d 463, 476 (3d Cir. 1998). The objecting defendants urge the Court to apply the standard adopted by the Bankruptcy Court for the Northern District of Illinois in *In re Envirodyne Indust., Inc.*, 150 B.R. 1009 (Bankr. N.D. Ill. 1993). While the facts of *Envirodyne* are materially different from those here (the creditor in that case remained a client of the firm whose retention was at issue) such that it by no means clear that application of *Envirodyne*'s standard would lead to a different outcome in this case, this Court nevertheless believes it more appropriate to apply the principles set forth by the Third Circuit in *Marvel*.

that the trustee will be required to retain conflicts counsel to deal with any possible objection to the Bering Straits proof of claim.[18]

This Court's assessment, based on its experience in having presided over this highly contentious bankruptcy case for more than two years, is that whatever disputes the estate may have with Bering Straits are of relatively minor importance in the scheme of this bankruptcy case. And even if an attorney from Chipman Brown were to be called as a witness in the Rule 11 Motion, that possibility would not bar other attorneys from Chipman Brown from continuing as counsel to the trustee. Nonetheless, the objecting defendants have made no persuasive argument that such testimony will be relevant to the Rule 11 dispute.

In sum, on the totality of the record and based on the extensive knowledge that the attorneys now at Chipman Brown have obtained over the course of this very contentious bankruptcy case, the Court does not believe that the circumstances identified by the objecting defendants provide a sufficient basis to deny the trustee's application. The application will therefore be granted, and a separate order will be entered.

Sincerely,



Craig T. Goldblatt
United States Bankruptcy Judge

[18] That proof of claim was objected to immediately before the § 341 meeting. The objection was withdrawn without prejudice in December 2023. *See* D.I. 398.