# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>Luxury Time Global, LLC,<br><br>Debtor | Bankruptcy Case No. **5:25-bk-00912-MJC** |
| Eric D. Bartels,<br>Appellant,<br><br>**v.**<br><br>Jill E. Durkin, Trustee,<br>Appellee. | Civil Action No. 3:26-cv-02620-KM |

## APPELLEE'S MOTION TO DISMISS APPEAL FOR LACK OF STANDING AND TO SUSPEND BRIEFING SCHEDULE

Jill E. Durkin, Chapter 7 Trustee (the "**Trustee**") for the estate of Luxury Time Global, LLC (the "**Debtor**") files this Motion to Dismiss Appeal seeking an order of dismissal of the appeal filed by Eric David Bartels ("Bartels" or "Appellant") (ECF No. 1) appealing the Bankruptcy Court Order granting the Trustee's *Amended Application to Employ Special Counsel* (the "**Amended Application**") pursuant to Rules 8013, 8004 and 8014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), because Appellant lacks standing to appeal. The Trustee also asks that the briefing schedule be suspended pending

disposition of this Motion. In support of this motion (the "Motion"), the Trustee respectfully states as follows:

## Preliminary Statement

Luxury Time Global, LLC sold luxury watches. It reported $15,406,666 in gross revenue for 2024 and filed this case in April 2025 with $2,501.00 in scheduled assets, one dollar of which was cash, against $2,280,519.61 in unsecured debt. The United States Trustee's Bankruptcy Auditor reviewed the Debtor's bank records and swore that "in each and every month" from January 2024 through March 2025, Eric D. Bartels, its sole member, placed wagers "from Debtor's business checking account," causing "a net loss for each of those 15 months, with a combined net loss of no less than $(4,667,586.85)." Bankr. Doc. 73 ¶¶ 10–11. The case converted to Chapter 7, and the Trustee retained special counsel on a contingency to recover voidable transfers. That retention order is the order on appeal.

Appellant is not a creditor of the Debtor. He is its sole member. Section 327(c) makes a professional's representation of a creditor disqualifying only on objection by "another creditor or the United States trustee," and Appellant is neither. He objected anyway, in five written submissions. The United States Trustee did not object. No creditor objected, and one told the Bankruptcy Court he was "in favor for it a hundred percent." Tr. 11:24. The court questioned proposed counsel about the relationship Appellant complained of, found no actual conflict, heard him twice, and

asked what cause supported his request to be heard under Rule 2018(a). Appellant answered that he is a defendant in a pending action. The court ruled that "Mr. Bartels is not a creditor. He's not the U.S. Trustee. So I don't think he has standing to object," and that "he has not given the Court any cause, really, other than he's a defendant." Tr. 21:10–20.

Bankruptcy appellate standing is narrower than Article III standing. It reaches only a "person aggrieved," one whose rights or interests are "directly and adversely affected pecuniarily" by the order on appeal. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004). Appellant concedes the Retention Order does nothing of the kind. It "does not itself impose liability, decide a defense, transfer ownership of claims, or compel disclosure," Br. 21; the Trustee "could investigate through other qualified counsel," Br. 15; and any surplus would "return… to LTG," leaving him "a possible effect on his sole membership interest, not creditor status or a direct personal entitlement to estate funds," Br. 16. Appellant cites the closest case himself and tries to distinguish it. Br. 20. But *In re Technicool Systems, Inc.*, 896 F.3d 382 (5th Cir. 2018) is this case: the sole owner of a Chapter 7 debtor appealed a § 327(a) order approving special counsel who also represented the largest creditor, on a theory that a surplus would otherwise reach him, and the Fifth Circuit dismissed. "This speculative prospect of harm is far from a direct, adverse, pecuniary hit. [The

owner] must clear a higher standing hurdle: **The order must burden his pocket before he burdens a docket.**" *Id.* at 386 (5th Cir. 2018) (emphasis added).

## BACKGROUND

(1) On April 2, 2025 (the "**Petition Date**"), the Debtor filed a small business Chapter 11 case in the United States Bankruptcy Court for the Middle District of Pennsylvania at Case No. 5:25-bk-00912 (the "Bankruptcy Case").

(2) The Debtor moved to dismiss its own case [BK ECF No. 77], and the Office of the United States Trustee (the "UST") separately moved to convert or dismiss under 11 U.S.C. § 1112(b) [BK ECF No. 42] (the "Motion to Convert"). The UST, the Debtor and the Subchapter V trustee stipulated to conversion [BK ECF No. 91], and the Bankruptcy Court approved that stipulation on August 22, 2025 [BK ECF No. 92]. The Court made no findings of cause.

(3) In support of the Motion to Convert, on July 8, 2025, Nicole Watson, a Bankruptcy Auditor employed by the Office of the United States Trustee for the Middle District of Pennsylvania and assigned to review the above-captioned case (the "**Auditor**") filed a Declaration in Support of the Motion to Convert [BK ECF No. 73] (the "**Declaration**").

(4) The Declaration reports that the Debtor scheduled $2,501.00 in total assets, consisting of vacant jewelry display cases valued at $2,500 and a $1.00

combined balance in its business checking and savings accounts; no secured debt; and $2,280,519.61 in non-priority unsecured debt. Decl. ¶¶ 5–6.

(5) The Auditor analyzed the Debtor's bank statements for January 2024 through March 2025 and found that "in each and every month" of that period Bartels "engaged in numerous and repeated online gambling transactions, betting amounts varying from several hundred dollars to tens of thousands of dollars in wagers from Debtor's business checking account" at eleven named casinos and sportsbooks. Decl. ¶ 10. Those activities, together with in-person ATM withdrawals at three Pennsylvania casinos, "resulted in a net loss for each of those 15 months, with a combined net loss of no less than $(4,667,586.85)." Decl. ¶ 11.

(6) Over the same fifteen months, $11,082,584.72 moved from Bartels's personal accounts into the Debtor and at least $9,981,168.51 moved from the Debtor into his personal accounts. Decl. ¶ 13. In the final nine months, as the Debtor's cash flow deteriorated, a net $649,896.19 was "siphoned from the Debtor's business checking and savings accounts into Mr. Bartels' various personal checking and savings accounts." Decl. ¶ 14.

(7) On July 15, 2026, Trustee filed her Application to Employ the law firms of Tucker Arensberg, P.C. and Gendler & Gendler, PLLC (collectively, the

"**Firms**") [BK ECF No. 147][1] (the "**First Application**") and on July 24, 2026, the Trustee filed an amended application to retain on a contingent fee basis, *nunc pro tunc* [BK ECF No. 151] (the "**Amended Application**"). See ECF No. 4-8.

(8) Bartels filed an objection [BK ECF No. 148] to the First Application, a "Renewed and Supplemental" objection to the Amended Application [BK ECF No. 153] (the "**Renewed Objection**"), an, a Sur-Reply to the Trustee's Reply [bk ECF No. 156] to the Renewed Objection (collectively the "**Objections**"), challenging the Trustee's efforts to obtain special counsel under the guise of having "cause" to intervene in the Amended Application under Bankruptcy Rule 2018. ECF No. 4.

(9) Bartels is not a creditor of the Debtor. His relationship with the Bankruptcy Cases is that he is the equity holder—"the 100 percent member"—of the Debtor. Transcript, p. 12, lines 2-12.

(10) Appellant is not listed as a creditor on the Debtor's Schedule E/F, which he signed. Schedule H lists him as a codebtor on eleven of the twelve scheduled claims. BK ECF No. 25.

(11) The Bankruptcy Court held a hearing on the Retention Application held on September 10, 2026. Both the Trustee, through counsel, and Mr. Bartels, *pro se*, had an opportunity to state their positions to the Bankruptcy Court. Additionally, a

[1] These pleadings were designated by Appellant as part of the Record AND were also filed by Appellant at Doc. 4.

representative of the Office of the United States Trustee's office appeared and was heard.

(12) The Trustee argued that Mr. Bartels, as an equity holder, is not a creditor of the Debtors, and not a party in interest in the Bankruptcy Cases, and therefore Bartels lacked standing to challenge the Trustee's proposed retention of special counsel on behalf of the Estates.

(13) The Bankruptcy Court questioned and heard from proposed counsel regarding their relationship with the largest unsecured creditor in the case, bearing on potential conflicts of interest. ECF No. 4-28; Transcript, pp. 7, lines 2-3; pp.8-11. The Bankruptcy Court also inquired of both the United States Trustee and the Trustee concerning retention of the Firms and the issue of conflicts.

(14) The UST was asked for its position and stated: "we reviewed the application; we did not file an objection." Tr. 11:7–10. The UST added that "the application is appropriate and ripe for the Court to consider" and that "based on our review, we do not find it objectionable." Tr. 21:3–6.

(15) No creditor objected. The Bankruptcy Court asked a creditor present at the hearing whether he had "any objection to this application," and he answered: "I'm in favor for it a hundred percent." Tr. 11:17–24.

(16) The Bankruptcy Court overruled the Objection and approved the retention. It ruled: "under Section 327, Mr. Bartels is not a creditor. He's not the

U.S. Trustee. So I don't think he has standing to object. Under 2018, I think I have quite a bit of discretion. And if… I found cause to allow him to have standing for this particular matter, I would go to the next step and hear about the actual objection and the need for that. But he has not given the Court any cause, really, other than he's a defendant in… a State Court action that's already been filed or a Federal Court." Tr. 21:10–20.

(17) On September 11, 2026, the Bankruptcy Court entered an *Order Granting Trustee's Application for Approval of Retention of the Firms as Special Counsel and for Related Relief* [BK ECF 181] (the "Retention Order"), overruling the Objection and granting the Retention Application.

(18) On the same day, Bartels filed his Notice of Appeal [BK ECF 182, ECF 1] commencing the above-captioned appeal (the "Appeal") of the Retention Order in the United States District Court for the Middle District of Pennsylvania (this "Court").

(19) In his opening brief, Appellant states his theory of appellate standing as a combination of three considerations:

> The asserted injury is the combined effect of that allegedly inadequately examined arrangement on the fairness of the estate's participation in litigation against Bartels, rejection of his specific request to address its terms, and the possible effect of the approved gross-recovery compensation on residual estate value…. Bartels does not rest on any one of those considerations alone.

Br. 18.

(20) As to the first, Appellant states that "[t]he Trustee could investigate through other qualified counsel, so the prospect of examination alone does not establish an injury caused by retaining these firms or prove a disqualifying conflict." Br. 15. He further states that "the existing civil filings alone do not establish standing: Doc. 181 does not itself impose liability, decide a defense, transfer ownership of claims, or compel disclosure." Br. 21.

(21) As to the third, Appellant states that if estate property ever exceeded all allowed claims and expenses, § 726(a)(6) "would return any residue to LTG," and that he asserts "a possible effect on his sole membership interest, not creditor status or a direct personal entitlement to estate funds." He states that the comparison "does not prove a collectible recovery or surplus," because the identified transactions "may include overlapping or defensible transactions, scheduled liabilities are not necessarily allowed claims, and expenses, compensation, priority claims, interest, taxes, and collection costs remain uncertain." Br. 16.

## ARGUMENT

## BARTELS LACKS STANDING TO APPEAL

### I. Appellant Must Show a Direct, Adverse Pecuniary Effect of the Order.

As a preliminary matter, Appellant lacks standing to appeal the Bankruptcy Court order overruling his objection and approving the retention. Notably, Appellant lacked standing to object to the retention of counsel to begin with. See 11

U.S.C. § 327(c). He is not a creditor, and § 327(c) makes representation of a creditor disqualifying only on objection by "another creditor or the United States trustee." His only route to be heard was therefore permissive, by leave of court under Rule 2018(a). It is well settled that "Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Moreover, standing to appeal an order entered by a bankruptcy court is limited to "persons aggrieved" by such order. *In re Combustion Engineering, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004). "Originally set forth in the Bankruptcy Act of 1898, the 'persons aggrieved' test now exists as a prudential standing requirement that limits bankruptcy appeals to persons 'whose rights or interests are 'directly and adversely affected pecuniarily' by an order or decree of the bankruptcy court.'" *Id. See also In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998) ("To have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings. Only those persons affected pecuniarily by a bankruptcy order have standing to appeal that order."); *Accord In re Imerys Talc Am., Inc. v. Cyprus Historical Excess Insurers*, 38 F.4th 361, 371 (3d Cir. 2022) (The standard articulated in *Combustion* remains good law). The Third Circuit denies appellate standing even to persons who "may be exposed to some potential

harm incident to the bankruptcy court's order" if they are not "'directly affected by that order.'" *Combustion*, at 215 (citing *Travelers Ins. Co. v. H.K. Porter Co.,* 45 F.3d 737, 741 (3d Cir.1995)). "Appellate bankruptcy standing, unlike Article III standing, must be based strictly on financial injury." *In re Revstone Indus. LLC*, 690 F. App'x 88, 89 (3d Cir. 2017) (internal citations omitted). The test is "more restrictive than Article III's 'case or controversy' requirement," so a party may satisfy Article III and still lack standing to appeal. *Imerys*, 38 F.4th at 371.

## II. Appellant Concedes That the Retention Order Does Not Affect Him Directly.

"The existing civil filings alone do not establish standing: Doc. 181 does not itself impose liability, decide a defense, transfer ownership of claims, or compel disclosure." Br. 21.

Appellant is not directly affected by the Retention Order. The only apparent potential "harm" to Appellant stemming from the Retention Order is the incidental effect that the Firms will be prosecuting voidable transfers on behalf of the Estate and that will include causes of action that may exist against Appellant. But Appellant's rights and interests are not directly and adversely affected pecuniarily by the Retention Order which enables the Trustee to retain counsel. *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000) (quoting *In re Dykes*, 10 F.3d at 187). Appellant does not have a pecuniary interest in the outcome of the bankruptcy

proceedings. Appellant will not be directly affected by the Retention Order. The indirect or incidental effect does not confer standing.

Appellant does not dispute this. He states that "[t]he Trustee could investigate through other qualified counsel, so the prospect of examination alone does not establish an injury caused by retaining these firms or prove a disqualifying conflict." Br. 15. And he states that "the existing civil filings alone do not establish standing: Doc. 181 does not itself impose liability, decide a defense, transfer ownership of claims, or compel disclosure." Br. 21. Both concede the point. Whatever exposure Appellant faces comes from being the sole member of a Chapter 7 debtor with voidable-transfer claims, not from who the Trustee retained to pursue them.

The Third Circuit rejected the same move in *Team Systems*. The equity holders there argued that their exposure to criminal penalties and False Claims Act clawbacks gave them bankruptcy appellate standing. The court disagreed: those concerns "are even further removed from the bankruptcy proceeding than the trustee's settlement decision, and those do not constitute the direct and adverse pecuniary effects needed for bankruptcy appellate standing." 2026 WL 837287, at *4 n.5. Exposure to liability in other litigation is not a direct pecuniary effect of the order authorizing counsel to pursue it.

The Fifth Circuit so held on facts that cannot be distinguished. In *Furlough v. Cage (In re Technicool Systems, Inc.)*, 896 F.3d 382 (5th Cir. 2018), the sole owner

of a Chapter 7 debtor appealed an order approving the trustee's application to employ special counsel under 11 U.S.C. § 327(a). The owner objected that the firm also represented the largest creditor and argued that, but for that creditor's claim, the estate would produce a surplus to which he would be entitled. The court affirmed the dismissal of his appeal without reaching the merits:

> This speculative prospect of harm is far from a direct, adverse, pecuniary hit. [The owner] must clear a higher standing hurdle: The order must burden his pocket before he burdens a docket.

*Technicool*, 896 F.3d at 386.

"Only those directly, adversely, and financially impacted by a bankruptcy order may appeal it." *Id.* at 384. A district court reached the same result last year on a closely similar posture. In *Muszynski v. Miller (In re Chicken Soup for the Soul Entertainment, Inc.)*, No. 25-52-GBW, D.I. 14, No. 22-10066, 2025 U.S. Dist. LEXIS 140145 (D. Del. July 22, 2025), a pro se appellant who was not a creditor appealed an order approving a Chapter 7 trustee's retention of special counsel over his objection. The court granted the trustee's motion to dismiss for lack of appellate standing and held that it therefore "need not address the parties' arguments regarding whether the Retention Order is interlocutory." *Id.* at *14.

Appellant discloses both decisions and distinguishes them on one ground: that "[n]either opinion analyzes the retention-specific approach stated in *Boy Scouts* and *Congoleum*." Br. 21. That approach does not do the work he asks of it. *Boy Scouts*

addresses how closely a qualifying injury is scrutinized, not whether a pecuniary effect is required in the first instance. The court there restated the pecuniary requirement and then identified an actual pecuniary consequence, the possible disgorgement of fees already paid. *In re Boy Scouts of Am.*, 35 F.4th 149, 157 (3d Cir. 2022).

## III. Denial of Leave Under Rule 2018(a) Is Not a Pecuniary Injury.

Appellant's second consideration is the denial of his request for leave to be heard. That is a procedural ruling, and the person-aggrieved standard requires a *pecuniary* effect. *Combustion Eng'g*, 391 F.3d at 214. Denial of leave did not diminish Appellant's property, increase his burdens, or impair his rights. *PWS Holding*, 228 F.3d at 249.

The argument is also circular. Rule 2018(a) exists for entities "not otherwise entitled" to be heard, who must "show cause therefor." Fed. R. Bankr. P. 2018(a) advisory committee's note to 1983 rule. The baseline is that Appellant had no right to be heard. Denying a discretionary request cannot impair a right he never held. If it could, every denied Rule 2018 movant would acquire appellate standing by the denial itself, and the rule's cause requirement would do no work.

The premise is thin in any event. Appellant filed five written submissions and was heard twice. He was denied formal intervenor status, not an opportunity to be

heard. The only cause he offered was his status as a potential defendant, and the Bankruptcy Court said so on the record. Tr. 21:17–20.

A bankruptcy court in this Circuit has already decided the question against Appellant, in a case he cites. In *In re Team Systems International, LLC*, No. 22-10066, 2024 WL 386823 (Bankr. D. Del. Feb. 1, 2024), equity holders of a Chapter 7 debtor who were defendants in the trustee's fraudulent-transfer adversary proceeding objected to the trustee's retention of counsel because of counsel's relationship with a creditor. The court held that § 327(c) "expressly and unambiguously limits standing to object to a retention in these circumstances to other creditors or the United States trustee. The objecting defendants are neither. They hold equity in the debtor but are not creditors. They therefore lack standing to raise this objection." *Id.* at *2. It also rejected the argument that § 502(h) made them creditors because they were being sued under § 550: "that is wrong," because § 502(h) "does not create a claim." *Id.* at *2–3. Appellant cites the decision and acknowledges that it "rejected similar objections by noncreditor equity holders and independently approved retention." Br. 24; App. 112–116.

**IV. The Effect on Any Residue Is Too Contingent.**

Appellant's third consideration is that a contingent fee would reduce whatever might be left over after every creditor is paid in full. Before a dollar of that residue could reach him, five things would each have to happen:

(1) The Trustee would have to bring avoidance actions;

(2) She would have to prevail in them;

(3) She would have to collect on the judgments;

(4) The recovery would have to exceed every allowed claim, administrative expense and priority claim combined, with interest; *and*

(5) The resulting surplus, which § 726(a)(6) returns to the Debtor rather than to its members, would have to reach Appellant through the dissolution and distribution of LTG.

Appellant's interest therefore sits one link beyond a chain that is already four links long.

The Third Circuit rejected the same chain earlier this year. In *In re Team Systems International, LLC*, No. 24-3365, 2026 WL 837287 (3d Cir. Mar. 26, 2026), equity holders of a Chapter 7 debtor appealed an order approving a trustee's settlement. The court held that although a decrease in the value of their equity interests "suffices for an injury-in-fact for purposes of… Article III standing," to establish bankruptcy appellate standing "they must demonstrate that they will leave the bankruptcy proceeding with less money as a result of the Bankruptcy Court's order approving the settlement agreement." *Id.* at *3. "Even putting aside the foundational uncertainty of whether any money will be left for equity holders," they

had not made that showing. *Id.* at *4. Their interest was "too contingent." *Id.* (quoting *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 742 (3d Cir. 1995)).

Appellant concedes each weakness in the chain. He acknowledges that the residue "would return… to LTG," that he claims only "a possible effect on his sole membership interest, not creditor status or a direct personal entitlement to estate funds," and that the identified transactions "may include overlapping or defensible transactions, scheduled liabilities are not necessarily allowed claims, and expenses, compensation, priority claims, interest, taxes, and collection costs remain uncertain." Br. 16.

The argument is self-defeating. Without contingent counsel there is no recovery to reduce, and Appellant's own brief concedes that "contingent counsel may create recoveries otherwise unavailable." Br. 17. Nor has any fee been awarded: paragraphs 4 and 5 of the Retention Order subject the terms to review under 11 U.S.C. § 328(a), so the order fixes no effect on residual value.

Appellant's own schedules foreclose the alternative route. He is not listed as a creditor on Schedule E/F, and Schedule H lists him as a codebtor on eleven of the twelve scheduled claims. A codebtor who has not paid holds at most a contingent claim for reimbursement or contribution, which § 502(e)(1)(B) requires the court to disallow.

## V. Section 1109(b) Does Not Supply Appellate Standing.

To the extent Appellant invokes party-in-interest status, § 1109(b) does not carry him. By its terms it applies in chapter 11, and § 103(g) confines subchapters I through III of chapter 11 to cases under that chapter. This is a chapter 7 case.

Even in a chapter 11 case, the provision would not reach appellate standing. Section 1109(b) "confers broad standing at the trial level," but "courts do not extend that provision to appellate standing." *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000); *see also Combustion Eng'g*, 391 F.3d at 217. Participation below does not carry forward.

## VI. Three Insufficient Injuries Do Not Combine Into One.

Appellant states that he "does not rest on any one of those considerations alone." Br. 18. That assumes insufficient injuries can be added together. They cannot. The person-aggrieved test asks one question about what the order did to the appellant. Appellant has conceded the insufficiency of each consideration separately, and three non-qualifying injuries do not become one qualifying injury by being listed in the same sentence.

Nor do the issues he raises belong to him. None of the twenty-one issues in his Statement of Issues on Appeal [BK ECF No. 196] identifies an effect of the Retention Order on Appellant personally. Each concerns the qualifications, disclosures, scope and compensation of estate professionals. Those are matters

committed to the Trustee, the United States Trustee and actual creditors under 11 U.S.C. §§ 327 and 330.

Accordingly, Appellant lacks appellate standing because there really is no direct harm to Appellant by virtue of the Retention Order; any alleged harm to Appellant is not because the Trustee will be employing special counsel. Accordingly, the Appeal should be dismissed with prejudice.[2]

**VII. The Briefing Schedule Should Be Suspended.**

Nothing suspends the briefing schedule while this Motion is pending. Appellate standing is a threshold question the Court must reach before the merits, and it cannot be waived. Briefing the merits of an appeal that may be dismissed for want of standing would cost the estate money no outcome returns. The Trustee asks that the schedule be suspended until the Motion is decided and any remaining deadlines reset from that date. Suspension would also conserve the Court's own resources. Full merits briefing on the qualifications, disclosures, scope and compensation of estate professionals would put a substantial record before the Court

[2] There is also the issue raised by Appellant that the appeal may be interlocutory and Appellant failed to seek leave to file such an appeal which merits dismissal. See 28 U.S.C. § 1292(b) and Bankruptcy Rule 8004(d). Because Appellant's lack of standing to appeal is a threshold issue which disposes of this appeal, Appellee does not believe it necessary to have the Court expend further judicial resources to address that issue.

on questions it may never need to reach, and the threshold question is far more efficiently decided first.

## CONCLUSION

For the reasons set forth herein, the Trustee respectfully requests that this Court dismiss Appellant's Appeal of the Retention Order and suspend the briefing schedule pending disposition of this Motion.

Dated: October 27, 2026

Respectfully Submitted,

*/s/ Beverly Weiss Manne*
Beverly Weiss Manne,
Esq. PA ID No. 34545
**TUCKER ARENSBERG, P.C.**
1500 One PPG Place
Pittsburgh, PA 15222
Phone: 412-594-5525
Email: bmanne@tuckerlaw.com

Kasey D. Bolton, Esq.
PA I.D. No. 321169
300 Corporate Center Drive, Suite
200 Camp Hill, PA 17011
Phone: 717- 234-4121
Email: kbolton@tuckerlaw.com

COUNSEL TO JILL E. DURKIN,
CHAPTER 7 TRUSTEE

## CERTIFICATE OF COMPLIANCE/CONCURRENCE

This Motion complies with the length limit of Fed. R. Bankr. P. 8013(f)(3)(A) because it contains 4,230 words, excluding the items listed in Fed. R. Bankr. P. 8015(h). It complies with the typeface and type-style requirements of Fed. R. Bankr. P. 8013(f)(1) and Fed. R. App. P. 27(d)(1) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman. Additionally, Appellee sought the concurrence of Appellant on October 26, 2026, and he did not concur.

## CERTIFICATE OF USE OF GENERATIVE AI

Pursuant to ¶ 8 of this Court's Bankruptcy Appeal Practice Order, the undersigned certifies as follows:

1. Tool used. Generative artificial intelligence tools, Westlaw Co-Counsel and Claude (Anthropic PBC), were used in the preparation of this Motion.

2. Portions prepared by the tool. The tools were used to assist with legal research, to locate and retrieve authority, and to prepare preliminary drafts of portions of the statement of the case and the argument. No portion of this filing is submitted as the tool generated it. Counsel substantially drafted, revised and approved the document in its final form.

3. Verification. A person has checked the accuracy of every portion of this document, including all citations and legal authority. Each authority cited has been retrieved and reviewed, and each quotation has been compared against the source.

## CERTIFICATE OF SERVICE

I, Beverly Weiss Manne, hereby certify that on October 27, 2026 a copy of the foregoing *Appellee's Motion to Dismiss Appeal and Brief In Support* were filed and served via electronic notification through the Electronic Case Filing System (CM/ECF) for the United States District Court for the Middle District of Pennsylvania on all parties registered in this case.

I further certify that on October 27, 2026 I caused a copy of the foregoing *Appellee's Motion to Dismiss Appeal* to be served via electronic mail and also via U.S. First Class Mail on the following:

Appellant:

**Eric D. Bartels**
6 Dickinson Close
Moosic, PA 18507

Office of the United States Trustee

**Joseph P. Schalk**
DOJ-UST
Office of the United States Trustee
1501 N. 6th Street
Box 302
Harrisburg, PA 17102
Email: joseph.schalk@usdoj.gov

*/s/ Beverly Weiss Manne*

Beverly Weiss Manne, Esq. PA ID No. 34545
**TUCKER ARENSBERG, P.C.**
1500 One PPG Place Pittsburgh, PA 15222
Phone: 412-594-5525
Email: bmanne@tuckerlaw.com